UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
PAUL BAME, et al.,                  )
                                    )
        v.                          ) Civil Action No. 05-1833 RMC
                                    )
JOHN F. CLARK, Acting Director      )
  United States Marshals Service,   )
  et al.,                           )
                                    )
_____)
```

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

INTRODUCTION

Plaintiffs have brought this suit against the government defendants, on behalf of a class of men alleging that their rights were violated following their arrest on September 27, 2002, by District of Columbia Police and their subsequent remand into the custody of the U.S. Marshal for the Superior Court of the District of Columbia.  Plaintiffs seek the Court's approval of a class defined as follows:

> All men who were: (1) arrested on September 27, 2002 by the D.C. Police officials during a series of mass protests in downtown Washington, D.C.; (2) remanded by D.C. Police, following that arrest, into the custody of the U.S. Marshal for the District of Columbia prior to being released; and (3) subjected by deputy U.S. Marshals to a strip, visual, body cavity search without any particularized or individualized reasonable suspicion that he was concealing drugs, weapons or other contraband; (4) excluding, however, all men arrested within the confines of Pershing Park on September 27, 2002.

Plaintiffs' Memorandum Of Points And Authorities In Support Of Motion For Class Certification ("Plaintiffs' Mem.") at 1; see Complaint, ¶ 11; Amended Complaint, ¶ 1.

As described in greater detail below, Plaintiffs' claims are not appropriate for class action treatment for these reasons:

1) the proposed class fails to meet the numerosity, commonality and typicality required by Fed. R. Civ. P. 23;

2) the named class representatives are not, in fact, representative of the class, in large part because they are not listed by name on the IMF "Lock Up" lists they attach to their motion, meaning that they must have refused to identify themselves to the police upon arrest;

3) several class actions are already extant and one of them is admittedly pursuing claims for at least a significant part of the proposed class with the intent of securing from the District of Columbia damages for the same conduct as is at issue here (reducing the number of potential class-members who can recover here); and

4) would-be class counsel, while apparently highly competent as a team, appear to be unable to provide the requisite representation given one or more potential conflicts[1] involving

---

[1]  Defendants are not suggesting that Plaintiffs counsel are in violation of any professional obligation at this time, but can easily foresee that the only method to avoid such a violation would require waivers from, for instance, each plaintiff in the Johnson putative class action.  The logistical hurdle would make it impractical for counsel to continue to represent the plaintiffs in the instant action.  See, e.g., District of Columbia Rules Of Professional Responsibility, Rule 1.9 (precluding a lawyer who has formerly represented a client in a matter from thereafter representing another person in the same or a substantially related matter in which that person's interests

the competing interests of prior clients currently pursuing claims in Johnson v. Government of the District of Columbia, Civil Action No. 02-2364 RMC and/or Diamond/Burgin v. District of Columbia, Civil Action No. 03-2005 EGS.[2]

Plaintiffs also note the existence of class claims in Barham v. Ramsey, Civil Action No. 02-2283 EGS. See Plaintiffs' Mem. at 5, fn. 1. In that case, a class action Complaint was filed in an effort to pursue claims on behalf of "approximately 400+ persons" attending demonstrations on September 27, 2002, who were arrested at Pershing Park and subjected to harsh conditions of confinement. See February 7, 2003 Motion For Class Certification And Notice in Civil Action No. 02-2283 EGS (Docket No. 3).

Plaintiffs indicate that "for reasons unknown to plaintiffs' counsel, the other litigation already commenced with regard to claims arising from the mass protests held on September 27, 2002 in Washington, D.C. have not addressed the claims raised herein." Plaintiffs' Mem. at 22. Counsel for the named Defendants assume

---

are materially adverse to the interests of the former client unless the former client consents after consultation).

[2] The original complaint in Civil Action No. 03-2005 EGS was captioned Joel Diamond v. District of Columbia. As of March 4, 2004, when a motion for class certification was filed, the lead Plaintiff was listed as Catherine Burgin. See Civil Action No. 03-2005 EGS, Docket No. 18. To avoid confusion, defendants shall refer to the case with both names.

-3-

that this comment is limited to Mr. Cunningham's knowledge or to litigation other than Barham v. Ramsey, Civil Action No. 02-2283 EGS, since Zachary Wolff, Esq., was among counsel for the plaintiffs in Barham when the complaint was filed and class certification was sought. See Civil Action No. 02-2283 EGS, Docket Nos. 1, 3. Moreover, Mr. Bame can hardly expect to garner support for his class claims in the instant action based on a failure to pursue such claims in Diamond/Burgin, since he is apparently a named plaintiff in that litigation. See March 24, 2004 Reply Supporting Plaintiffs' Motion For Class Certification in Civil Action No. 03-2005 EGS (Docket No. 20) at 5 and fn.6 ("eleven more Connecticut Avenue arrestees recently informed counsel that they are willing to associate publically with the named plaintiffs for purposes of the litigation. . . . These eleven arrestees are: Paul Bame, 520 N. Sherwood, #18, Fort Collins, CO  80521. . . .") (footnote converted to text).

Far from promoting "economies of time, effort, and expense," certification of this litigation as a class action would lead only to a series of mini-trials and multiplicity of litigation that would unnecessarily protract the resolution of the issues. Certification should therefore be denied. As the Court of Appeals has recently reiterated, such a conclusion would be set aside only if deemed an abuse of discretion, see Garcia v. Johanns, Nos. 04-5448 and 05-5002 slip op. at 7 (D.C. Cir. Mar.

