

U.S. Department of Justice

United States Marshals Service

*Director*

600 Army Navy Drive
Arlington, VA 22202-4210

July 15, 1999

**MEMORANDUM TO:** All U.S. Marshals Service Employees

**FROM:** George R. Havens
Acting Director

**SUBJECT:** Body Searches

The attached Policy Directive 99-25, *Body Searches*, provides specific instructions for U.S. Marshals Service (USMS) employees to follow when conducting a search of a person, including juveniles. Limitations for conducting searches of persons by law enforcement officers are set forth in the U.S. Constitution and in case law. This policy directive provides the procedures necessary for conducting both reasonable and legal searches. Questions concerning body searches should be referred to the Office of General Counsel.

This policy directive should be placed in a temporary binder.

Attachment



**U.S. Department of Justice**

# United States Marshals Service



## Policy Directive

Subject Index:

Body Searches
Pat-down Searches
In-custody Searches
Strip Searches
Search Procedures

No. 99-25
July 7, 1999
File No. 5000

## BODY SEARCHES

I. **PURPOSE:** This policy directive provides specific instructions to U.S. Marshals Service (USMS) employees for determining if, and under what conditions, body searches are legally permissible and how they will be conducted.

II. **AUTHORITY:** The Director's authority to issue this directive governing body searches is set forth in the 28 USC 566 (a) (d).

III. **POLICY:**

   A. Deputy U.S. Marshals are authorized to conduct the following types of searches of prisoners and other persons who are under arrest:

   1. Pat-down search
   2. In-custody search
   3. Strip search
   4. Digital cavity search
   5. Search incident to a lawful arrest

   B. This directive applies to all searches of persons, including juveniles. Whenever possible, an authorized body search will be conducted by ▓▓▓ USMS employees.

Page 1 of 7



Body Searches
99-25

C. Body searches require a professional, systematic, methodical, and consistent approach exhibited by a polite but firm demeanor. Persons to be searched should not be physically forced as long as they comply with commands.

## IV. PROCEDURES:

A. **Pat-down Search:** A procedure of patting or running of a deputy's hands over the person's clothed body as well as the opening of pockets or other areas where weapons or contraband may be concealed. The following procedures are applicable to pat-down searches:

   1. In a cellblock, pat-down searches may be conducted on a routine basis without a threshold level of suspicion.

   2. When a person needs to be removed immediately from the scene for his or her safety or the safety of the arresting deputies, a pat-down search may be performed instead of an in-custody search.

   3. To ensure that all areas are covered, the pat-down search will begin at the top of the body and work down.

B. **In-custody Search:** A more exact and complete search of the prisoner's body and attire. The following procedures are applicable to an in-custody search:

   1. Conduct the search at the time of arrest (if possible), when assuming custody from another authority or agent, upon acceptance of a prisoner at a USMS cellblock or detention facility, prior to transportation, or before a courtroom appearance.

   2. Remove the contents from all the pockets found on the prisoner's clothing, as well as any jacket, coat, belt, eyeglasses, or other clothing articles belonging to the prisoner. The prisoner will remove his or her outer clothing and shoes/socks until the search of both is complete. The prisoner will vigorously brush his or her hair in order to dislodge any contraband. If the prisoner does not, to the satisfaction of the deputy conducting the search, adequately brush his or her hair, the deputy will conduct the hair search by using the hands or an item such as a pen or pencil.

   3. Visually inspect behind each ear and look inside the prisoner's ear canals, nostrils, and mouth, to include checking under the tongue, roof of the mouth, and between the lips and gums.

Body Searches<br>99-25

4. Inspect all property removed from the prisoner, including a careful examination of shoes. Any contraband will be retained and inventoried on USM-102, *Property Report*, if necessary, for eventual return, disposal, or preservation of evidence.

