UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL BAME, <u>et</u> <u>al.</u>,            )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )      Civil Action No. 05-1833 RMC
                                    )
JOHN F. CLARK, <u>et</u> <u>al.</u>,         )
   Acting Director,                 )
   U.S. Marshals Service,           )
                                    )
            Defendants.             )
_____   )

<u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

      The Named Defendants, the Acting Director of the United

States Marshals Service (John F. Clark), the United States

Marshal for the Superior Court of the District of Columbia (Steve

Conboy), and former United States Marshal for the Superior Court

of the District of Columbia (Todd Dillard), by and through

counsel, hereby move pursuant to Fed. R. Civ. P. 12(b)(1) and (6)

to dismiss this action.  In the alternative, the Named Defendants

move for summary judgment in their favor, pursuant to Fed. R.

Civ. P. 56.  The Court is respectfully referred to the

accompanying memorandum of points and authorities in support of
this motion.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL BAME, et al.,                    )
                                      )
          Plaintiffs,                 )
                                      )
     v.                               )    Civil Action No. 05-1833 RMC
                                      )
JOHN F. CLARK, et al.,                )
  Acting Director,                    )
  U.S. Marshals Service,             )
                                      )
          Defendants.                 )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

INTRODUCTION

Plaintiffs, Paul Bame, Gregory Keltner and Ivan Welander have brought this purported class action on behalf of themselves and in what they argue is a representative capacity for other men who were allegedly subject to a strip search after being arrested on September 27, 2002, during several large protests against International Monetary Fund ("IMF") policies. See Amended Complaint, ¶¶ 1, 4-6, 12, 15. John F. Clark and Steve Conboy are each sued only in their official capacities; Todd Dillard is sued only in his individual capacity. Id., ¶¶ 7-9.

The specific relief sought beyond certification of a class, is the award of damages and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Amended Complaint at 16. The official capacity claims (i.e. those against Defendants Clark and Conboy) are subject to dismissal because there has been no waiver

of sovereign immunity for such claims.  In any event, the claims under 42 U.S.C. § 1983 are subject to dismissal because such claims apply only to actions by persons acting under color of state law, and the defendants were acting under color of federal law.  Any Bivens[1] claim is subject to dismissal as untimely.  Insofar as Plaintiffs may seek to pursue Bivens claims on behalf of anyone who identified themselves to police as required by law, they lack standing to pursue such a claim.  Finally, the Bivens defendant would, at a minimum, enjoy qualified immunity for any claim that he allowed strip searches of the arrestees entering the Superior Court cell block who refused to identify themselves to police.

ARGUMENT

Sovereign immunity and limitations of Section 1983

Plaintiffs' official capacity claims (i.e. those against defendants Clark and Conboy) are subject to dismissal because there has been no waiver of sovereign immunity for a money damages claim against the sovereign for a purported violation of a Constitutional right, and an action under 42 U.S.C. § 1983 explicitly applies to those persons who, while acting under color of the law of any State, Territory, or the District of Columbia

_____

[1] See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

(collectively the "State"), violate the protected constitutional or federal statutory right of another.

Plaintiffs seek only monetary relief in this action for an asserted violation of a constitutional right. <u>See</u> Complaint, ¶¶ 52, 58. There has been no waiver of sovereign immunity for such a claim. <u>FDIC</u> v. <u>Meyer</u>, 510 U.S. 471, 478 (1994) (a constitutional tort claim is not cognizable under the FTCA); <u>Settles</u> v. <u>U.S. Parole Commission</u>, 429 F.3d 1098, 1106 (D.C. Cir. 2005) (sovereign immunity bars Section 1983 claims against a government agency); <u>Kauffman</u> v. <u>Anglo-American School of Sofia</u>, 28 F.3d 1223 (D.C. Cir. 1994); <u>Clark</u> v. <u>Library of Congress</u>, 750 F.2d 89, 102-104 (D.C. Cir. 1984) (sovereign immunity acts as a bar to a damages remedy against a federal employee in an official capacity).

