UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL BAME, et al.,                    )
                                      )
            Plaintiffs,               )
                                      )
      v.                              )      Civil Action No. 05-1833 RMC
                                      )          No hearings scheduled
JOHN F. CLARK, et al.,                )
  Acting Director,                    )
  U.S. Marshals Service,              )
                                      )
            Defendants.               )
_____ )

**PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Plaintiff's Paul Bame, et al., by counsel, hereby reply to defendants' opposition [25,26]to plaintiffs' motion for class certification [18]. Plaintiffs respond here to the issues raised in defendants' opposition in the sequence of defendants' presentation. In short, plaintiffs contend that defendants have offered no persuasive reasons for denying class certification in this case.

**No Double Recovery by Plaintiffs**.

Defendants note that several lawsuits arose out of the protest events on September 27, 2002 and then contend that plaintiffs are trying to obtain a double

1

recovery, once against District of Columbia defendants in other litigation and
again from the USMS defendants in this case, since Paul Bame and other class
members are pursuing damages for the "same conduct" against D.C. defendants in
the *Burgin/Diamond v D.C.* case, C.A. No. 03-0205 (EGS).  Pp. 3-8 (Page
numbers following restatement of defendants' contentions refer to pages in their
Memorandum in Opposition to Plaintiffs' Motion for Class Certification).

Plaintiffs' response is that in fact this case is distinct from the *Diamond* case
because is seeks relief for different misconduct and against different defendants.
That action lies solely against the District government and officials and no federal
defendants are named nor is relief is sought against federal defendants.  Hence,
Bame and the other class members will  not be awarded damages from the federal
defendants in the *Diamond* case.  The *Diamond* claim are for detention *per se*, and
false arrest, but not for the illegal searches entailed in the strip searching.
Moreover, the *Diamond* claims are for detention *per se*, and false arrest, but not
for the illegal searches entailed in the strip searching. The *Diamond* compplaint
does not allege illegal strip searching by MPD or persons under its control.  In
addition, the Bame plaintiffs in this case are not seeking damages for the strip
searches against D.C. defendants.  The *Bame* plaintiffs will recover damages in
*Diamond* only for the *Diamond* claims, but not for any relief parallel to this case.

The *Barham* case was filed solely on behalf of a class of persons arrested in Pershing Park, as well as a few individual plaintiffs.[1] The *Bame* class members are simply are not part of that class,[2] and hence no recovery whatsoever is requested in *Barham* for the proposed class members in Bame.

**Paul Bame Not a Named Plaintiff in *Diamond***

Defendants suggest that Paul Bame himself and perhaps others could have pursued damages for his strip search claim in the *Burgin/Diamond* case, since, as they allege, he is a "named plaintiff" in that case. P. 4.

While Mr. Bame has agreed to affiliate himself publicly with that case, no filings in that case show him as a named plaintiff therein, and he exerts no control over that case.  Moreover, he was not a named plaintiff at the origin of the case, and did not have play a role in the crafting of the claims filed therein.

**Plaintiffs' Sufficiently Pled Violations of the Fourth Amendment to Support Class Certification.**

Defendants contend that the strip searches complained of herein simply do

---

[1]      *Barham* complaint paragraph 140. Ex. 9.

[2]       The class certification order in *Barham* grants class status only to persons arrested in Pershing Park.

3

not violate the Fourth Amendment, because there existed sufficient bases to undertake the strip searches under the USMS written policy. P. 12 and Ex. B.

In response, plaintiffs suggest that, thus, defendants are seemingly attempting, in response to a motion for class certification, to move for summary judgment to defeat the main claims. Plaintiffs' need only show at this stage that they have adequately pled facts in their complaint to support the Fourth Amendment claims. *See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974).; Mack et al. v. Suffolk Co., et al., 191 F.R.D. 16, 20(D. Mass. 2000).* The issue of the existence of an unconstitutional strip search policy is a important factual element of plaintiffs' case. The issue must await determination at the summary judgement stage following adequate discovery, or following trial, not in this stage where the parties are asking the Court to adjudicate a motion for class certification.

