UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| Paul Bame,<br>Gregory Keltner, and<br>Ivan Welander.<br><br>Plaintiffs,<br>on behalf of themselves and all<br>other similarly situated | )<br>)<br>)<br>)<br>)<br>)<br>) | |
|---|---|---|
| vs. | ) | Civil Action No. 1:05CV01833 (RMC)<br>No scheduled hearings. |
| John F. Clark, et al.<br><br>Defendants | )<br>)<br>) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TAKE
DISCOVERY AND TO STAY DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Paul Bame, *et al.*, by undersigned counsel, hereby reply to defendants' opposition [40][1] to plaintiffs' motion to take discovery and to stay defendants' motion to dismiss or in the alternative for summary judgment [35].[2]

**INTRODUCTION**

Defendants urge the Court to deny plaintiffs' discovery motion, because, they contend, the discovery requested does not address any factual issue needed for adjudication of the motion

---

[1] Numbers in [brackets] refer to docket entry numbers in this Court's ECF system.

[2] After plaintiffs filed their opposition to defendants' motion to dismiss, the plaintiffs in *Johnson v. D.C.*, Civil Action No. 02-2364 (RMC) have filed their combined oppositions to defendants' motion to dismiss. *Johnson* is a related case to this one. Plaintiffs hereby rely on the relevant arguments made by the *Johnson* plaintiffs in their opposition to support a denial by the Court of defendants' motion to dismiss herein.

1

to dismiss. Def. Brief [40] p. 26.[3] Plaintiffs show below that the defendants' motion is rife with factual assertions that are unsupported by evidence in the record, yet are germane to the success or failure of their contentions. Accordingly, plaintiffs' submit that the motion to dismiss either should be denied outright because it lacks sufficient merit apart from any factual inquiry, or stayed to allow plaintiffs the opportunity to conduct limited discovery to respond to defendants' unsupported factual assertions. To clarify which areas involve defendants' unsupported assertions, this memorandum will discuss the factual assertions in defendants' arguments in the order in which they are made.[4]

## PART I

### UNSUPPORTED FACTUAL ASSERTIONS UNDERLIE DEFENDANTS' QUALIFIED IMMUNITY DEFENSE

On the one hand, defendants urge the Court to adjudicate its motion either as a motion to dismiss not requiring any fact analysis beyond what is set forth in the complaint, or as a motion for summary judgment based upon a mere four "material facts not in genuine dispute". Defendants main memorandum, p. 27. On the other hand, defendants actually state in their reply brief that a "fact based analysis associated with existing case authority" is required for the Court

---

[3] Plaintiffs have no substantial differences with the defendants' statement of the standard which the Court may consider with regard to the requested discovery, namely, that the party seeking discovery under Rule 56(f) must show that the discovery sought addresses factual disputes which are germane the motion to dismiss, and are trial worthy. Rule 56(f) discovery has been granted many times in cases similar to the instant one. *E.g., Chappell-Johnson v. Powell*, 440 F.3d 484 (D.C. Cir. 2006); *Paquin v. F.N.M.A.*, 119 F.3d 23 (D.C. Cir. 1997).

[4] There is no need to address in this memorandum defendants' contentions with regard to the statute of limitations, and standing, since these contentions do not present factual allegations, and defendants' arguments have been addressed by plaintiffs in their opposition brief. [34].

to make a determination as to the state of the existing law in order to make out a qualified immunity defense for the defendants. Defendants' Reply brief, p. 6. They go on to ground their arguments in support of qualified immunity upon a series of factual assertions which have not been subjected to discovery, much less trial, and, worse, are not supported by citation to any evidence in the record. Plaintiffs urge the Court to permit the requested discovery prior to the Court's consideration of any of defendants' fact-based positions.

Since defendants offer in their reply brief no persuasive response to the case law barring their qualified immunity defense as set forth in plaintiffs' opposition brief [34],[5] their reply brief instead invites the Court to enter a factual thicket from which to parse an entirely new argument for qualified immunity, not clearly raised in their main brief,[6] namely, that a blanket strip search was justified by the "unique facts" surrounding these particular blanket searches of the protestors.[7] Reply brief, pp. 14-16. They concede that the case law generally prohibits blanket strip searches,[8] but that the events on this day take this particular blanket strip search out of the

---

[5] Pp. 6-9. The *Morgan v Barry* consent decree is and was binding on defendants. The unanimous array of circuit court holding cited in *Helton v. D.C.*, 191 F.Supp.2d 179 (D.D.C. 2002), and *Helton* itself, more than put defendants on notice as to their obligations not to conduct strip searches of the plaintiffs class.