-4-

31, 2006) ("we review a certification ruling conservatively only
to ensure against abuse of discretion or erroneous application of
legal criteria and we will affirm the district court even if we
would have ruled differently in the first instance") (citations
and internal quotations omitted); <u>Love</u> v. <u>Johanns</u>, No. 05-5084
slip op. at 8 (D.C. Cir. Feb. 6, 2006), and this Court would act
well within its discretion in declining class certification in
this instance.

<u>BACKGROUND</u>

Plaintiffs readily admit that, notwithstanding that one of
the primary purposes of class actions is to accomplish judicial
economy by avoiding multiple suits, <u>see</u> Plaintiffs' Mem. at 10,
they have had to tailor their proposed class complaint to exclude
significant numbers of litigants who are members of other class-
action or would-be class-action cases, and who allege that they
suffered similar arrests and/or strip searches.  <u>See</u> <u>id</u>. at 5-6.
Some additional explanation of certain prior actions is
appropriate here.

In <u>Johnson</u> v. <u>Government of the District of Columbia</u>, Civil
Action No. 02-2364 RMC, counsel for the Plaintiffs in this case,
Lynn Cunningham, Esq., brought an action against, among others,
the United States Marshals Service and former U.S. Marshal Todd
Dillard, alleging:

> Plaintiffs bring this class action lawsuit on behalf of
> themselves and all other women arrestees who 1) were

-5-

> subjected to blanket strip, visual body cavity and/or
> squat searches while being held in the Superior Court,
> waiting for presentment before a judge . . . on charges
> that were either a non-violent, non-drug related
> traffic charge, b) a non-violent, non-drug related
> misdemeanor charge, or c) a non-violent, non-drug
> related felony charge, or 2) were subjected to blanket
> strip, visual body cavity and/or squat searches while
> being held in the Superior Court Cell Block of the
> District of Columbia Superior Court, waiting for
> presentment before a judge or other judicial officer of
> the District of Columbia Superior Court on charges
> brought under a District of Columbia statute regardless
> of the charge against them because similarly situated
> men are not subjected to such searches.

Complaint in Civil Action No. 02-2364 RMC, ¶ 1.  Thus, among the

claims being pursued in the Johnson case is a claim that women

are strip searched but men are not.  Id., ¶¶ 6, 8, 14.[3]

In Diamond/Burgin v. District of Columbia, Civil Action No.

03-2005 EGS, the action was described as follows:

> This is a class action seeking damages and other
> relief for illegal mass arrest, handcuffing, detention,
> and prosecution of persons who were participating in or
> observing peaceful demonstrations in Washington, D.C.
> on the morning of Friday, September 27, 2002.  The
> action joins the claims of two classes.  Plaintiffs
> were trapped, prevented from leaving, and arrested by
> converging lines of District of Columbia police
> officers at one of two locations: (1) the eastern
> sidewalk of Connecticut Avenue between K and L Streets,
> N.W., where forty-two persons (the first class) were

---

[3]  In contrast, the allegations made in the instant action
support only the conclusion that the Plaintiffs here (each male)
were treated similarly to the women in Johnson.  Amended
Complaint, ¶¶ 11, 15, 21-22; see also id., ¶¶ 28-29 ("Both male
and female protest arrestees were subjected to the searches.  On
information and belief, the women's claims with regard to strip
searches are addressed under separate litigation.  On information
and belief, claims of persons arrested at Pershing Park protests
on that day are also addressed under separate litigation.").

arrested; and (2) the sidewalk near the northwest
corner of Vermont Avenue and K Street, N.W., where
approximately 150 persons (the second class) were
arrested.

Complaint in Civil Action No. 03-2005 EGS, Docket No. 1, ¶ 1;

Amended Complaint in Civil Action No. 03-2005 EGS, Docket No. 9,

¶ 1.

Plaintiffs admit that the proposed class members "are most
likely members of the plaintiff class certified by this Court in
[Diamond/Burgin]" See Plaintiffs' Mem. at 5-6.[4] Plaintiffs,
however, claim that "none of the other actions entail the claims
herein. In other words, none of the other suits raise claims for
monetary damages against defendants herein, i.e., the U.S.
Marshal in his official capacity, the U.S. Marshal's [sic]
Service, former marshal Todd Dillard in his individual capacity.
. ." Id. at 6. This assertion is apparently made on the theory
that the recovery of damages from the District of Columbia for
their unlawful arrests and resultant detention in Diamond/Burgin

---

[4]  According to the amended complaint in Diamond/Burgin,
Civil Action No. 03-2005 EGS, Docket No. 9, ¶¶ 1, 4-5, 7-8, the
plaintiffs there were arrested on the morning of September 27,
2002 on the eastern sidewalk of Connecticut Avenue between K and
L Streets, N.W., Washington, D.C. [42 arrestees] or on the
northwest corner of Vermont Avenue and K Street, N.W.,
Washington, D.C. [150 arrestees].  The purported plaintiff class
representatives are similarly alleged to have been "present with
other men and women at the protest at Connecticut and K Street or
other nearby protest sites. . . ."  Plaintiffs' Mem. at 6; see
also Amended Complaint in Civil Action No. 03-2005 EGS, ¶ 1.
Thus, each of the named Plaintiffs in the instant action alleges
that he too was at the protest at Connecticut and K Street or
nearby on the same morning.  See Plaintiffs' Mem. at 6.