C. ***Strip Search:*** A complete search of a prisoner's attire and a visual inspection of the prisoner's naked body, including body cavities. The following procedures are applicable to a strip search:

1. Strip searches on prisoners in custody are authorized when there is reasonable suspicion that the prisoner may be (a) carrying contraband and/or weapons, or (b) considered to be a security, escape, and/or suicide risk. Reasonable suspicion may be based upon, but is not limited to, one or more of the following criteria:

   a. Serious nature of the offense(s) charged, i.e., whether crime of violence or drugs;
   b. Prisoner's appearance or demeanor;
   c. Circumstances surrounding the prisoner's arrest or detention; i.e., whether the prisoner has been convicted or is a pretrial detainee;
   d. Prisoner's criminal history;
   e. Type and security level of institution in which the prisoner is detained; or
   f. History of discovery of contraband and/or weapons, either on the prisoner individually or in the institution in which prisoners are detained.

2. When conducting a strip search, deputies shall ensure that they have a private location that prevents all but designated personnel from viewing the prisoner. The area will be free of CCTV (closed circuit television) cameras.

3. A strip search should always be conducted by a deputy of the same sex, unless the person conducting the search is a physician, physician's assistant, or nurse. A witness of the same sex as the person being searched must be present during a strip search. If a deputy of the same sex as the prisoner being searched is not available to serve as a witness, a deputy of the opposite sex may be positioned outside the search room so as not to view the subject, with the door ajar, for the purpose of corroborating the remarks made by the individuals in the room and providing assistance in the event of an emergency (e.g. an assault on the deputy conducting the search or a medical emergency).

4. A strip search (visual examination) should not involve touching the skin surface. If the prisoner refuses to cooperate in removing any article of clothing or by otherwise impeding the deputy in the search, reasonable force may be used to complete the search.

5. Once the decision has been made to conduct a strip search, it must be done in a professional manner, causing the prisoner as little embarrassment as possible.

6. When conducting a strip search, the deputy will:

   a. Instruct the prisoner to remove all loose articles (including valuables, hairpieces, dentures, glasses, etc.). Separate the clothing and any other items from the prisoner prior to the search, and conduct a thorough visual examination of the prisoner's body, from the top of the head to the bottom of the feet.
   b. Direct the prisoner to vigorously brush his or her hair with fingers to dislodge any contraband.
   c. Inspect behind each ear and look inside the prisoner's ear canals, nostrils, and mouth, checking under the tongue, roof of the mouth, and between the lips and gums. Visually inspect down the front of the body, paying close attention to areas such as armpits, breasts, and genital area. Direct the prisoner to face in the opposite direction and conduct a visual inspection of the upper back area.
   d. Direct the prisoner to spread his or her legs and bend forward at the waist. Observe the anus area and genitals from the rear. Conclude with an observation of the bottoms and between the toes of both feet.
   e. Conduct a thorough search of all clothing and property removed from the prisoner before returning any of the items to the prisoner. The clothing inspection should include any areas where contraband or weapons may be located (i.e., pockets, linings, collars, cuffs). Items not returned to a prisoner are to be inventoried on a USM-Form 18, *Prisoner Property Receipt*.

7. Prior to accepting a prisoner(s) from a detention facility, institution, or other inside or outside source, deputies may perform their own strip search as necessary based on the factors (listed in Section C-1) due to the prisoner's contact with individual(s) inside or outside the facility and the need for a thorough search for contraband and/or weapons. If a deputy has reasonable suspicion that a strip search is necessary, and is denied the opportunity or space to perform a strip search, the deputy is authorized to refuse acceptance of the prisoner. The U.S. Marshal and JPATS (if a JPATS trip is involved) are to be immediately notified if a prisoner is not to be transported.

D. *Digital Cavity Search:* A search that involves intrusion or entrance into a body cavity (mouth, ears, nostrils, rectum, vagina) by anyone other than the prisoner being searched, using a finger, thumb, tongue depressor, simple octoscope, or short nasal speculum. The following procedures are applicable to a digital cavity search:

Body Searches
99-25

1. Determine if reasonable suspicion exists to believe the prisoner has concealed contraband in a body cavity before this type of search is undertaken. The prisoner should be kept under constant visual surveillance until the search is conducted.