In any event, Section 1983 provides:

> <u>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects</u>, or causes to be subjected, <u>any citizen</u> of the United States or other person within the jurisdiction thereof <u>to the deprivation of any rights, privileges or immunities secured by the Constitution and laws,</u> <u>shall be liable</u> to the person injured <u>in an action at law, suit in equity, or other proper proceeding for redress</u>, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

-3-

42 U.S.C. § 1983 (emphasis added).

Thus, § 1983 does not generally apply to federal officials acting under color of federal law.  See Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987).  Rather, by its terms, § 1983 applies only to actions under color of state law and does not ordinarily provide a basis for claims against federal officials. The only possible exception occurs when there is a conspiracy between state and federal officials resulting in an abuse of authority derived from state law.  Kletschka v. Driver, 411 F.2d 436, 448 (2d Cir. 1969).

Not only has there been no waiver of sovereign immunity, as made clear in Settles, but the Federal Government and its officials in their official capacities are not even "persons" within the meaning of the Section 1983.  Section 1983 permits suit against a "person" acting under color of law of any state. The United States Marshals Service is not a "person" for purposes of this statute, and therefore cannot be sued under § 1983.  See Al Fayad v. C.I.A., 229 F.3d 272 (D.C. Cir. 2000) (government is not a "person" absent affirmative evidence in statute of intent to include sovereign government within term).  See also Hindes v. FDIC, 137 F.3d 148, 158 (3d Cir. 1998) ("We find no authority to support the conclusion that a federal agency is a 'person' subject to section 1983 liability, whether or not in an alleged conspiracy with state actors.  We, therefore, hold that federal

-4-

agencies are not 'persons' subject to section 1983 liability.");
Hoffman v. U.S. Dep't of Housing & Urban Dev., 519 F.2d 1160,
1165 (5th Cir. 1975) ("a federal agency is also excluded from the
scope of section 1983 liability").  When sued in their official
capacities, government officials are not personally liable for
damages; rather the damages action is equivalent to one against
the government itself.  See Atchinson v. District of Columbia, 73
F.3d 418, 424 (D.C. Cir. 1996).  That plaintiffs may have named
(or sought to name) federal employees as defendants in their
official capacities does not operate to evade the immunity of the
sovereign.  See Clark v. Library of Congress, 750 F.2d at
102-104.

The legislative history clearly shows that Congress did not
intend for Section 1983 to apply against federal actors.
Instead, it was promulgated to provide a measure of federal
control over state officials who were either unwilling or unable
to protect certain individuals against the deprivation of their
constitutional rights.  Section 1983 provided a remedy where none
existed.  It provided a mechanism to protect against a state
official's conduct.

The named defendants in the instant action are alleged to
have operated as current or former officers of the United States
Marshals Service.  See Amended Complaint, Caption and ¶¶ 1, 7-10.

-5-

As such, these officers would have acted under color of federal law, specifically under color of 28 U.S.C. §§ 561-569.[2]

Congress, in describing a 1979 amendment to Section 1983 "makes clear that Federal courts shall have jurisdiction of section 1983 actions <u>against District of Columbia officials</u> acting under authority of local laws, even if those laws were passed by Congress." H.R. Rep. No. 96-548, at 2 (1979), reprinted in 1979 U.S.C.C.A.N. 2609, 2610.

Thus, the words and history of Section 1983, including the 1979 amendment do not provide for a cause of action under Section 1983 under the circumstances described in plaintiffs' Amended Complaint. The purpose of Section 1983 was to provide a cause of action where there was none. Indeed, Congress in 1979 did just that when it again provided individuals within the District of Columbia with a remedy for the deprivation of protected rights where there was none before. In the instant case, plaintiffs' remedy, if one exists, was created by the Supreme Court in <u>Bivens</u>. Under proper circumstances, Plaintiffs may pursue a Fourth Amendment claim under the <u>Bivens</u> doctrine against a

---

[2] It is worthy of note that the authority of United States Marshals and Deputy U.S. Marshals extends beyond the District of Columbia (or whatever district in which they primarily work), to any state in which they may execute the laws of the United States. 28 U.S.C. § 564; <u>United States</u> v. <u>Boettcher</u>, 588 F.2d 89 (4th Cir. 1978) (U.S. Marshal may execute arrest warrants at any place within jurisdiction of the United States); <u>United States</u> v. <u>Hanna</u>, 114 WLR 1153 (Super. Ct. 1986)(noting extraterritorial nature of certain Superior Court warrants).