Second, the USMS written policy statement, Ex. B, nowhere authorizes strip searches of batches of prisoners in the absence of reasonable, individualized suspicion for each arrestee searched. The policy statement does not show that these particular strip searches conformed to Fourth Amendment standards.

Moreover, instead of offering evidence to show that the defendants were in possession of individualized reasonable suspicions as bases for conducting each of

the strip searches on these class members on that day, defendants present a lengthy description of some aspects of the procedures for the handling of prisoners and arrestees by the MPD and the USMS deputies in D.C. Superior Court.  However, defendants offer no evidence in their brief to support their bald factual contentions that there were reasonable bases for each of the searches complained of here. Defendants thus provide the court with no basis for making a factual finding that there existed some bases for suspicions upon which to ground some searches. These factual matters must await development through discovery and are not appropriate for determination at this stage.

Defendants fail to offer any records concerning the searches conducted by deputy marshals of protest arrestees on September 28, 2002.  Thus, as noted in plaintiffs' main brief on this motion, a reasonable inference is that defendants in fact have no records of these searches, and hence no documentation which will serve as a basis for their arguing that the searches were reasonable.  Instead, defendants offer the Court Exhibit A, which appears to be simply a collection of reports of the results of searches of arrrestees and prisoners conducted in entirely other situations over a roughly ten year period.  Significantly, this collection of reports does not contain any report from any searches conducted on September 28, 2002 of plaintiff class members or of any one else.  Apparently, under USMS

guidelines reports are prepared only when contraband is found during a search.  A reasonable inference is that the searches of plaintiffs class members turned up no contraband.

**Arrestees' Provision of Their Names Is Irrelevant.**

Defendants contend that the apparent failure of some arrestees to provide their names and to identify themselves at various stages of the detention process in itself gave rise to a reasonable basis for strip searching them.  Pp. 12.

Defendants' position is pure speculation on what might be the facts of the case, without reliance on any form of admissible evidence.  There is no admissible evidence currently in the record that the deputies conducting the searches knew whether or not an individual prisoner had identified himself to a police official. Moreover, the defendants offer no admissible evidence that class members who did identify themselves were not strip searched.  In addition, the fact that certain arrestees are identified as "John Does" in the lock-up lists, does not prove that at least some of them later did not identify themselves to the detaining officers.  Paul Bame in fact identified himself to the court in order to secure his release and left the Superior Court with a Notice to Return to court at a later time.  Ex. 6. (Declaration of Paul Bame.)

6

The Court need not countenance such speculation at this stage of the proceedings, but should await the factual development of the case, assuming this issue has any relevance.

Plaintiffs Amended Complaint properly pleads the core claim of the case that a blanket[3] strip search was conducted on all the men in the proposed class on that day, with no individualized suspicion upon which to base a search.  The Court need not delve more deeply into the facts of the situation at this stage.


**Arrival of Arrestees from the MPD Central Cell Block Does not Provide a Basis for Blanket Strip Searching All Arrestees.**


Defendants contend that the practices of bringing arrestees from the central MPD cell block necessitated blanket strip searches of all arrestees.  P. 14.

There is no evidence in the record of where the class members were brought from by the MPD officials.   They may have come from the Blue Plains holding facility.  They may have come from facilities in Virginia. Ex. 7 (Declaration of Plaintiff Ivan Welander).  Defendants provide no evidence at this stage that arrival of an arrestee from a particular venue provides a basis for strip searching them.

---

[3]        The term "blanket strip searches" as used here are those searches conducted without a reasonable, individualized suspicion upon which to base the conduct of a search, particularly a search as personally intrusive as a strip search.

There is no evidence in the record that the deputies who conducted the strip searches knew where each class member was brought from, and, hence, there is no basis at this time in the record for adjudicating the validity of a strip search on that purported ground.

## USMS Policy Statement Does Not Support the Searches Complained of Herein

Defendants contend that the USMS policy statement submitted as their Exhibit B shows that the strip searches could have had a reasonable basis.

To the contrary, the policy statement is merely a statement of general guidelines for searches by deputies.  Defendants have not produced evidence that it was applied by the deputies on the relevant day.