[6] In their main brief, defendants grounded their qualified immunity defense on plaintiffs' refusal to divulge their names to the USMS staff. Pp. 16 - 15.

[7] Defendants state: "it is not clear that a blanket strip search policy is unconstitutional where the circumstances indicate a real security risk if all prisoners are not searched. Based on the decisions discussed above, although individualized suspicion is required for prisoner strip searches in many circumstances, a blanket strip search policy is deemed constitutional where the circumstances indicate a real security risk unless all prisoners, or a certain category of prisoners, are searched."

[8] Defendants state: "Thus, under applicable case law, although individualized suspicion is required for prisoner strip searches in many circumstances...." p. 16.

normal rule banning them. Something about the facts surrounding this particular batch of protestor prisoners, defendants urge, provided a basis for strip searches, even though reasonable individualized suspicion may have been lacking.[9] Defendants filed no affidavits or depositions in the record to support the several key factual assertions used to bolster their arguments. Recounting some elements of the factual thicket presented by defendants shows how germane their factual assertions are, even though unsupported by any evidence:

* the USMS had no knowledge about the protestor prisoners and the circumstances of their arrests prior to their arrival into the custody of the USMS staff;[10] p. 4.

* the protestors had been, or were going to be, intermingled with other non-protestor prisoners;[11] p. 9.

* the amount and nature of contraband recovered from the USMS cellblock is "staggering"; p. 15

* prisoners received at the USMS cellblock run the gamut from protestor to "violent sociopath";[12] p. 15.

---

[9] *Ibid.*

[10] This assertion seems odd on its face, since surely the USMS staff do not ordinarily receive several hundred protestors delivered at one time by the MPD for processing at the jail. The media reported on the protests, and the MPD had made preparations for these large protests. Cf. Plaintiffs' Ex. 12 to Plaintiffs' opposition to defendants' motion to dismiss, a report by the D.C. Council concerning MPD handling of a series of protests in D.C. Discovery is required to show what the USMS staff knew or did not know about the protestors before searching them.

[11] Plaintiffs find no evidence to support this assertion in or outside the record.

[12] Defendants present the Court with no evidence that the protestors included any "violent psychopaths", whatever that term may mean, or that any such persons were present in

The defendants seemingly are asking the Court to take judicial notice of these assertions, since no evidence is presented to support them. Plaintiffs have requested discovery directly on these points.[13] Defendants apparently regard these points as highly germane to their defense, while at the same time they are object to all of plaintiffs' discovery requests on this point. The Court should permit discovery on this issue, or simply deny the defendants' motion as lacking support.

In addition, defendants' contentions raise germane factual issues that cannot be resolved by the Court without a presentation of evidence by both sides, following discovery:

* whether USMS strip searched only those protestors who failed to provide their names at certain points in the process;[14]

* the nature of the intermingling, if any, of the protestor prisoners with other protestors or with other non-protestor arrestees; p. 10[15]

* whether any contraband was ever found on any protestor on the relevant day;[16]

* whether any "violent sociopaths" were ever intermingled with the protestor prisoners or

---

the jail on that day.

[13]   [35] (proposed requested discovery).

[14]   The implication throughout defendants' qualified immunity argument is that protestors would not have been strip searched if they had given their names when first asked by USMS staff.

[15]   An important aspect of defendants' position seems to be that the strip searches were reasonable since the protestors either had been or were going to be intermingled with more conventional prisoners in a prison setting. Yet, no evidence in or outside the record shows that such intermingling was taking place.

[16]   As noted in plaintiffs' opposition brief [34][p. 15, ftnt 13], USMS had recovered only a very small number of items of contraband during years of searching over arrestees.

identified among them; p. 15

* whether the USMS personnel had any knowledge of the alleged assertion by the MPD police chief that the protestors had planned "to shut down the city", and if so, whether USMS staff took that alleged threat into consideration in determining whether to conduct the strip searches;[17] p. 5.