-7-

would not affect the Plaintiffs' ability to recover from the
Federal defendants sought here, and ignores the fact that Mr.
Dillard is, in fact, named in the <u>Johnson</u> class action.  <u>See</u> <u>id</u>.
at 6.  In fact, Plaintiffs would not be allowed a double recovery
for the alleged indignity of being subjected to searches upon
their arrests, a recovery which they are sure to secure if they
prevail in <u>Diamond</u>/<u>Burgin</u>.[5]  And, what appears to be a tactical
decision by the attorneys in <u>Diamond</u>/<u>Burgin</u> to exclude claims
against Federal defendants does not warrant the duplication of
the litigation here.

<u>ARGUMENT</u>

I.    PLAINTIFFS HAVE FAILED TO ESTABLISH
      <u>THAT CLASS CERTIFICATION IS APPROPRIATE</u>

A.    <u>The Standards for Class Certification</u>

A litigant seeking class certification must justify the use
of a litigation device that is "an exception to the usual rule."
<u>General Telephone Co. of Southwest</u> v. <u>Falcon</u>, 457 U.S. 147, 155
(1982) (quoting <u>California</u> v. <u>Yamasaki</u>, 442 U.S. 682, 700

---

[5]  The September 26, 2003 Complaint in <u>Diamond</u>/<u>Burgin</u>
described the action as "seeking damages and other relief for
illegal mass arrest, handcuffing, detention, and prosecution of
persons who were participating in or observing peaceful
demonstrations in Washington, D.C. on the morning of Friday,
September 27, 2002."  Complaint in Civil Action No. 03-2005
(Docket No. 1) at 2, ¶ 1.  There is no indication that the
plaintiffs seek to exclude any recovery for that part of the
arrests and detentions that might involve strip searches.  <u>Id</u>.

(1979)).  As a threshold matter, the putative class for which certification is sought must meet a standard that is not explicit in Rule 23, but is implicit in the availability of the class action as a tool of judicial efficiency in litigation: the proposed class must be ascertainable and manageable; i.e., susceptible to precise definition.  See, e.g., Lewis v. National Football League, 146 F.R.D. 5, 8 (D.D.C. 1992) (clearly defined class is necessary "to ensure that the class is 'neither amorphous, nor imprecise'") (internal citation omitted). The class definition "must make it 'administratively feasible for the court to determine whether a particular individual is a member.'" Rodriquez v. U.S. Dept. of Treasury, 131 F.R.D. 1, 7 (D.D.C. 1990) (citing cases); see also 7A Wright & Miller, Fed. Practice and Procedure § 1760 at 120-21 (2d ed. 1986) (citing cases).

    Plaintiffs must also demonstrate that the proposed class satisfies each of the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure, namely, that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); Love v. Johanns, supra, slip op. at 7-8.  In addition, the class claims must fit within at least

one of the categories set forth in Rule 23(b).  <u>Love</u> v. <u>Johanns</u>,
<u>supra</u>, slip op. at 8.  In this case, Plaintiffs claim that their
proposed class satisfies Fed. R. Civ. P. 23(b)(3), which requires
that the questions of law or fact common to the members of the
class predominate over any questions affecting only individual
members, and that a class action is superior to other available
methods for the fair and efficient adjudication of the
controversy.  Fed. R. Civ. P. 23(b)(3).

     Plaintiffs bear the burden of proof with respect to
satisfying each of the requirements of Rule 23(a) and
establishing compliance with Rule 23(b).  <u>See</u> <u>In re American</u>
<u>Medical Sys., Inc.</u>, 75 F.3d 1069, 1086 (6th Cir. 1996) (reversing
the district court which had erroneously asked the defendants to
show why a class should not be certified); <u>McCarthy</u> v.
<u>Kleindienst</u>, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984). "Strict
adherence to those prerequisites [of Rule 23] is necessary to
avoid unfairness to the defendant and to protect the interests of
potential class members who may assert timely, representative
claims in the future." <u>Sperling</u> v. <u>Donovan</u>, 104 F.R.D. 4, 9
(D.D.C. 1984).  Plaintiffs must establish that a class action
would "advance 'the efficiency and economy of litigation which is
a principal purpose of the procedure.'" <u>Falcon</u>, 457 U.S. at 159
(quoting <u>American Pipe & Constr. Co.</u> v. <u>Utah</u>, 414 U.S. 538, 553
(1974)).  The Court is to undertake a "rigorous analysis" of

whether Rule 23(a) has been satisfied, because "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable." <u>Falcon</u>, 457 U.S. at 160-61.  Further, while an undue inquiry into the merits of the class claims is not appropriate in adjudicating class certification, "an analysis of the nature of the proof which will be required at trial is 'directly relevant to the determination of whether the matters in dispute are principally individual in nature or are susceptible of proof equally applicable to all class members.'" <u>Rodriguez</u>, 131 F.R.D. at 8 (internal citation omitted); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Coopers & Lybrand</u> v. <u>Livesay</u>, 437 U.S. 463, 469 (1978) ("class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action'") (internal citations omitted); <u>Wagner</u> v. <u>Taylor</u>, 836 F.2d 578, 587 (D.C. Cir. 1987) ("some inspection of the circumstances of the case is essential to determine whether the prerequisites of . . . Rule 23 have been met.  Necessarily, the Court must examine both the claims presented and the showing in support of class certification for their adherence to the requirements of Rule 23.") (footnotes omitted).  In addition, even if the requirements of Rule 23 are satisfied, the decision of whether to certify a class is firmly committed to the trial court's discretion.  <u>See</u> <u>Yamasaki</u>, 442 U.S. at 703; <u>Love</u> v. <u>Johanns</u>, <u>supra</u>, slip op. at 8.