2. Only a physician, physician's assistant, or nurse are authorized to administer a digital cavity search; unless exceptional circumstances require emergency action by nonmedical personnel.

3. Contact the U.S. Attorney regarding the advisability of a search warrant if circumstances indicate that a digital intrusion is justified but not immediately required for security or safety reasons. Obtain approval from a USMS supervisor to conduct this type of search.

4. As an alternative, a photographic search may be conducted using x-rays to locate swallowed contraband or contraband hidden in casts, prosthetic devices, or prisoner's property. This medical procedure must be conducted by a physician and documented as in the case of a digital cavity search.

E. *Search Incident to a Lawful Arrest:*

1. A search for weapons and evidence is permitted as incidental to a lawful arrest. The extent to which this search is performed will depend on the facts and circumstances of each case.

2. In addition to permitting a thorough search for evidence or weapons, a search incident to a lawful arrest may include a search of personal items carried by the subject as well as the surrounding area within the immediate reach and control of the subject.

F. *Prisoners of the Opposite Sex:*

1. Prisoners will be searched by a deputy of the same sex; however, in extenuating circumstances, or where the need for security dictates, an in-custody search may be conducted by a deputy of the opposite sex. A hand-held metal detector may be used to supplement the search under these circumstances.

2. Pat-down searches and searches incident to a lawful arrest may be performed by deputies of the opposite sex in extenuating circumstances and when a deputy of the same sex is not available. In this case, the search will be made in the presence of another person and documented using USM-Form 210, *Incident Report*. A more complete search will be performed when the prisoner has been removed from the danger area.

Body Searches
99-25

G. *Reporting Procedures:*

1. Any strip search conducted for reasons other than receipt of a new prisoner shall be reported on USM-Form 210, *Incident Report*, the same day the search is conducted. The report shall contain the following details:

   a. Identity of the prisoner searched;
   b. Date, place, and type of search;
   c. Time and duration of search;
   d. Evidence or information that led a deputy to believe the strip search was warranted, along with any recommendation for further action;
   e. Identity of the deputy conducting and the supervisor approving the search;
   f. The names of all persons present during the search;
   g. A detailed description of the nature and extent of the search; and
   h. A description of any weapons, evidence, or contraband found during the search.

2. All digital cavity searches shall also be reported on USM-210, *Incident Report*, and shall include the identity of the supervisor approving the search as well as the name and title of the medical person performing the search. See Section G-1.

3. The completed USM-Form 210 will be placed in the prisoner's file, with a copy forwarded to the appropriate U.S. Marshal.

V. DEFINITIONS:

A. *Deputy (U.S. Marshal):* Includes all operational employees assigned to the 1811 job series, Detention Enforcement Officers, contract guards, and U.S. Marshals.

B. *Body Search:* A search conducted for an official law enforcement purpose which may include the patting down of a prisoner for weapons or contraband, the removal and examination of the clothing worn by a prisoner, or the examination of the exterior skin surface and interior body cavities.

C. *Reasonable Suspicion:* Articulable facts that reasonably lead a deputy to suspect that a particular person is concealing a weapon, contraband, or evidence of a crime on or within his or her body.

Body Searches
99-25

**Effective Date:**

7/15/99

**By Order of:**

*[signature]*
George R. Havens
Acting Director
U.S. Marshals Service

**Cancels:** Policy Notice 95-013, *Strip Searching of Prisoners*; Section 5.4-2; *USMS Policy and Procedures Manual*, Volume V, Prisoner Operations, NPTS and Air Operations.
**Cross Reference:** Policy Directive, *Cellblock Operations*; *OGC Legal Update*, No. 7, June 1999
**Proponent:** Executive Services Division, Policy Center, 202/307-9480; FAX 202/307-9831

This policy directive has been negotiated with and approved by the International Council of U.S. Marshals Service Locals, American Federation of Government Employees.