federal employee in his or her individual capacity, but not a
Section 1983 action.  See e.g., Berry v. Funk, 146 F.3d 1003,
1013 (D.C. Cir. 1998) (noting that plaintiffs can bring Bivens
actions against federal officials and section 1983 actions
against state officials); McCord v. Bailey, 636 F.2d 606, 613
(D.C. Cir. 1980) ("Actions of federal officers are outside of
[section 1983's] proscriptions."); Kingsley v. Bureau of Prisons,
937 F.2d 26, 30 n. 4 (2nd Cir. 1991) (an action brought pursuant
to Section 1983 "cannot lie against federal officials"); Heck v.
Humphrey, 512 U.S. 477 (1994) (stating that section 1983 provides
access to a federal forum for claims of unconstitutional
treatment at the hands of state officials); Community For
Creative Non-Violence v. Unknown Agents of the United States
Marshals Service, 791 F. Supp. 1 (D.D.C. 1992) (the United States
Marshals Service for the Superior Court of the District of
Columbia was acting under color of federal law when Deputy
Marshals executed an arrest warrant issued by the D.C. Superior
Court).

The traditional definition of acting under color of state
law requires that the defendant in a § 1983 action have exercised
power "possessed by virtue of state law and made possible **only**
because the alleged wrongdoer is clothed with the authority of
state law." Williams v. United States of America, 396 F.3d 412,
414 (D.C. Cir. 2005) (emphasis added) (quoting United States v.

-7-

Classic, 313 U.S. 299, 326 (1941)); West v. Adkins, 487 U.S. 42,

49 (1988); accord Monroe v. Pape, 365 U.S. 167, 187 (1961)

(adopting Classic standard for purposes of § 1983) (overruled in

part on other grounds); Monell v. New York City Dept. of Social

Services, 436 U.S. 658, 695-701 (1978)); Polk County v. Dodson,

454 U.S. 312, 317-18 (1981).

The Williams court held that a Section 1983 action could not

be maintained against a special police officer employed by the

U.S. Government Printing Office, who allegedly unlawfully

arrested appellant.  Id. at 413.  The Government Printing Office

is a federal agency which employed the appellee as a special

policeman.  Id.  Federal law authorized these policemen to

> make arrest[s] for violations of laws of the United
> States, the several States, and the District of
> Columbia; and enforce the regulations of the Public
> Printer, including the removal from Government printing
> office premises of individuals who violate such
> regulations.  The jurisdiction of special policemen in
> premises occupied by or under the control of the
> Government Printing Office and adjacent areas shall be
> concurrent with the jurisdiction of the respective law
> enforcement agencies where the premises are located.

Id. (citing 44 U.S.C. § 317).  Williams, was arrested by Officer

Hardwick and thereafter alleged the deprivation of his Fourth and

Fifth Amendment rights in violation of Section 1983.  The Court

rejected Williams' contention holding that Williams could not

maintain a cause of action against the officer under Section 1983

and noting that "plaintiffs alleging abuse by federal officials

-8-

are not without a remedy. . . as Williams could have brought an action against Hardwick under <u>Bivens</u>. . ." <u>Id.</u>, at 416.

To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." <u>Id.</u> "[S]tate employment is generally sufficient to render the defendant a state actor." <u>Lugar</u> v. <u>Edmondson Oil Co.</u>, 457 U.S. 922, 936, n. 18, 937 (1982); <u>see also</u> <u>Williams</u>, <u>supra.</u>, at 414-16. Moreover, a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. <u>See</u> <u>Monroe</u> v. <u>Pape</u>, 365 U.S. at 172. Thus, generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. <u>See</u>, <u>e.g.</u>, <u>Parratt</u> v. <u>Taylor</u>, 451 U.S. 527, 535-536 (1981); <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970).

The Ninth Circuit in <u>Tongol</u> v. <u>Usery</u>, 601 F.2d 1091 (9th Cir. 1979), discussed the "color of state law" requirement. <u>Tongol</u> involved state officials who sought to recover overpayments of Federal Supplemental Benefits ("FSB") under the Emergency Unemployment Compensation Act of 1974. <u>Id.</u> at 1097. The Court held that the state officials who sought to recover these FSB overpayments were empowered to act only by virtue of

their authority under state law.  Id.   The Court went on to hold

that "the 'color of state law' requirement of section 1983 has

consistently been treated as the same thing as the 'state action'

requirement of the Fourteenth Amendment. [citations omitted].