The policy statement fails to account for the standards for searches of arrestees set forth in the consent decree entered in *Morgan v. Barry*, Ex. 11, later discussed at 596 F. Supp. 897 (D.D.C. 1984), more than 20 years prior to September 28, 2002..  This decree forbids the blanket strip searches of arrestees, of the type complained of herein.  While the *Morgan* decree by its own terms applies to women, the standards would be read to apply to similar categories of male arrestees.

8

The defendants' policy statement does assist the Court and parties by providing a graphic and detailed description of the strip search procedures.

**The Court Need Not Conduct Individualized Hearings to Determine Class Membership.**

Defendants contend that the court would have to determine for each class member whether there were a reasonable suspicion upon which to conduct a strip search of each of the class members. "Each search would have to be reviewed by court to determine the reasonableness of the suspicion upon which the search was based." P. 16  Defendants rely on their Ex B as authorizing USMS cellblock personnel to conduct strip searches whenever they suspect that the detainee may be in possession of contraband. P. 16.

To the contrary, the plaintiffs' core claim is that a blanket strip search of all the arrestees occurred on that day without any individualized reasonable basis for such a search. The Court will not need to conduct individual hearings to determine whether there was an individualized, reasonable basis for each of the searches, since the claim is that this was a blanket series of strip searches.

In fact, as noted, the lack of USMS reports of any kind, much less any finding of contraband found on class members negates defendants' suggestion that

the Court would have to conduct an inquiry as to the reasonableness of each search. Paradoxically, the apparent USMS lack of finding any contraband is corroboration that there was no basis for any of the searches. In fact, defendants nowhere articulate any basis for any of the strip search, other than that some class members failed to give their names and that they were arriving from the custody of the MPD officials.

**The Class Has Numerosity.**

Defendants challenge the numerosity of the class, based on their perceived issues with the lock up lists submitted by plaintiffs. P. 17.

The lock up lists show 92 persons with male men who are likely in the class. Pl Ex. 1. Moreover, Paul Bame states in his declaration, attached hereto as Exhibit 6, that he "observed 70 to 80 men" with him in various adjacent cells during processing who had been strip searched and arrested at protests on September 27, 2002 outside of Pershing Park. Ivan Welander states in his declaration, attached hereto as Exhibit 7, that he observed at least 50 men in the cell areas while he was being processed, who had been strip searched and arrested at protests on September 27, 2002 outside of Pershing Park. These declarations by eyewitnesses on the scene of the detention and strip searches provide the Court with ample

factual basis for a finding numerosity of the class in this case.

In addition, the men in the *Diamond* classes, which overlap with the proposed class herein, number several hundred.

Defendants also claim that plaintiffs admit that any class under 40 persons cannot be certified.

In fact, Judge Lamberth points out in *Neal v. Moore, 1994 U.S. Dist. LEXIS 21339, [24] (D.D.C. 1994),* that there is no numerical floor on class size. The Court may easily find numerosity present with the proposed class of about 80 men under the current state of the record.

**Named Plaintiffs Are Adequate Representatives of the Class.**

Defendants contend that the named plaintiffs are not adequate representatives of the entire class, since they refused to give their names while other class members did give their names. Defendants base their assertion on the absence in the Lock-Up lists of the names of the named plaintiffs. At best, defendants contend, the named plaintiffs could only represent those class members who refused to give their names. P.17

In response, the Court may note that the Lock-Up list shows only those persons who refused to provide their names at the time those lists were prepared.

11

There is no way of knowing carefully the officers preparing the lists polled each person in the group. These lists are not evidence that the class members continued to refuse to provide their names or identities at later stages of arrest processing to detaining officers.  Moreover, the MPD officials implemented a procedure to take fingerprints and photographs of the arresteess, according to the declarations of Paul Bame, Ex. 6 and Ivan Welander. Ex. 7.  Thus, the arrestees did provide their identity during the processing of their cases.