* whether the USMS had obtained the names of the protestors as a result of advance surveillance by the MPD and other police personnel;[18]

* whether the ending of the protests prior to the strip searches affected the analysis of the USMS personnel as to whether to strip search the protestors;[19] p. 3

* whether the "lack of names of makes the discovery of any criminal history unlikely";[20] p.4

* whether defendants' assertion, "Thus, the only reliable way to ensure security under the

---

[17] Defendants' brief asserts that the USMS had no knowledge about the protestors. P. 4. Then in another part of their brief, they assert that they had to strip search the protestors because of threats to "shut down the city". P. 26.

[18] Defendants do not in so many words actually deny that they may already have had these names from other sources. The D.C. Council report on police handling of the IMF protests describes intelligence gathering by the police in advance of, and during, the protests. Pl. Ex. 12, attached to Plaintiffs' Opposition to Defendants' Motion to Dismiss [34]. Police surveillance of the protestors before and during the protests is discussed at numerous points in this report. It is not unlikely that the surveillance included police gathering names of the protestors. The requested discovery can clarify this point.

[19] Defendants' briefs and evidentiary submissions are completely silent with regard to the actual thinking and analysis of the USMS staff present at the strip searches for why they undertook blanket strip searches of non-violent, non-drug related minor arrestees.

[20] Defendants have not demonstrated to the Court that a person's name is the sole source for determining whether that person has a criminal record, but they have asserted it as a key point in their argument.

circumstances is to take reasonable steps to ensure security", accurately expresses the thinking and analysis of the USMS personnel on the scene as to whether to conduct strip searches or not; p.4

* Whether it be true that: "The District of Columbia Superior Court cellblock is substantially similar to the maximum security prison situation at issue in *Savard v. State of Rhode Island*, 338 F.3d 23 (1st Cir. 2003)"; p. 4.

* whether the USMS was administering a prison, as analyzed in *Bell v. Wolfish*, decision, or a jail for newly arrested prisoners;[21] p. 7.

* whether this class of protestors arrested on misdemeanor charges posed a threat to jail security in D.C., as discussed in *Gary v. Sheahan*, 1998 WL 547116 (N.D. Ill. 1998)[22]; p. 12-13

* whether the nature and extent of the strip searches went beyond the bounds of reasonableness contemplated in some of the case law;[23] pp. 14, 15,16.

* whether the "smuggling of drugs, contraband and weapons is all too common an

---

[21]   Defendants' brief would, mistakenly, have the Court analyze rights of arrestees held for arraignment in a jail by applying the entirely separate law with regard to the rights of prisoners in a maximum security prison. Defendants, at p. 7, make much in their reply brief of the *Bell v Wolfish* emphasis on security required in prison settings, and thus imply that the USMS was processing the protestors through a prison, as opposed to a jail setting.

[22]   Defendants have not adduced evidence to show that this group of protestors was so dangerous as to require, *per se*, that they be subjected to a blanket strip searched. Yet this seems to be the thrust of their argument. Indeed, defendants' contentions seem to reduce the qualified immunity defense to an absurdity with regard to blanket strip searches, because any QI defense must be so fact specific that no amount of prior case law can ever put a USMS marshal on notice about the standards for conducting any particular strip search. P. 9.

[23]   Defendants appear to dispute the plaintiffs' description of their strip searches, yet defendants offer no testimony from their witnesses concerning how the searches were conducted, and whether they were somehow more humane than other strip searches.

occurrence" in the D.C. Jail; p. 15 [24]

Plaintiffs invite the Court to note that there is nothing in the defendants' generalized assertions about the protestor prisoners that in fact distinguishes their claims from other cases of persons arrested on non-violent, non-drug related, misdemeanor charges. The strong consensus of case law bans blanket strip searches of this class of prisoners. Thus, the Court could simply hold that no qualified immunity defense exists in this case, without reaching the need for discovery under Rule 56(f). Alternatively, the Court may grant the plaintiffs' requested discovery.