    For the reasons stated herein, Plaintiffs are unable to

carry their heavy burden of showing that class certification is appropriate.

> B.  A PREREQUISITE TO PLAINTIFFS' FOURTH AMENDMENT
>     CLAIMS IS THAT THE SEARCH IS UNREASONABLE.

Plaintiffs' proposed class definition impermissibly turns on a disputed contention - whether or not the United States Marshals Service ("USMS") or the individual defendants engaged in a practice or policy of conducting blanket strip searches of detainees in the Superior Court of the District of Columbia ("SCDC") cellblock on September 28, 2002.  The Named Defendants contend that the policies and practices with respect to male detainees in the SCDC cellblock were constitutionally applied. If the plaintiffs were in fact strip searched, such searches likely occurred because there was a reasonable suspicion that they were concealing contraband.

In order to determine whether a particular practice is unconstitutional, the Court must balance that interest against the competing consideration whether "the regulation is . . . reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); Bell v. Wolfish, 441 U.S. 520 (1979); Overton v. Bazzetta, 539 U.S. 126, 132-33 (2003). Plaintiffs assert that all the Circuits that have ruled on the issue have concluded that strip searches may not generally be performed upon adults confined after arrest for misdemeanors, in the absence of reasonable suspicion concerning possession of

contraband; however, <u>Bell</u> v. <u>Wolfish</u>, <u>supra</u>, suggests that, as to
those lawfully confined, a specific basis for concern about
contraband will support strip searches, even absent a basis for
individualized suspicion.  <u>See</u>, <u>N.G. And S.G.</u> v. <u>State of
Connecticut</u>, 382 F.3d 225, 232, n.8 (2004).  Although defendants
did not follow a blanket strip search policy for the plaintiffs,
the circumstances in the SCDC cellblock may make such a practice
reasonable, particularly considering such significant details of
the individual plaintiffs as whether they attempted to hide their
true identities, which the named plaintiffs apparently did.  <u>See</u>
Plaintiff's Exhibit 1 (Lock Up Lists containing 54 men identified
only as John Doe, but no Paul Bame, Gregory Keltner or Ivan
Welander).

Detainees/Prisoners received by USMS cellblock in SCDC,
arrive primarily from the District of Columbia Metropolitan
Police Department ("MPD") central cellblock following the arrest
of the individual, or the District of Columbia Jail.
Detainees/Prisoners may also arrive from other jail facilities in
the area, from the various courtrooms in the Courthouse of the
D.C. Superior Court or directly after arrest on a warrant from
the street or some place of confinement.

According to United States Marshals Service ("USMS")
information, the volume of Detainees/Prisoners received at the
USMS cellblock is very high, averaging 300 per day.  The vast

majority are not individuals arrested by the USMS.  Generally,
the Detainees/Prisoners arriving at the USMS cellblock from the
MPD central cellblock have been recently arrested from the
street.  They have often been processed by MPD through their
precincts, and are brought by the Metropolitan Police Department
("MPD") or another arresting agency to the MPD central cellblock.
At the MPD central cellblock, Detainees/Prisoners are commingled
with one another by MPD.  Any hand search of Detainees/Prisoners
at this stage is not always productive in finding contraband
secreted on the body or in clothing, prior to delivery to the
USMS cellblock.  Detainees/Prisoners arriving from the D.C. Jail
generally are not searched by D.C. Jail personnel before
departing for the USMS cellblock.  See Exhibit A (Excerpts from
USMS Reports).[6]

The opportunities for concealing and exchanging contraband
by the MPD central cellblock Detainees/Prisoners and the D.C.
Jail prisoners are real and substantiated.  In fact, as a matter
of routine, dangerous contraband is confiscated upon arrival at
the USMS cellblock from these Detainees/Prisoners, especially
those delivered to the USMS cellblock from the MPD central
cellblock.  The contraband is secreted on their bodies and in
their orifices.  This contraband is taken from all categories of

---

[6] Identifying information from the reports has been
redacted from Exhibit A to protect the privacy of the individuals
involved.

Detainees/Prisoners, some of whom are charged only with
misdemeanors.  In sum, an urban criminal atmosphere of danger
surrounds the intake of Detainees/Prisoners arriving at the USMS
Superior Court cellblock on a daily basis.  This danger to
officers and other Detainees/Prisoners must be addressed to
provide a secure atmosphere for the court, cellblock personnel
and individuals detained at the cellblock.

The USMS written policy regarding body searches in effect
on September 28, 2002 (Policy Directive 99-25, July 7, 1999),
describes the procedures for in custody searches and strip
searches among other things.  See Exhibit B (Policy Directive
99-25).[7]  Under the written policy, once received by USMS
personnel in the SCDC cellblock all detainees have their
restraints removed and are required to pass through a
magnetometer; detainees are then subjected to a thorough
physical search.  They are required to remove the contents from
all pockets, and remove any jacket, coat, belt, eyeglasses, or
other outer clothing.  The detainee then removes his or her
shoes and socks, and those are searched.  He or she vigorously
brushes his or her hair to dislodge any contraband.  A Deputy
United States Marshal ("DUSM") or USMS Detention Enforcement
Officer ("DEO") then inspects behind and in the ears, and looks

---

[7]  The Marshals Service may seek to file this exhibit under
seal and/or subject to a protective order, and anticipates
completing that filing shortly.