Id. at 1095.  Courts applying the 'color of state law'

requirement have indicated that the relevant inquiry focuses not

on whose law is being implemented, but rather on whether the

authority of the state was exerted in enforcing the law.

[citations omitted]."  Id. at 1097.

     The Third Circuit has held that "there [i]s no set formula

for determining whether the employees of an agency with both

state and federal characteristics must be examined to consider

whether the acts complained of were sufficiently linked to the

state."  Johnson v. Orr, 780 F.2d 386, 390 (3rd Cir. 1986).  "A

crucial inquiry is 'whether day-to-day operations are supervised

by the Federal [or state] government.'"  United States v. Orleans,

425 U.S. 807, 815 (1976).

     In Case v. Milewski, 327 F. 3d 564, 567 (7th Cir. 2003), the

court recognized two circumstances in which a party may be found

to act under color of state law.  The first is when the states

have cloaked the defendants in some degree of authority, normally

through employment or some other agency relationship.  Id. at

567; see Yang v. Hardin, 37, F.3d 282, 284 (7th Cir.

1994)(finding that Chicago police officers were acting under

-10-

color of state law when "[t]hey were on duty, wearing Chicago
police uniforms, driving a marked squad car and were
investigating a crime."); <u>Pickrel</u> v. <u>City of Springfield,
Illinois</u>, 45 F.3d 1115, 1118 (7th Cir. 1995) (finding an off-duty
Springfield, Illinois police officer could have been acting under
color of state law because he was wearing his police uniform and
displaying his badge.)

The second circumstance is when the defendants have
conspired or acted in concert with state officials to deprive a
person of his civil rights.  In order to establish a conspiracy,
the party must demonstrate that the state officials and the
private party somehow reached an understanding to deny a party of
his constitutional rights.  <u>Case</u>, 327 F.3d 564, 567 [citations
omitted].  The court further acknowledged that "although an
action brought pursuant to § 1983 cannot lie against federal
officers acting under color of federal law, it is assumed that a
§ 1983 action can lie against federal employees . . . as it can
against private individuals . . . *if they conspire or act in
concert with state officials to deprive a person of her civil
rights under color of state law.*" (emphasis added).

When distinguishing between federal and state actors, "[a]
crucial inquiry is 'whether day-to-day operations are supervised
by the Federal [or state] government.'" <u>Johnson</u> v. <u>Orr</u>, 780 F.2d
386, 390 (3rd Cir. 1986).  The Deputy Marshals are supervised and

controlled by the U.S. Marshals Service not the District of
Columbia.  Even the D.C. Statute acknowledging that the Marshals
Service "serves the courts of the District of Columbia," also
confirms that such service is "subject to the supervision of the
Attorney General of the United States." D.C. Code § 11-1729.
Indeed, the Plaintiffs admit that "[i]ndividual defendants were
following USMS and USMDC policy, customs, and practices. . . and
[a]t all relevant times individual defendants were acting within
the scope of their employment, their acts were motivated by a
desire to further the interests of the USMS and USMDC."  Amended
Complaint, ¶¶ 44-45.[3]  Accordingly, Counts Two, Three and Four
should be dismissed.

        Any Bivens Claim Is Untimely.

        Defendants submit that the one-year statute of limitations
governs Plaintiffs' Bivens claims.

                When a federal action contains no statute of
                limitations, courts will ordinarily look to analogous

---

        [3]  Although the plaintiffs also aver that they were
proceeding "under color of District of Columbia law," Amended
Complaint, ¶ 46, the Court need not accept legal conclusions cast
in the form of factual allegations.  Lowal v. MCI Communications
Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Where the Court need
only take judicial notice of the statutes providing the authority
for the U.S. Marshals to act, it is clear that there exists no
factual dispute on the issue.  Similarly, because the Plaintiffs
themselves admit that the acts of which they complain only
occurred after the D.C. police relinquished custody of the
plaintiffs to federal authorities and pursuant to the Federal
policies, see Amended Complaint, ¶¶ 44, 46, there is no basis for
their claim that they acted as agents of the District of
Columbia.