Moreover, Paul Bame did in fact provide his name to his defense attorney at arraignment, who in turn provided it to the Court.  His statement of his identity, he understood, was sufficient to secure his release.  Ex. 6.  Ivan Welander was released without even undergoing arraignment since he understood that the detaining officials had lost his papers. Ex. 7. He did also provide his name to a defense attorney.  Welander and some of his fellow class members could hardly be labeled security risks during their detainment if the detaining officials could not bother themselves to keep track of him and several other arrestees with him.  Thus, the defendants were in possession of sufficient information to identify him and the other arrestees, if they had considered any of the many protest arrestees to present any form of security risk.

12

**The Class Has Commonality**

Defendants contend that the proposed class lacks commonality, since each strip each class member presents facts rooted in the particular circumstances of their individual strip search. P. 19.

To the contrary, defendants also defend the strip searches on the basis of having to follow the USMS policy statement, Ex. B., as if to say that there were a policy being followed by the deputies at least on that day.  At a minimum there is sufficient commonality among class members on the issue of whether the purported policy was being followed by the deputies and whether it met constitutional standards.  To determine commonality, the Court need not find that all class member presents the identical set of issues, but rather whether the class members share a sufficient number of issues in common to justify class treatment. *Bynum, et al. v. D.C., 217 F.R.D. 27, 33 (D.D.C. 2003); Neal, et al. v. Moore, et al., 1994 U.S. Dist. LEXIS 21339 [26] (D.D.C. 1994)*; and other cases cited in plaintiffs' main brief.   Here there is sufficient commonality of shared issues among class members to warrant class treatment.

Perhaps more significantly, the class members were searched in batches, according to the Bame and Welander declarations.  Exx. 6 and 7.   Defendants offer no evidence in their brief to support a finding that the deputies were

13

following a procedure that entailed use of reasonable, individualized suspicion of

each class member prior to his being searched.  Thus, no evidence brought forth

by defendants so far would enable the Court to find an individualized reasonable

basis for conducting any search on any class member.  As noted, the deputies

apparently maintained no records of the bases of the searches or of the results of

the searches themselves, although defendants came forward with what may be a

complete record of all other searches conducted over a multi-year period by deputy

marshals in Superior Court at times other than September 28, 2002.

      Other court which have considered defendants' contention have rejected it.

*See, e.g., Bynum, supra; Helton v U.S.,191 F. Supp. 2d 179 (D.D.C. 2002); Mack*

*v. Suffolk County, 191 F.R.D. 16, 24 (D. Mass. 2000).*


**The Named Plaintiffs Have Claims Typical of the Whole Class.**

      Defendants contend that the representative plaintiffs lack typicality of the

claims of the other members of the class, since named plaintiffs failed to give their

names to the MPD officials at one point in the detention process, allegedly in

violation of a local D.C. statute.  Moreover, defendants contend that an arrestees'

failure to give his or her name allows an arresting officer to be "advised that the

person is concealing contraband" under terms of the the USMS policy paper.

Footnote 10.

As stated, Paul Bame did identify himself at one point in the proceedings to his attorney and through the attorney to the court judge hearing the arraignments. Ex. 6  Welander also identified himself to his attorney for the same purpose. Ex. 7 Moreover, the detaining officers apparently photographed and fingerprinted every arrestee in the class.  Exx. 6 and 7.  Thus, the named plaintiffs in fact are typical of both subsets of class members, if these in fact be true subsets.

Moreover, plaintiffs contend that the failure of certain arrestees to provide their names at one stage of the arraignment process is irrelevant to the class issue. The *Morgan* consent decree, Ex. 11, does not permit arrestees who fail to provide their names to be strip searched.

Moreover, the USMS policy statement, Ex B, does not appear to permit the extreme measure of strip searches based on a failure of protestors arrested for minor infractions to give their names.

**Individual Findings of Fact Are Not Required for the Court to Award Damages.**

Defendants contend that the claims alleged will require the Court to take proof as to each class member's individual mental and emotional state, and, thus,

the commonality requirement is not met for the class. P. 22

Plaintiffs' claim are not an aggregation of a series of similar tort claims. All the plaintiffs share the same claim for the Fourth Amendment violations committed by the defendants, as stated in the Amended Complaint. Plaintiffs have already presented in their main class certification brief their position that the liability could be determined on a class basis, since there are facts common to all the claimants. Moreover, the amount of damages can be tried in the sample trials as proposed in the main class certification brief. *See*, Plaintiffs' Main Brief pp. 21 ff. Defendants simply do not respond to this proposed use of a now familiar approach for adjudicating the amount of damages for each class member. Courts have many times held that a class may be certified under Rule 23(b)(3) when there are individual amounts of damages, again, as discussed in the plaintiffs' main brief. Moreover, in this case, plaintiff class members might possibly be held all to have suffered the same damages for a constitutional law violation, and awarded the same amount.