## PART II

### UNSUPPORTED FACTUAL ASSERTIONS UNDERLIE DEFENDANTS' DEFENSES TO PLAINTIFFS' 42 U.S.C. §1983 CLAIM

Defendants ask the Court to dismiss plaintiffs' 42 U.S.C. § 1983 claim based primarily upon citations to statutory authority to the effect that the USMS is a federal agency, and the conclusory statement that "their day-to-day operations remain under the supervision of the federal government." p. 20. Plaintiffs in their brief [34],have cited extensive authority to support the proposition that defendants were also proceeding under color of D.C. law sufficient to

---

[24] The defendants have presented a limited selection of the records from the USMS, in particular exhibit A to Defendants' opposition [25] to plaintiffs' motion for class certification [18]. Assuming the records provided in exhibit A are the full set of such records, they represent a relatively few incidents of contraband found during many years of searching what must have been thousands prisoners. It is for the Court to decide, following a trial, whether this amount of contraband constitutes such a "common occurrence" that an extraordinary blanket strip search was justified in this case. Additional discovery is needed to flesh out the extent and nature of the contraband problem in the cellblocks where the protestors were confined and whether such contraband found at other times on other non-protestor prisoners bears any relevance to the events on September 28, 2002.

8

establish liability under §1983.  Pp. 19-24.

These legal points raised on both sides, however, do not truncate the need for discovery by plaintiffs.  The nature and content of any memoranda of understanding between D.C. government agencies and the USMS will shed significant light on the extent to which D.C. government officials were controlling or directing USMS on the day of the protests in question, or coordinating their operations with those of the USMS.  Moreover, plaintiffs' have requested discovery as to any special or unusual arrangements among the different law enforcement authorities that may have obtained during these large protests.   Plaintiffs' Discovery Requests Pursuant to Rule 56(f) to Defendants Dillard and 15 John Does [35, Ex. 3].  Interrogatories 1, 4, 10, 11, 12, 15.  Requests for Production 3, 5 - 12.

Also, given the serious claims of illegal actions leveled in this and other litigation against the defendants and the other police officials and staff for their actions on that day, it is possible that discovery may show that the USMS took actions on that day which were unusually closely coordinated with actions by MPD and D.C officials. Such coordination among federal and local police officials has happened in the past, resulting in illegal actions by federal officials.  *See for example*, *Martinez v. Winner*, 771 F.2d 424 (10th Cir. 1985)(conspiracy of federal and local officials to infringe civil rights of an individual);   *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979)(city and federal police officials conspired to infringe the civil rights of members of a community organization in Chicago).

At page 22 of their reply brief defendants make a bold and bald factual assertion: "There is no basis from which to conclude that the defendants acted in concert with or conspired with the District in establishing or implementing this policy...".  By stating that "there is no basis",

defendants have laid a firm factual position before the Court, but no evidence is cited to support this assertion and it does not come in a sworn statement by a witness with knowledge of the facts, but instead simply from defendants' attorney.[25]  Plaintiffs are entitled under the rules of discovery to have the Court adjudicate the motion to dismiss or for summary judgment not based upon such a bare factual assertion of this breadth, but upon evidence fairly tested through pre-trial discovery.  The D.C. Council Report on the MPD handling of a series of protests, Ex. 12 to Plaintiffs' Opposition to Defendants' Motion to Dismiss, describes coordination among top officials of the MPD and federal agencies in preparation for, and during the protests on September 27, 2002.  This report leaves open the possibility, for example, that the D.C. police chief, or other high D.C. official, informally requested senior USMS staff to conduct strip searches the protestors shortly before they were to be released.  If such a conversation took place, the USMS could be found by the Court have been acting under the direction of, or in concert with, the D.C. officials at least on that day. Certainly the investigation by the D.C. Council of police activities during and surrounding the protests reveal some highly questionable actions by the police. *Ibid*. Only the requested discovery can enable the plaintiffs to present to the Court the full and accurate factual basis for their 1983 claim.

## CONCLUSION

For the reasons set forth herein, defendants' motion to dismiss should be denied or held

---

[25]    Plaintiffs do not, of course, mean to impugn the veracity or integrity of defendants' capable counsel in any way by this statement.

in abeyance pending the resolution of the discovery requests filed by plaintiffs [35].


Respectfully submitted,


/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq.
D.C. Bar No. 221598
P.O. Box 1547
Dubois, Wyoming 82513
Phone: 307-455-3334/3374
Fax: 307-455-3334
Email: lcunningham@law.gwu.edu

Zachary Wolfe, Esq.
D.C. Bar No. 463548
People's Law Resource Center
1725 I Street, NW, Suite 300
Washington, DC 20006
Phone: 202 265 5965
email: zwolfe@peopleslawresourcecenter.org

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing has been made through the Court's electronic transmission facilities on this 4th day of August, 2006.

/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq. (D.C. Bar No. 221598)
Attorney for Plaintiffs