inside the Detainee's/prisoner's nostrils and mouth, including under the tongue and between the lips and gums.  A thorough pat-down search of the body is conducted, including the crotch and other areas where weapons or contraband may be secreted.  If nothing suspicious is discovered, detainees are placed in their cells.  If something suspicious occurs, such as a furtive hand movement or passing of something to another detainee, or other suspicious behavior, the detainee is subjected to the more thorough strip search.  Strip searches involve removal of all clothing and visual examination of the body, including all orifices, without touching.  Strip searches are authorized when there is a reason on the part of USMS cellblock personnel, to suspect that the detainee may be in possession of contraband. Id.

Under these circumstances, the Court would have to adjudicate whether each class member's search was unreasonable in order to determine the threshold question of class membership.  The Court will need to decide cases on their individual merits merely to decide class membership. Such an arrangement is hardly "administratively feasible."  See Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981); Davoll v. Webb, 160 F.R.D. 142, 145-46 (D. Colo. 1995) (proposed class of persons with "disabilities" necessarily includes individualized inquiries and makes class definition "untenable").  Furthermore,

if the merits of each individual case have to be decided before it can be determined whether an individual is a class member, a class offers no benefits of judicial economy over just deciding the merits of each individual claim in separate cases.

    II.   THE PROPOSED CLASS ACTION DOES NOT SATISFY
         ALL OF THE FOUR PREREQUISITES OF FED .R. CIV. P. 23(A)

    A.  The Numerosity Requirement

Plaintiffs allege that the proposed class consists of at least 45 men, Amended Complaint, ¶ 12, but offer no admissible evidence of such an assessment, and it appears to be questionable. Plaintiffs rely on 92[8] names of men apparently identified on certain Lock Up lists. As noted, the named Plaintiffs could truly only be representative of those male arrestees who also refused to provide their names. That number (including those arrested at Pershing Park and thus not members of the purported class) is 54. See Plaintiffs' Exhibit 1. If Plaintiffs are correct that about half of the men on the lists were arrested in Pershing Park -- and are therefore not members of Plaintiffs' purported class -- then the number can be reduced to between 8 and 27.[9] Plaintiffs themselves appear to recognize

---

[8]  Two of those names have no Lock Up Number associated with them and are described as "paid out".

[9]  If the "information and belief" proffered by Plaintiffs, see Amended Complaint, ¶ 12, were that half of the 92 on the Lock Up lists were arrested in Pershing Park, then the 54 number could be reduced by as much as 46 (i.e., 92 /2 = 46), leading to a total of only 8 (54 - 46 = 8). Even assuming that a

that in this jurisdiction at least 40 class members would be required to establish numerosity.  See Plaintiffs' Mem. at 15 (citing Neal v. Moore, 1994 U.S. Dist. LEXIS 21339, *24 (D.D.C. 1994)).

The Lock Up lists were apparently prepared by the Metropolitan Police Department ("MPD") officers at the Blue Plains holding facility, which is where the named plaintiffs and members of the proposed plaintiff class were taken after their arrests.  It is clear that a substantial number of the 92 males named on the Lock Up lists would be those male protesters who were arrested in Pershing Park on September 27, 2002.  See Plaintiff's Mem. at 11 (describing the numbers of potential class members as "dozens").  Approximately 400 people were arrested in Pershing Park on September 27, 2002, under virtually identical circumstances to the proposed class members in this case.  See Chang v. United States, 217 F.R.D. 262 (D.D.C. 2003).

Plaintiffs' proposed class would includes those male protesters who were arrested at locations other than Pershing Park and were charged with minor offenses.  It is reasonable to conclude that under Plaintiffs' definition, the number of the proposed class members who would be on the lockup list would be significantly limited when the Pershing Park protesters are

---

representative number of Pershing Park arrestees refused to give their true names too, the 54 Doe plaintiffs would still be reduced by half (54 / 2 = 27).

excluded, calling into question whether joinder of the potential parties is impracticable. If the actual number is unsupported and as vaguely described as Plaintiffs have made it, then the Court would not abuse its discretion in concluding that Plaintiffs failed to meet their burden as to numerosity. In short, their unsupported belief as to the number of class members being in the range of 45-100 does not satisfy their obligation under Rule 23, when examined in light of the facts.

B.  The Commonality Requirement

The commonality requirement of Rule 23(a)(2) states that there must be "questions of law or fact common to the class." In this case, plaintiffs have failed to satisfy the commonality requirement because each member of the putative class will present a claim rooted in the particular circumstances of his strip search. Since defendants contend that there was no blanket strip search policy or practice for male detainees in the Superior Court for the District of Columbia, various factual issues related to the individual searches defeat the commonality requirement. Unlike the class in Bynum v. District of Columbia, 214 F.R.D. 27 (D.D.C. 2003), where it was determined that the challenged activity of strip searching was common to all putative class members, here, there is a question of whether defendant's policy of strip searching violates the Constitution at all. At most there exist a sub-class of plaintiffs who

allege that under the facts at the time, their individual search was unreasonable.