provisions in state law as a source of a federal
limitations period. <u>See</u>, <u>e.g.</u>, <u>Burnett</u> v. <u>Grattan</u>, 468
U.S. ----, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984);
<u>Johnson</u> v. <u>Railway Express Agency, Inc.</u>, 421 U.S. 454,
464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975);
<u>Brown</u> v. <u>United States</u>, 742 F.2d 1498, 1503 (D.C. Cir.
1984) (en banc). Concluding that "damage to reputation
... is central to the [plaintiff's] claim," Opinion at
2, the district court applied the District of
Columbia's one year statute of limitations governing
defamation actions to Doe's <u>Bivens</u> suit. <u>See</u> D.C. Code
§ 12-301(4). The D.C. statute of limitations reads, in
relevant part: Except as otherwise specifically
provided by law, actions for the following purposes
may not be brought after the expiration of the period
specified below from the time the right to maintain the
action accrues:. . .(4) for libel, slander, assault,
battery, mayhem, wounding, malicious prosecution, false
arrest or false imprisonment -- 1 year; . . .(8) for
which a limitation is not otherwise specially
prescribed--3 years. D.C. Code § 12-301. We agree
with the district court that the one year limitations
period should be applied.

<u>Doe</u> v. <u>United States Department of Justice</u>, 753 F.2d 1092, 1114 &

n.28 (D.C. Cir. 1985) (footnote inserted into text). Here, the

allegedly unlawful action took place in September 2002. <u>See</u>

Amended Complaint, ¶¶ 11-12. The original complaint was not

filed until 2005, well beyond the one-year limitations period.[4]

_____

[4] Defendants recognize that the Supreme Court has reached a
different conclusion in addressing Section 1983 actions. <u>See</u>
<u>Wilson</u> v. <u>Garcia</u>, 471 U.S. 261, 271-72 (1985) (applying statutory
construction principles to Section 1983 and concluding that the
personal injury limitations period would presumably apply). A
<u>Bivens</u> action, however, is not created by statute; and
plaintiffs' claims are most like those described in D.C. Code §
12-301(4). <u>See</u> <u>Banks</u> v. <u>Chesapeake and Potomac Telephone Co.</u>,
802 F.2d 1416, 1429, (D.C. Cir. 1986) (<u>citing</u> <u>McClam</u>, 697 F.2d
at 372-74). Courts in other jurisdictions have, in defendants'
view, incorrectly assumed that the statutory analysis applied in
<u>Wilson</u> should also be applied in the <u>Bivens</u> context. <u>See</u> <u>e.g.</u>,
<u>Harris</u> v. <u>United States</u>, 422 F.3d 322, 331 (6th Cir. 2005). To

-13-

See <u>McClam</u> v. <u>Barry</u>, 697 F.2d 366, 372-74 (D.C. Cir. 1983) (false arrest claim most closely analogous to a claim under D.C. Code § 12-301(4)).  Thus, Count One is subject to dismissal as untimely.

> Plaintiffs Lack Standing to Pursue Claims
> <u>of Those Who Identified Themselves to Police.</u>

The named plaintiffs, Paul Bame, Gregory Keltner and Ivan Welander, allege that they were among those arrested, yet their names do not appear on the Lock Up lists which they have attached to Plaintiff's Motion For Class Certification.  Thus, if as the individual plaintiffs allege, they were arrested during the IMF demonstrations and remanded to the custody of the U.S. Marshals Service, then each of them must be listed on the Lock Up lists as "John Doe."  Plaintiffs' Exhibit 1 (attached to Plaintiffs' Motion For Class Certification).[5]  This significant detail regarding the individual plaintiffs makes them unlike any of the men whom they seek to represent who properly identified

---

defendants' knowledge this Circuit has not accepted this invitation to treat <u>Bivens</u> claims as if they are subject to the statutory analysis applied in <u>Wilson</u>.  <u>Bivens</u> claims are uniquely creatures of Federal common law, and as such they cannot and should not be treated uniformly, as contemplated in <u>Wilson</u>.  Instead, local law has elected to separate common law claims as subject to differing limitations periods, depending on the nature of the claim.  This practice should continue to be followed unless and until the District of Columbia adopts a separate limitations period for <u>Bivens</u> claims.  <u>See</u> <u>Banks</u> v. <u>Chesapeake and Potomac Telephone Co.</u>, 802 F.2d at 1429.