**Plaintiffs' Counsel Have No Conflict of Interest.**

Defendants raise the possibility, without actually contending, that plaintiffs' lead counsel, Mr. Cunningham, might at some point have a conflict of interest

under D.C. Code of Professional Responsibility Rule 1.9. Pp. 26-27. They suggest that since Mr. Cunningham formerly was one of the counsel for plaintiffs in *Johnson v. D.C.*, he might be faced with taking a position in this case which adversely affects the interests of the plaintiff class in *Johnson*.   Defendants' suggestion presumably arises since one of the two sets of claims raised in *Johnson* is that female arrestees were discriminated against under the Equal Protection aspect of the Due Process Clause of the Fifth Amendment,[4] in that certain categories of female arrestees were as a matter of USMS policy subjected to strip searches while similarly situated male arrestees were not.  Since the proposed *Bame* class is by definition all male, so defendants' argument presumably goes, counsel's pursuit of the men's interests might adversely affect the *Johnson* women's interests.

In short, plaintiffs' counsel does not have a conflict, as defined in Rule 1.7, for several reasons.[5]  The *Johnson* case claims that for three years plus, USMS strip searched thousands of women and not men, as a matter of USMS practice and

---

[4]    The Fourteenth Amendment, and the Equal Protection Clause found therein, does not apply to the District of Columbia, which is not a state.

[5]    Plaintiffs' counsel emphasizes to the Court that they take the D.C. Bar ethics rules with utter seriousness, and do not wish to engage in any form of violation of the rules concerning conflicts of interest or otherwise.  Counsel will work assiduously to avoid any violation of the ethical rules in this case and all other cases.  Defendants state in their opposition brief that they see no conflict for plaintiffs' counsel  at this time.

policy.

First, defendants have already agreed in open court in the *Johnson*

proceedings to cease their long-standing policy lasting over several years of

searching the women arrestees but not the men.[6]   Nothing is likely to happen in the

*Johnosn* case will change defendants' standing factual admission to the Court that

there had been the long-standing policy.  Thus, plaintiffs' counsel cannot foresee

doing anything in *Bame* case to adversely affect the plaintiff class' interests in

*Johnson*.

Second, the *Bame* class is not seeking to prove that there never was a long-

standing policy of discrimination against women arrestees, but at most that there

was one exceptional event of illegally strip searching a relatively small group of

men on one day out of the many years covered by the *Johnson* claims.  The

existence of a blanket strip search in violation of the  Fourth Amendment on one

day of men, does not disprove the Fifth Amendment claim of the women that there

---

[6]        See , MINUTE ENTRY ORDER in *Johnson v. D.C., Civil Action No 1:02-cv-2364 (RMC)* granting [24] Consent Motion to Hold Motions in Abeyance Pending Settlement Discussions.  Signed by Judge Rosemary M. Collyer on 4/28/03.(Entered: 04/28/2003).  The relevant term of the consent motion is: " the Federal Defendants will have implemented by Monday, April 28, 2003, new security policies and practices that will (i) permit "drop, squat and cough" searches or a strip search only, at the least, upon an individualized finding of reasonable suspicion, if not probable cause, and with the approval of a supervisor; and (ii) insure that such searches will be applied even-handedly to both men and women arrestees and detainees."

was a policy stretching over several years.

Third, *Johnson* is based on two sets of claims. As to the first set, there is no conflict with the Fourth Amendment claim in *Johnson*, since the *Bame* Fourth Amendment claim is essentially parallel. The *Bame* case claims support the *Johnson* Fourth Amendment claims, since it is legally parallel. Hence, there is no adverse effect by the *Bame* case on the *Johnson* clients with respect to the *Johnson* Fourth Amendment claim.