    C. The Typicality Requirement

    Rule 23(a)(3) requires plaintiffs to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiffs allege that "each of them and each member of the class has the same legal theory based on the same pattern of facts. . ." Plaintiffs' Mem. at 17. However, a review of the documents proffered by the named defendants reveals that they are unlike nearly half of the men listed on the lock up lists in that they apparently refused to identify themselves by name, despite a general legal obligation to do so. See D.C. Code § 50-2303.07 (formerly D.C. Code § 40-627); see also Barnett v. United States, 525 A.2d 197, 199 and n.6 (D.C. 1987) (A pedestrian who refuses to provide his or her name and address to a police officer upon request after having been stopped for committing an infraction shall, upon conviction, be fined; and violations shall continue to be prosecuted as criminal offenses).

    Specifically, the named plaintiffs proffer as an exhibit (Exhibit 1), which they describe as follows:

        "Lock Up Lists" were prepared by MPD officers at the
        Blue Plains holding facility where named plaintiffs

and members of the proposed plaintiff class were taken
after their arrests.  These lists show ninety-two
persons with male names, or listed by the male name of
"John Doe", a strong indicator that the arrestee was a
male person.  These lists are sufficient evidence at
this stage of the proceedings of the number of men who
constitute the proposed class.

Plaintiffs' Mem. at 13.  A significant observation that can be
made regarding Plaintiffs' Exhibit 1 is that none of the named
plaintiffs are identified on that list by their true names, Paul
Bame, Gregory Keltner and Ivan Welander.  If the Plaintiffs'
allegations that they were present at the arrests and detentions
are to be believed, then the only logical conclusion to be drawn
from this is that the named Plaintiffs each refused to satisfy
the obligation found in D.C. Code § 50-2303.07 that he provide
his true identity to the police, and instead each was identified
only as "John Doe".

Two things flow from either conclusion:

1) the named Plaintiffs are only representative of, at
most, a group of people who were arrested on September 27, 2002,
and who refused to provide their true identities;[10] and

2) extrapolating from the numbers provided by Plaintiffs,

_____

[10]  As described in greater detail below, the group of
arrestees who failed properly to identify themselves when
required makes them somewhat dissimilar to those who identified
themselves.  When, for instance, a person refuses to identify
himself, a reasonable law enforcement officer would be well
advised to include that fact in his or her assessment of whether
there is, for instance, a reasonable suspicion that the arrestee
is attempting to conceal contraband.

their representative group would dwindle in number when one removes those estimated to have been arrested within the confines of Pershing Park (the group excluded by Plaintiffs criterion (4) and already sought to be represented in Barham).[11]

In addition, class certification is inappropriate when the alleged adverse effect is injury to members' emotional or mental state, because such an injury is necessarily individual in nature and cannot be "typical" of an entire class. As one court stated in denying certification of a class of persons who allegedly had suffered various injuries, including "emotion pains, anguish, and distress," any injuries suffered by the proposed class would be dependent on a number of variables present, but "[t]his is even more clearly the case when one considers the alleged class claim for emotional distress, which is intractably individual in character." Commonwealth of Puerto Rico v. M/V Emily S., 158 F.R.D. 9, 14 (D.P.R. 1994) (denying certification in part because typicality requirement was not satisfied) (emphasis added); see also Sanna v. Delta Airlines, 132 F.R.D. 47, 50 (N.D. Ohio 1990) (noting that "[c]ourts have been hesitant to find 'emotional injuries' typical" and denying class certification request by airline passengers claiming physical and emotional injuries); Ikonen v. Hartz Mountain

---

[11] See Civil Action No. 02-2283 EGS, Docket No. 3 (Memorandum In Support Of Motion For Class Certification And Notice) at 1-2.

Corp., 122 F.R.D. 258, 263 (S.D. Cal. 1988) (in suit by pet owners for damages suffered by their pets, Rule 23(a)(3)'s typicality requirement was not satisfied because each pet would have been injured in different ways and each pet owner, who allegedly suffered emotional distress, would have been affected in different ways and to different degrees). Accordingly, the Court would have to engage in case-by-case inquiries to determine whether each class member's alleged damages was in fact caused by defendants' allegedly improper conduct. See Ikonen, 122 F.R.D. at 263 (typicality not met in part because court must decide proximate cause in each individual case); Commonwealth of Puerto Rico v. M/V Emily S., 158 F.R.D. at 13 (class action inappropriate where plaintiffs must show causal link between each individual's injury and defendants' actions). Necessarily, the class action would degenerate into a mass of individual lawsuits, attempting to assess whether, for instance, the criminal histories of the individual plaintiffs offered a basis for a particular level of search, and in every case what individual defendants were involved and what level of damages, if any, was suffered by each plaintiff.

When the definition of a class would depend on each member's state of mind, the benefit of the class action diminishes:

> The focus of the class litigation with regard to these
> individuals would most certainly shift from

> defendants' conduct to the factual circumstance of
> individual plaintiffs.  This tendency . . . outweighs
> any commonality and typicality established by the
> claims of actual applicants, and therefore, frustrates
> the interest of judicial economy which class
> litigation is designed to serve.

Rodriguez, 131 F.R.D. at 7.  Therefore, Plaintiffs' proposed

class does not satisfy the typicality requirement of Rule

23(a)(3).