[5]  The Lock Up Lists contain the names of 54 men identified only as John Doe, but no Paul Bame, Gregory Keltner or Ivan Welander.

themselves when arrested, as required by District of Columbia law. See D.C. Code § 50-2303.07 (formerly D.C. Code § 40-627); see also Barnett v. United States, 525 A.2d 197, 199 and n.6 (D.C. 1987) (A pedestrian who refuses to provide his or her name and address to a police officer upon request after having been stopped for committing an infraction shall, upon conviction, be fined; and violations shall continue to be prosecuted as criminal offenses).

The Supreme Court has disfavored across-the-board class actions as a typical mechanism to pursue civil rights actions. See General Telephone Co. v. Falcon, 457 U.S. 147 (1982); East Texas Motor Freight Systems, Inc. v. Rodriques, 431 U.S. 395 (1977). These cases firmly establish that the "class representative [must] be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (emphasis added); Rodriques, 431 U.S. at 403 (emphasis added). Here, the individual plaintiffs do not possess the same interests as those of the arrestees who lawfully identified themselves to the proper authorities upon being arrested. Instead, they possess only a lesser interest to be free from more intrusive searches upon arrest, because one may logically infer that someone who is refusing to abide by a law requiring them to identify themselves to police reasonably may be attempting to hide something. Under those circumstances, the

plaintiffs are less likely to diligently pursue claims other than those which would benefit the "John Doe" arrestees.  In this respect, the individual plaintiffs fail to satisfy the requirements of Fed. R. Civ. P. 23(a); and they lack standing to pursue claims on behalf of the arrestees who provided their names.  See Blum v. Yaretsky, 457 U.S. 991 (1982) (class representatives who had been transferred to lower levels of medical care lacked standing to challenge transfers to higher levels of care); Defendants' April 3, 2006 Opposition To Motion For Class Certification at 19-23; see also Thomas v. Albright, 139 F.3d 227, 236 (D.C. Cir. 1998). (The purpose of the requirement that representative parties are typical of the claims or defenses of the class is to ensure "that the class representatives have suffered injuries in the same general fashion as absent class members.").  Thus, the Court should dismiss all claims other than those brought by arrestees who were identified only as "John Does."

> Defendant Dillard has, at a minimum, qualified immunity for any claim that he allowed strip searches of the IMF arrestees entering the Superior Court cell block who <u>refused to identify themselves as required by law.</u>

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982). It is well settled that government officials such as the individual defendants in this case enjoy a qualified immunity from constitutional and statutory claims against them. See, Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Anderson v. Creighton, 483 U.S. 635, 640 (1987); Cleavinger v. Saxner, 474 U.S. 193, 206 (1985); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity analysis was explained in Harlow:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818. And, a defendant's subjective good faith is not relevant to the qualified immunity analysis, id. at 815-18; rather in making this assessment, the Supreme Court said a right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Conversely, an official is not shielded from liability where he "could be expected to know that certain conduct would violate statutory or constitutional rights." See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998); accord Siegert v. Gilley, 500 U.S. 226, 231-32 (1991) (A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is

"clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all); see also Fernandors v. District of Columbia 382 F.Supp.2d 63, 70-71 (D.D.C. 2005); see also Wilson v. Layne, 526 U.S. 603, 609 (1999)(a court performing a qualified immunity inquiry must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right.).

The whole purpose of qualified immunity is to protect public officials "from the costs associated with the defense of damages actions" by rooting out meritless lawsuits at the earliest point possible in the litigation process. Crawford-El v. Britton, 523 U.S. 574, 590 (1998). As the Supreme Court explained in Davis v. Scherer, 468 U.S. 183, 197 (1984), "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." Moreover, "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." Id. at 190.