Fourth, *Bame* is grounded on a point of fact, which fact will be true regardless of how the *Johnson* case proceeds or how the *Bame* case proceeds, to wit, that in one apparently exceptional episode on one morning during a mass protest a group of men (perhaps less than 100) were strip searched without a reasonable suspicion. Any adverse effect on the *Johnson* plaintiff class from the activities in the *Bame* case, might arise from this point of fact, but this event does not denigrate factually the *Johnson* Fifth Amendment claim. The *Bame* case does not claim that there was a systematic policy of strip searching men over several years, hence seeking to establish an argument that might adversely affect the *Johnson* plaintiffs' position. *Johnson* apparently does not argue that no individual men were ever strip searched, but that there was a long standing and consistent policy and practice of illegally strip searching women but not men.

19

**Attorney Zachary Wolfe Is Well Qualified to Handle this Case Without Cunningham.**

Defendants contend  that Mr. Wolfe is unqualified on his own to handle this case, in the event Mr. Cunningham must withdraw. P. 28.

Mr. Wolfe is well qualified to handle this matter on his own, as shown in his affidavit submitted in support of this motion, and, if need be, he would be able to add additional experienced counsel to replace Mr. Cunningham, in the event he had to withdraw.  Mr. Wolfe has more than five years successful,  relevant experience in complex class action litigation.


**Class Treatment Is the Superior Method for Handling this Case.**

Defendants contend that the necessity of individualized treatment of the class members' claims precludes a finding by the Court that the predominance of issues requirement has been met.  The Court will have to make an individualized determination, defendants argue, of just whether each person is actually a member of the class, i.e., whether the strip search was reasonable.  P. 29.  Also, if the other class actions had thought this were a class claim, they would have included these claims as class claims.  p. 31

These points have already been addressed above. Plaintiffs' have cited the

Court  in their main brief to numerous cases where classes similar to this were

certified and where significant relief was awarded to victims of illegal strip

searches by government officials. Main Brief pp. 8-9.  *See also, Eddleman v.*

*Jefferson County, Ky., 96 F.3d 1448 (6th Cir.(Ky.) Aug 29, 1996)(unpublished);*

*Calvin v. Sheriff of Will County, 2004 WL 1125922 (N.D.Ill. May 17, 2004); Doan*

*v. Watson, 2002 WL 31730917 (S.D.Ind. 2002)(class action settlement approved);*


**Defendants Should Pick up the Costs of Notifying the Class.**

Defendants contend that having the defendants pick up the costs of

notifying the class is unprecendented. P. 32.

Plaintiffs suggest that the Court reserve decision as to who shall bear the

costs of providing notice to the class. Plaintiffs' counsel is prepared to do so

should the need arise.

CONCLUSION

For the foregoing reasons and for the reasons set forth in Plaintiffs' Main

Brief in support of this motion, the Named Plaintiffs' motion for class certification

pursuant to Rule 23(a), 23(b)(3) should be granted.

Respectfully submitted,

/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq.
D.C. Bar No. 221598
P.O. Box 1547
Dubois, Wyoming 82513
Phone: 307-455-3334/3374
Fax: 307-455-3334
Email: lcunningham@law.gwu.edu

Zachary Wolfe, Esq.
D.C. Bar No. 463548
People's Law Resource Center
1725 I Street, NW, Suite 300
Washington, DC 20006
Phone: 202 265 5965
email: zwolfe@peopleslawresourcecenter.org

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION has been made through the Court's electronic transmission facilities on this 21st day of April, 2006.

/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq. (D.C. Bar No. 221598)
Attorney for Plaintiffs

**LIST OF EXHIBITS**

| EXHIBIT # | DESCRIPTION OF EXHIBIT. |
|---|---|
| 6 | Declaration of Paul Bame |
| 7 | Declaration of Ivan Welander |

| 8 | *Johnson v. D.C.* Stand Still Consent Motion |
| 9 | *Barham v. Ramsey* Complaint |
| 10 | Paul Bame's Notice to Return to Court |
| 11 | *Morgan v Barry* consent decree (unreported) |