D.  The Adequacy of Representation Requirement

Plaintiffs also bear the burden of showing that they can

"fairly and adequately protect the interests of the class," as

required by Rule 23(a)(4).  See Fed. R. Civ. P. 23(a)(4).  The

adequacy of representation requirement involves a constitutional

due process dimension because of the binding effect of a final

judgment on absent class members.  National Ass'n of Regional

Medical Programs, Inc. v. Mathews, 551 F.2d 340, 345-46 (D.C.

Cir. 1976).  Accordingly, the Court should "undertake a

stringent and continuing examination of the adequacy of

representation."  Kas v. Financial General Bankshares, Inc., 105

F.R.D. 453, 462 (D.D.C. 1984).  The two requirements for

determining the adequacy of representation: are (1) the named

plaintiffs must not have antagonistic or conflicting interests

with unnamed class members, and (2) the named plaintiffs must be

able to vigorously and competently pursue the interests of the

class through qualified counsel.  Twelve John Does v. District

of Columbia, 117 F.3d 571, 575-76 (D.C. Cir. 1997).  As set

-24-

forth herein, the named plaintiffs cannot satisfy these criteria.  They cannot adequately represent the interests of other potential plaintiffs who identified themselves by name to the police as required by law; nor would it benefit those other plaintiffs to align themselves with named class members whose legal claims are weakened by their histories or by the fact that the named plaintiffs attempted to thwart the ability of law enforcement to learn who they are and thus, their criminal histories or propensities.

In short, the class representatives cannot fairly represent the interests of a class.  The absence of typical claims, as discussed above, gives rise to inadequate representation because class representatives lack incentive to pursue fully the claims of the other class members.  See Falcon, 457 U.S. at 158 n.13 (commonality and typicality tend to merge with adequacy of representation); American Medical, 75 F.3d at 1083 ("adequate representation requirement overlaps with the typicality requirement").  If any alleged injuries was caused by defendants' actions, such injuries are of widely varying nature and degree, giving rise to conflicting interests that preclude any class-wide "adequate representation."  Individuals with stronger claims for relief would have incentive to litigate extensively to ensure a significant damages award, while those who suffered only minor embarrassment would have an interest to

push for an early settlement.  Each would develop a different,
conflicting litigation strategy, undermining the quality of
representation that is provided to the entire class.  See
Commonwealth of Puerto Rico, 158 F.R.D. at 14-15 (class
representatives could not adequately protect interests of class
where class potentially suffered from widely varying forms of
injury); Kas, 105 F.R.D. at 462 (impermissible antagonism may
exist among class members when some will want different relief
than others).  Because putative class members have inherently
individualized claims and impermissibly divergent interests, the
named plaintiffs are not adequate representatives.  Therefore,
the prerequisite of Rule 23(a)(4) is not met because putative
class members' claims and interests conflict.

       With respect to counsel, the named defendants cannot
dispute the professionalism of both counsel and would not seek
to challenge their joint legal abilities.  However, what appears
to be a potential conflict with earlier clients, and the
impracticality of securing waivers from the earlier class
clients, suggests that Plaintiffs' counsel cannot fulfill the
obligations of representing the proposed class in the instant
action.

       The named defendants are not suggesting that Plaintiffs'
counsel are in violation of any professional obligation at this
time, but can easily foresee that the only method to avoid such

a violation would require waivers from, for instance, each plaintiff in the Johnson putative class action.  The logistical hurdle would make it impractical for counsel to continue to represent the Plaintiffs in the instant action.  See, e.g., District of Columbia Rules Of Professional Responsibility, Rule 1.9  (precluding a lawyer who has formerly represented a client in a matter from thereafter representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation).

     Here, we believe that this action is substantially related to, at least, the Johnson case, Civil Action No. 02-2364 RMC. The plaintiffs in Johnson have taken a legal and factual position at odds with that presented here, i.e., in Johnson the plaintiffs allege that the USMS conducted strip searches on women but not men (Complaint in Civil Action No. 02-2364 RMC, ¶¶ 8, 36(a) ("Among the questions of law and fact common to the class [of women] are: . . . whether Defendant District of Columbia and the United States Marshals Service have a policy or custom and practice of subjecting female arrestees being held in the Superior Court Cell Block pending presentment to blanket strip, visual body cavity and/or squat searches, but not subjecting men arrestees to such searches") (emphasis added)).

     The named defendants submit that it would be materially

adverse to the Johnson plaintiffs' interests for their former counsel[12] to establish in this civil action that the men were treated similarly, i.e. that "defendant Dillard and the USMS deputies conducted the uniform, blanket strip searches of each and every class member male arrestee. . ." Amended Complaint, ¶ 22. Because securing of a waiver from each proposed class member from Johnson is impractical (i.e., a class exceeding 1000 members, see Complaint in Civil Action No. 02-2364 RMC, ¶ 25), the named defendants believe that Mr. Cunningham would be unable to continue to act as counsel for the class. Although the named defendants do not wish to demean the abilities or experience of Mr. Wolfe, he is alleged to have far less experience than Mr. Cunningham, see Amended Complaint, ¶ 16; he is alleged to have graduated from law school in 2000, and describes his practice as "a small nonprofit legal advocacy organization" which he started in 2003. See Affirmation Of Zachary Wolfe In Support Of Plaintiffs' Motion For Class Certification, ¶ 4. Mr. Wolfe worked as co-counsel in three complex civil cases, two of which

---

[12] On September 6, 2005, Mr. Cunningham filed a "Motion For Withdrawal Of Lynn E. Cunningham As Counsel For Plaintiffs," advising that he desired to withdraw in order to devote to other matters the time that he would otherwise have devoted to this case." See Civil Action No. 02-2364 RMC, Docket No. 51 at 1. The motion was granted by Minute Order Entry on September 12, 2005. See id. and 9/12/05 Minute Entry Order in Civil Action No. 02-2364 RMC. The instant action was commenced on September 15, 2005. Thus, the named defendants have focused on Rule 1.9 rather than Rule 1.7 of the District of Columbia Rules Of Professional Responsibility.