Thus, in developing the doctrine of qualified immunity, the Supreme Court has sought to strike a balance "between the interests in vindication of citizens' constitutional rights and

-18-

in public officials' effective performance of their duties."
Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quotation
omitted).  Recognizing that "bare allegations of malice should
not suffice to subject government officials either to the costs
of trial or to the burdens of broad-reaching discovery," Harlow,
457 U.S. at 817-18, the Court balanced those competing interests
by establishing a higher threshold for holding public officials
personally liable for constitutional violations.  For a public
official to be liable for damages, that official must have
violated a constitutional right, and that right must have been
"clearly established" -- "[t]he contours of the right must be
sufficiently clear that a reasonable official would understand
what he is doing violates that right." Anderson, 483 U.S. at 640.
("qualified immunity protects 'all but the plainly incompetent or
those who knowingly violate the law'") (quoting Malley v. Briggs,
475 U.S. 335, 341 (1986)).

Numerous circuits have placed the burden on plaintiff to
come forward with evidence sufficient to create genuine issue as
to whether defendant's conduct was objectively reasonable in
light of clearly established law.  See, e.g., Salas v. Carpenter,
980 F.2d 299 (5th Cir. 1992); Washington v. Newsom, 977 F.2d 991
(6th Cir. 1992); Stewart v. Baldwin County Bd. of Educ., 908 F.2d
1499 (11th Cir. 1990); Hannon v. Turnage, 892 F.2d 653 (7th Cir.
1990); Pleasant v. Lovell, 876 F.2d 787 (10th Cir. 1989).  And a

-19-

court performing a qualified immunity inquiry "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right." Wilson v. Layne, 526 U.S. at 609. The Supreme Court has instructed that deciding whether a constitutional right was violated first, rather than asking whether the right was clearly established, "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Id. The validity of the qualified immunity analysis "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson, 483 U.S. at 639. At the first stage of the inquiry, "courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning." Butera v. District of Columbia, 235 F.3d 637, 646 (D.C. Cir. 2001). Thus, while one must concede that citizens enjoy a constitutional right to be free from unreasonable searches, it is equally clear that once a person is arrested, they are subject to search incident to that arrest. Chimel v. California, 395 U.S. 752, 763 (1969), and strip searches based on less than probable cause do not violate the Fourth Amendment; rather "the Fourth Amendment prohibits only unreasonable searches, and under the circumstances, we do not believe that these searches are unreasonable." Bell v. Wolfish

441 U.S. 520, 558 (1979) (citing <u>Carroll</u> v. <u>United States</u>, 267 U.S. 132, 147 (1925)).

Admittedly, courts have required more than a whim to support such a search, but under the circumstances presented by the individual plaintiffs, like all of the "John Doe" IMF arrestees on September 27, 2002, it cannot be said that no reasonable law enforcement officer could have believed that the searches were proper. The circumstances included announced efforts by protest groups to close Washington, DC. <u>See</u> *The People's Strike: A Day of Non-Compliance and Resistance*, (Exhibit A) (available at http:www.abolishthebank.org/strike_archive.shtml) (last accessed April 19, 2006) (". . . in the city hailed as the capital of the free world we call for a People's Strike to shut down this machine and take back our freedom on September 27, 2002!. . . People are getting organized and making plans to shut the city down for a day and effectively stop business as usual"). At this same time, hundreds of protesters were being arrested in the city and many, like the plaintiffs, refused to properly identify themselves, as required by District of Columbia law, leaving law enforcement in the dark regarding whether their histories include numerous weapons or drug offenses. <u>See</u> Amended Complaint, ¶¶ 1, 11-12; Lock Up Lists (Plaintiff's Exhibit 1 to Motion For Class Certification). The Marshals would not have been able to

identify these individuals other than as "John Does," leaving it a complete mystery what their actual criminal histories or drug histories were.[6]

At the time of the alleged strip searches in this case, the law was not clearly established and remains unclear today, whether one refusing a lawful request to identify himself can be presumed to be hiding something about himself, and whether that reasonably could be interpreted as a penchant to hide weapons, drugs or any form of contraband. Indeed, as to those lawfully confined, a specific basis for concern about contraband could reasonably support strip searches, even absent a basis for individualized suspicion. See, N.G. And S.G. v. State of Connecticut, 382 F.3d 225, 232 (2d Cir. 2004). And here, reports indicate a penchant for those being processed through the