were class actions, but he has not alleged he was lead counsel
and has not prosecuted the claims to completion in any of the
cases.  Thus, if Mr. Cunningham were not able to continue in his
representation for lack of waivers from his former clients or
otherwise, Mr. Wolfe's small practice would not appear to
satisfy Fed. R. Civ. P. 23(a)(4).

     E.  <u>Maintenance of Class Action under Rule 23(b)</u>

     Rule 23(b)(3) requires that class certification be denied
unless "questions of law or fact common to the members of the
class predominate over any questions affecting only individual
members."  In addition, plaintiffs must demonstrate that the
proposed class action is the superior method of handling the
claims of putative class members.  Fed. R. Civ. P. 23(b)(3).  If
a class were certified in this case, the numerous individual
issues requiring time-consuming discovery and resolution by the
Court would overwhelm the straightforward common questions still
to be resolved.  A class action is thus rendered an infeasible
method of adjudication.

     Courts have concluded that the predominance requirement is
not satisfied and class certification is improper when
individualized consideration would be required for one or more
issues.  <u>See</u> <u>Castano</u> v. <u>American Tobacco Co.</u>, 84 F.3d 734, 745
(5th Cir. 1996) (predominance requirement of Rule 23(b)(3)
cannot be satisfied in a fraud case where individual reliance

will be an issue); McCarthy, 741 F.2d at 1415 (district court properly denied class certification to persons allegedly wrongfully arrested at a mass demonstration where individualized issues, such as whether probable cause existed for each arrest, had to be resolved); Simer, 661 F.2d at 673 (issue of whether the regulation challenged by plaintiffs was inconsistent with the authorizing statute would be common to the class, but could be expeditiously resolved by the trial court; in contrast, the issue of the effect of the allegedly illegal regulation on each class member would require individualized and time-consuming proof); Davenport v. Gerber Products Co., 125 F.R.D. 116, 119-20 (E.D. Pa. 1989); Polich v. Burlington Northern, Inc., 116 F.R.D. 258, 262-63 (D. Mont. 1987), see also Garcia v. Johanns, supra, slip op. at 6 (noting that Rule 23(b)(2) certification had been declared inappropriate because the $20 billion in damages sought predominated over the plaintiffs' request for equitable relief).

In this case, the class action vehicle is especially inappropriate because individualized adjudication would be required of each class member's very entitlement to prevail. The questions would arise in each instance whether each Plaintiff was strip searched and, if so, whether for each there was a lawful basis for the search. In addition, the issue of the extent of the injury suffered by each Plaintiff as a result of the purported violation must be established. See McCarthy,

741 F.2d at 1415 (court focuses on impropriety of a class action "where initial determinations, such as the issue of liability vel non, turns upon highly individualized facts"); Davenport, 125 F.R.D. at 120 (predominance requirement not satisfied where issues of liability needed to be resolved on an individual basis, rendering a class action unmanageable). Cf. Lewis, 146 F.R.D. at 9, 12 (typicality and predominance requirements were met where question of liability was common to the entire class). Nor can Plaintiffs establish that a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy," which is an additional requirement of Rule 23(b)(3). See McCarthy, 741 F.2d at 1415 (class action is not the superior method of resolving the controversy where initial determinations turn upon highly individualized facts); Simer, 661 F.2d at 668-69 (issue of each plaintiff's state of mind makes a class action unmanageable); In re Three Mile Island Litigation, 87 F.R.D. 433, 441-42 (M.D. Pa. 1980) (class action is not the superior method for adjudicating claims for physical injury related to emotional distress because such claims are "diverse and personal" and causation element will require individual proof). Indeed, were it superior to litigate the claims as the Plaintiffs' posit, those claims would certainly be part of at least one of the numerous other class actions cited herein and acknowledged by Plaintiffs.

Plaintiffs seek to have the costs of any notice to class members paid for by the defendants.  See Plaintiffs' Mem. at 24. Plaintiffs offer no authority for such prepayment of costs, id.; and such costs are, in fact, not taxable, if at all, prior to the entry of judgment in a civil action and thus the resolution of which party can be said to have prevailed.  See Fed. R. Civ. P. 54(d); Local Civ. R. 54.1; 28 U.S.C. §§ 1920, 1924, 2412 (costs limited to "reimbursing  . . . the prevailing party for the costs incurred by such party in the litigation").  Any request for payment would, therefore, be both unwarranted and premature.

## CONCLUSION

In sum, certifying Plaintiffs' requested class would neither satisfy the explicit requirements of Rule 23(b)(3), nor serve the Rule's purpose of "achiev[ing] economies of time, effort, and expense."  Nor does it appear practical for current counsel to continue in their representation of the Plaintiffs.

For the reasons stated herein, Plaintiffs' Motion For Class Certification should be denied.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Opposition To Plaintiffs' Motion For Class Certification and a proposed Order has been made through the Court's electronic transmission facilities on this 3rd day of April, 2006.

_____
W. MARK NEBEKER
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230