---

[6] Public records, for instance, would appear to identify Plaintiff Paul Bame as having posted on the worldwide web a recipe for producing an explosive "black powder", see http://www.florilegium.org/files/COMBAT/blackpowder-msg.text, and Plaintiff Ivan Welander, as carrying a knife. See http://www.madison.com/archives/read.php?ref=/tct/2003/03/28/935472.php (accessed April 19, 2006); and a "twenty-three-year-old Greg Keltner, drug-dealer, wannabe musician. . ." http://theband.hiof.no/books/mfbp_book_john_niven.html (accessed April 19, 2006) (Exhibit B). Defendants do not intend to imply that these types of facts are required before one can establish a proper showing to warrant a strip search, but these are illustrative of the things that one may seek to hide from the authorities by refusing to identify oneself to law enforcement in the face of a statute requiring such identification. This is why a reasonable law enforcement officer might infer that an arrestee who refuses to provide identifying information may be presumed to be hiding something of significance.

Superior Court Cell Block to secret contraband.  <u>See</u> Defendants'
Notices of Filing dated April 5, 2006 and April 17, 2006.

The Supreme Court had concluded long ago that in the prison
context, such searches do not necessarily violate the Fourth
Amendment. <u>Bell</u> v. <u>Wolfish</u>  441 U.S. at 558.  Although on-the-
street strip searches have more recently been looked on with
disfavor, <u>see</u> <u>Fernandors</u> v. <u>District of Columbia</u>  382 F.Supp.2d
at 70-71, and other circuits have concluded that such searches in
rooms with broken blinds are unwarranted, <u>see</u> <u>Logan</u> v. <u>Shealy</u>,
660 F.2d 1007 (4th Cir. 1981), the circumstances and law in this
Circuit would not support a Fourth Amendment violation.  Here,
the arrestees were allegedly taken in small groups into a room
not accessible to the public and apparently not subject to view
by the hundreds of other arrestees, a "separate holding area."
<u>See</u> Amended Complaint, ¶¶ 22-23.

Under the circumstances, a reasonable law enforcement
officer may well have believed the actions taken under these
circumstances were proper.  <u>See</u>, <u>e.g.</u>, <u>Bell</u> v. <u>Wolfish</u>, <u>supra</u>;
<u>N.G. And S.G.</u> v. <u>State of Connecticut</u>, 382 F.3d at 232.
Thus, qualified immunity protects against a claim under the facts
alleged in the Amended Complaint.

<u>CONCLUSION</u>

WHEREFORE, the above civil action should be dismissed, or summary judgment entered in favor of the defendants.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL BAME, <u>et</u> <u>al.</u>,                )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )    Civil Action No. 05-1833 RMC
                                  )
JOHN F. CLARK, <u>et</u> <u>al.</u>,           )
  Acting Director,                )
  U.S. Marshals Service,          )
                                  )
          Defendants.             )
_____)

STATEMENT OF MATERIAL FACTS
<u>AS TO WHICH THERE IS NO GENUINE DISPUTE</u>

     Pursuant to Local Civil Rule 7(h), the named defendants
hereby provide the following statement of material facts as to
which there is no genuine dispute:

     1)  The events described in the Complaint in this action
took place on September 27 and 28, 2002.  <u>See</u>  Amended Complaint,
¶¶ 11-12.

     2)  The original complaint was not filed and this action was
not commenced until September 15, 2005.  Complaint at 1 (Docket
Entry No. 1).

     3)  At the time of the events alleged in the Complaint, Paul
Bame, Gregory Keltner and Ivan Welander had been arrested, but
had refused to provide their true names to law enforcement
authorities, instead remaining identified to authorities only as
"John Does."  Plaintiffs' Exhibit 1 (attached to Plaintiffs'
Motion For Class Certification) (Lock Up Lists); Amended
Complaint, ¶¶ 1, 4-6.

4)   Before their arrests, Paul Bame, Gregory Keltner and Ivan Welander had been participating with hundreds of persons in a mass protest of the International Monetary Fund policies in Washington, D.C., a protest that had been publically touted as an effort to shut down the city.  <u>See</u> Amended Complaint, ¶¶ 17-18; *The People's Strike: A Day of Non-Compliance and Resistance*, (Exhibit A) (available at http:www.abolishthebank.org/strike_archive.shtml) (last accessed April 19, 2006).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Motion To Dismiss Or, In The Alternative, For Summary Judgment, supporting memorandum and a proposed Order has been made through the Court's electronic transmission facilities on this 19th day of April, 2006.

_____
W. MARK NEBEKER
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230