**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Paul Bame, et al. <br> And <br> <br> Nicolas Church <br> 5529 N Vancouver <br> Portland, OR  97217 <br> <br> John Joel Duncan <br> 30 Hampstead Road <br> Brighton BN! SNG England <br> <br> Plaintiffs on behalf of themselves <br> and all others similarly situated <br> <br> vs. <br> <br> Todd Walther Dillard et. al. <br> And <br> Stirling Murray <br> Gregory Petchel ; <br> Robert Byars; <br> Howard Williams; <br> Barry Surles; <br> David Ablondi; <br> Robert Arnes; <br> Cory Britt; <br> Lyle Brown; <br> Steven Burns; <br> Lloyd Clark; <br> Jeffrey Folley; <br> Max Galusha; <br> Daniel Galvan; <br> Sterling Johnson; <br> Richard Kelly; <br> Steven Long; <br> Thomas McDaniel; <br> Shawn McMahon; <br> Lawrence Moltzan; <br> David Moore; <br> Daniel Munoz; <br> Michael Oliver; <br> Mark Rouch; <br> William Straw <br> <br> In their individual capacities as <br> United States Deputy Marshals <br> for the District of Columbia, D.C. <br> Superior Court for <br> the District of Columbia | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:05cv01833(RMC) <br> ) No hearings scheduled <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

| | |
|---|---|
| 500 Indiana Ave., N.W. | ) |
| Washington, D.C. 20001 | ) |
| | ) |
| Defendants | ) |
| _____ | ) |

# SECOND AMENDED
# CLASS ACTION COMPLAINT
# FOR COMPENSATORY AND PUNITIVE DAMAGES

1. Plaintiffs Paul Bame, Ivan Welander, and Greg Keltner, and Nicholas Church and John Joel Duncan bring this action on their own behalf and on behalf of all other men who were arrested on September 27, 2002 during several large protests involving hundreds of people in downtown Washington, D.C, and who were subjected to an unlawful strip search as described herein. On September 28, 2002, several hours following their arrest, the men were subjected to unlawful strip searches by defendants deputy U.S. Marshals acting under the supervision of Todd Dillard, then the U.S. Marshall for the District of Columbia Superior Court. The strip searches were conducted without reasonable, particularized, individualized suspicion in violation of their Fourth Amendment right to be free of unreasonable searches and seizures.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the this action and plaintiffs' 42 U.S.C. §1983 and *Bivens* claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

3. Venue is appropriate in this District because each of the claims for relief arose in this judicial district.

## PARTIES PLAINTIFF

4. Plaintiff Paul Bame was arrested on charges of "incommoding" and two other minor infractions during a mass protest in Washington, D.C. on September 27, 2002. He was

arrested by officers of the Metropolitan Police Department of the District of Columbia ("D.C. Police"), or officers of police departments acting under the supervision of the D.C. Police.

    a.    After his arrest he was initially held in custody of the D.C. Police and then was transferred to the custody of deputy U.S. Marshals and held in their custody for several hours lasting into September 28, 2002.

    b.    While held in custody of the U.S. Marshals, several deputies conducted a strip search on him in the presence of eight to twelve other male arrestees, who were strip searched at the same time. Defendants performed the search on him without any individualized, reasonable suspicion upon which to base a search.

c.    He was released a few hours later after appearing for a few moments before a judge at the D.C. Superior courthouse. He was not required to post bond.

d.    He is an adult resident of the State of Colorado.

5.    Plaintiff Greg Keltner was arrested during a mass protest in Washington, D.C. on September 27, 2002. He was arrested by D.C. police officers, or officers of police departments acting under the supervision of the D.C. Police.

    a.    After his arrest he was initially held in custody of the D.C. Police and then was transferred to the custody of deputy U.S. Marshals and held in their custody for several hours lasting into September 28, 2002.

    b.    While held in custody of the U.S. Marshals, several deputies conducted a strip search on him in the presence of eight to twelve other male arrestees, who were strip searched at the same time. Defendants performed the search on him without any individualized, reasonable suspicion upon which to base a search. He was released a few hours later without being brought before a judge and <span style="color:red">without posting bond.</span>

    c.    He is an adult resident of the State of Wisconsin.

6. Plaintiff Ivan Welander was arrested during a mass protest in Washington, D.C. on September 27, 2002. He was arrested by D.C. police officers, or officers of police departments acting under the supervision of the D.C. Police.

    a. After his arrest he was initially held in custody of the D.C. Police and then was transferred to the custody of deputy U.S. Marshals and held in their custody for several hours lasting into September 28, 2002.

    b. While held in custody of the U.S. Marshals, several deputies conducted a strip search on him in the presence of eight to twelve other male arrestees, who were strip searched at the same time. Defendants performed the search on him without any individualized, reasonable suspicion upon which to base a search.

    c. He was released a few hours later without being brought before a judge and without posting bond.

    d. He is an adult resident of the State of Wisconsin.

7. Plaintiff Nicholas Church was arrested during a mass protest in Washington, D.C. on September 27, 2002. He was arrested by D.C. police officers, or officers of police departments acting under the supervision of the D.C. Police.

    a. After his arrest he was initially held in custody of the D.C. Police and then was transferred to the custody of deputy U.S. Marshals and held in their custody for several hours lasting into September 28, 2002.

    b. While held in custody of the U.S. Marshals, several deputies conducted a strip search on him in the presence of eight to twelve other male arrestees, who were strip searched at the same time. Defendants performed the search on him without any individualized, reasonable suspicion upon which to base a search.

    c. He was released a few hours later without, to his knowledge, being charged for any violation of law; without being brought before any kind of judge or judicial officer; and without posting bond. He is an adult living in the State of Oregon.

  d. Plaintiff John Joel Duncan was arrested during a mass protest in Washington, D.C. on September 27, 2002. He was arrested by D.C. police officers, or officers of police departments acting under the supervision of the D.C. Police.

  e. After his arrest he was initially held in custody of the D.C. Police and then was transferred to the custody of deputy U.S. Marshals and held in their custody for several hours lasting into September 28, 2002.

  f. While held in custody of the U.S. Marshals, several deputies conducted a strip search on him in the presence of eight to twelve other male arrestees, who were strip searched at the same time. Defendants performed the search on him without any individualized, reasonable suspicion upon which to base a search.

  g. He was released a few hours after the search without, to his knowledge, being charged with any violation of the law; without being brought before a judge or other judicial officer; and without posting bond.

  h. He currently lives in Brighton, England.

## PARTIES DEFENDANTS

8. Defendant Todd Walther Dillard was the United States Marshal for the District of Columbia Superior Court at all times relevant to this action. He is sued in his individual capacity.

9. On information and belief, each of the following defendants was on duty at the D.C. Superior Court cell blocks where plaintiff class members were held during the relevant hours on September 28, 2002, and each is listed in the defendants' Initial Disclosures as having knowledge of the strip searches of proposed class members at issue is this lawsuit.

 a. On information and belief, the USMS assignments for each of the following defendants included the following duty that: "Personnel assigned to Prisoner Operations Cellblock/Court Operations ensure:

    i. "that prisoners received are accompanied by appropriate and correct paperwork and are properly identified (i.e. arm bands) upon their arrival at DC/SC;"

    ii. "That the prisoners are searched and observed for any medical condition that may require attention;

b. On information and belief, each of the following defendants were, as USMS personnel placed, under duty roster assignments where they participated directly in the strip search of all members of the plaintiff class.

c. The following defendants are each sued in their individual capacity:

d. Chief Deputy U.S. Marshal, Superior Court, District of Columbia (SCDC), Stirling Murray;

e. Acting Assistant Chief Deputy U.S. Marshal SCDC, Gregory Petchel ;

f. Supervisory Detention Enforcement Officer ("SDEO") SCDC Robert Byars;

g. SDEO SCDC Howard Williams;

h. Inspector ISD Barry Surles;

i. Depurty U.S. Marshal (DUSM) D/MD David Ablondi;

j. DUSM D/UT Robert Arnes;

k. DUSM SD/TX Cory Britt;

l. DUSM WD/AR Lyle Brown;

m. DUSM SCDC Steven Burns;

n. DUSM D/CO Lloyd Clark;

o. DUSM D/VI Jeffrey Folley;

p. DUSM D/VT Max Galusha;

q. DUSM WD/TX Daniel Galvan;

r. DUSM D/MD Sterling Johnson;

s. DUSM SCDC Richard Kelly;

t. DUSM SCDC Steven Long;

    u. DUSM D/MD Thomas McDaniel;

    v. DUSM SD/TX Shawn McMahon;

    w. DUSM ISD Lawrence Moltzan;

    x. DUSM MD/FL David Moore;

    y. DUSM SCDC Daniel Munoz;

    z. DUSM SCDC Michael Oliver;

    aa. DUSM ED/VA Mark Rouch;

    ab. DUSM SCDC William Straw.

## CLASS ACTION ALLEGATIONS

10.    Named plaintiffs bring this action under Fed. R. Civ. Pro. Rules 23(a) and 23(b)(3) on behalf of the class consisting of:

    a.    each man who was: (1) arrested on September 27, 2002 by the D.C. Police officials during a series of mass protests in downtown Washington, D.C.; (2) remanded by D.C. Police, following that arrest, into the custody of the U.S. Marshal for the District of Columbia prior to being released; and (3) subjected by deputy U.S. Marshals to a strip, visual, body cavity search without any particularized or individualized reasonable suspicion that he was concealing drugs, weapons or other contraband; (4) excluding, however, all men arrested within the confines of Pershing Park on September 27, 2002.

11.    The class is so numerous that joinder of all members is impracticable. The exact number of the class membership is not known. However, records of the D.C. Superior Court dated September 28, 2002, entitled "IMF Mass Protest Lock Up List" list at least ninety men. On information and belief, at least half this number were arrested at mass protests other than at Pershing Park. Thus, this class consists of at least 45 men, and possibly more than one hundred men.

12. The class is manageable in that all members of the proposed class will be identifiable from records in the possession of defendants, and from other official records.

13. There are questions of fact and law which are common to all class members, and common to the claims of the named plaintiffs, including:

    a. What were the nature and extent of the strip searches conducted on every member of the plaintiffs class?

    b. Whether the searches conducted by defendants on the plaintiff class members comported with the standards provided under the Fourth Amendment to the United States Constitution?

    c. What policies, customs, or practices resulted in the defendants conducting strip searches on the plaintiff class members?

    d. Whether the law in the District of Columbia was sufficiently clearly established as of September, 2002 with regard to the legality of the strip searches conducted by defendants, such that the defendants are not protected by any qualified immunity?

    e. Whether the class members sustained damages and, if so, the proper measure of such damages?

    f. Whether Defendants were acting as an agent of or in joint action with the District of Columbia, or otherwise acting under color of D.C. law?

14. The named plaintiffs will fairly and adequately represent and protect the interests of the class.

    a. Named plaintiffs' claims are typical of the claims of all class members in that they were each subjected to unlawful strip searches during the same mass arrest episode of custody as the other class members, each of whom suffered a similar strip search;

    b. Named plaintiffs have no conflicts with the other class members;

  c. There are no individual questions on the issue of liability, since every member of the plaintiff class was subjected to a blanket strip search.

15. Named plaintiffs have retained counsel who have handled complex federal court class actions in various issue areas, including claims for unlawful strip searches of prisoners.

  a. Lynn E. Cunningham has practiced law in the District of Columbia for thirty years and handled successful class action litigation in the areas of welfare rights, health benefits, housing rights, as well as prisoner's rights.

  b. Zachary Wolfe has practiced law for five years in the District of Columbia, handling a variety of cases, including successfully challenging illegal police actions with regard to public protests in D.C..

## GENERAL FACTUAL ALLEGATIONS

16. On September 27, 2002, hundreds of persons, including plaintiff class members, staged a mass protest of certain federal agency policies in various locations in downtown Washington, D.C., including outside the International Monetary Fund headquarters, and various government agency and corporate headquarters buildings.

17. Hundreds of protestors, including plaintiff class members, were arrested by D.C. Police officers, and police officials from other agencies acting under the direction of D.C. police, and under the police powers of the Government of the District of Columbia.

18. After being held in the custody of the D.C. Police for many hours, the plaintiff class members and other arrestees were remanded by D.C. Police officials to the defendants during the night of September 27, 2002 and then held in custody in holding cells of the D.C. Superior Courthouse for the District of Columbia, awaiting arraignment on the criminal charges lodged against them.

19. Plaintiffs and plaintiff class members were held in the custody of USMS, and in the physical custody of the individual defendants until the charges alleged against them

could be determined, judicially or otherwise. This determination occurred during the day on September 28, 2002.

20. While in the custody of the USMS, each and every plaintiff class member and other arrestees was subjected to strip searches in spite of the marshals having no individualized reasonable suspicion for doing so.

21. On information and belief, defendant Dillard and the USMS deputies conducted the uniform, blanket strip searches of each and every class member male arrestee on September 28, 2002 pursuant to an official USMS custom, policy or practice.

22. The strip searches conducted on the plaintiffs and plaintiff class members entailed the following actions:

   a. Small teams of defendants took aside small groups of eight to twelve plaintiff class members into a separate holding area;

   b. Plaintiffs were ordered to drop their trousers and underpants, face a wall, and to squat down and cough in front of the deputy marshals;

   c. No contraband was found on any class member;

   d. On information and belief, no records were made by the defendants of the results of the strip searches.

   e. Plaintiffs, and on information and belief, Plaintiff class members, were subjected to pat-down searches and visual inspection repeatedly and were in close physical proximity to other arrested persons as well as law enforcement over a period of hours prior to the strip search complained of herein.

23. The strip searches were intimidating, humiliating, and subjected each class member to strong emotional distress.

24. On information and belief, defendants' conduct of the said searches was malicious and recklessly indifferent to the rights and interests of the named plaintiffs and of all the members of the class.

25. Within a few hours after the strip searches were conducted, each class member was released either under bond, after pleading guilty to a minor offense such as failure to obey a police officer or "incommoding," or without any charge being advanced against him.

26. No class member was tried or convicted of any felony or crime involving violence or drug charges in connection with the arrests on September 27, 2002.

27. Both male and female protest arrestees were subjected to the searches. On information and belief, the women's claims with regard to strip searches are addressed under separate litigation.

28. On information and belief, claims of persons arrested at Pershing Park protests on that day are also addressed under separate litigation.

**CLAIM ONE – *BIVENS* PERSONAL LIABILITY OF FORMER UNITED STATES MARSHALL TODD WALTHER DILLARD AND OF UNITED STATES MARSHALL SERVICE EMPLOYEES FOR VIOLATION OF FOURTH AMENDMENT RIGHTS.**

29. Plaintiffs re-allege and reincorporate paragraphs 1 through 29 herein.

30. Named plaintiffs and every member of the plaintiff class have a right protected under the Fourth Amendment to the United States Constitution not to be subjected to unreasonable searches and seizures by persons acting under United States and District of Columbia governmental authority.

31. The said protection includes the right of an arrestee held on a non-drug, non-violent offense in police custody not to be subjected to a strip search in the absence of an individualized, reasonable suspicion on the part of the searching officer that there is a basis for the search.

32. Defendants Dillard and other defendant USMS employees violated that right, while acting in their capacity as U.S. Marshal for the District of Columbia Superior Court and

deputy U.S. Marshals by conducting on each named plaintiff and each member of the plaintiff class a search on September 28, 2002, consisting of the one or more of the defendants personally ordering each individual plaintiff to remove his clothing and exposing private parts of his body to a full visual inspection by one or more of the defendants, in the presence of other class members.

33. The defendants conducted the said searches in the absence of any reasonable, individualized suspicion that any plaintiff was secreting any form of contraband on his person.

34. Defendants violated clearly established law in conducting the searches:

   a. Washington, D.C. had been the site of large scale protests for decades prior to September, 2002.

   b. These protests have resulted many times in arrests of large numbers of protestors.

   c. Courts had ruled in previous decades on the proper standards for the police treatment of arrested protestors, and held that certain forms of highly intrusive searches of such arrestees' persons were violative of Fourth Amendment standards.

   d. As a result, the law governing what constitutes a reasonable ground for strip searching a prisoner had, as of 2002, long been clearly established in the District of Columbia, and, in particular, the illegality of conducting strip searches without any individualized, reasonable suspicion upon which to ground the searches.

   e. The defendants conducted the searches when acting under governmental authority.

   f. The defendants had fair notice of the applicable legal standard for the conduct of strip searches of prisoners. The plaintiffs were non-violent, non-felon, non-drug-related prisoners, who had been arrested in the course of a peaceful protest against government policies.

    g.    All the searches were highly invasive strip searches

35. There are no special factors to suggest to that the Court should decline to provide a special cause of action or a remedy for the defendants' violations of plaintiffs' rights.

36. Individual defendants are each individually and directly liable under the Fourth Amendment to each member of the plaintiff class for monetary damages for the injuries caused by defendants' conduct.

37. The claim entails an appropriate, judicially manageable remedy, namely, money damages which may be imposed on each of the defendants individually.

### CLAIM TWO — INDIVIDUAL DEFENDANTS' PERSONAL LIABILITY UNDER 42 U.S.C. §1983 FOR VIOLATION OF THE PLAINTIFFS' FOURTH AMENDMENT RIGHTS

38. Plaintiffs re-allege and reincorporate paragraphs 1 through 38 herein.

39. Defendants, in addition to being employees of the federal government, were at all relevant times acting as agents of, or in joint action with, the District of Columbia, for the purposes of assisting the D.C. police in the conduct of police operations during the mass protests which occurred on September 27, 2002.

40. The U.S. Marshal for the District of Columbia Superior Court derived his authority over the plaintiff class while they were in custody of the USMS and the deputy marshals pursuant to statutes of the District of Columbia, including D.C. Code §§ 13-302, 16-703, 23-501, 23-561, and 23-581 and cooperative agreements entered into between the U.S. Marshals Service and the Government of the District of Columbia pursuant to D.C. Code § 5-133.17.

41. The operations of the USMDC are and were at all relevant times funded in part by the District of Columbia.

42. The USMDC and his deputies acted at all relevant times as the agents of, or in joint action with, the Government of the District of Columbia.

43. Individual defendants were following USMS and USMDC policy, customs, and practices, which were the moving force behind the deprivations of the plaintiff class members' Fourth Amendment rights.

44. At all relevant times individual defendants were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the USMS and USMDC, and such individuals were acting in furtherance of the business of the USMS and USMDC.

45. Individual defendants proceeded under color of District of Columbia law to assume and retain custody of the plaintiffs and all members of the plaintiff class following their custody of the D.C. Police.

46. Individual defendants proceeded under color of District of Columbia law to conduct the aforementioned strip searches of the plaintiffs and all members of the plaintiff class.

47. Individual defendants are therefore liable under 42 U.S.C.§ 1983 for monetary damages for subjecting all members of the plaintiff class to violations of their Fourth Amendment rights to be free of unreasonable searches and seizures.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

1. Enter an Order authorizing this matter to proceed as a class action, and certifying named plaintiffs Paul Bame, Ivan Welander, Greg Keltner, Nicholas Church, and John Joel Duncan as representative plaintiffs, and designating the undersigned as class counsel, on behalf of the following class:

    a. each man who was: (1) arrested on September 27, 2002 by the D.C. Police officials during a series of mass protests in downtown Washington, D.C.; (2) remanded by D.C. Police, following that arrest, into the custody of the U.S. Marshal for the District of Columbia prior to being released; and (3) subjected by

      deputy U.S. Marshals to a strip, visual, body cavity search without any particularized or individualized reasonable suspicion that he was concealing drugs, weapons or other contraband; (4) excluding, however, all men arrested within the confines of Pershing Park on September 27, 2002.

2. Award to each plaintiff class member compensatory, consequential, and punitive damages against each of the defendants in an amount to be determined;

3. Award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. §1988 and any other applicable provision of law;

4. Grant such other and further relief as this Court deems just and proper.

### JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

Respectfully submitted,

/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq.
D.C. Bar No. 221598
P.O. Box 1547
Dubois, Wyoming 82513
Phone: 307-455-3334/3374
Fax: 307-455-3334
Email: lcunningham@law.gwu.edu


/s/ Zachary Wolfe
Zachary Wolfe, Esq.
D.C. Bar No. 463548
People's Law Resource Center
1725 I Street, NW, Suite 300
Washington, DC 20006
Phone: 202 265 5965
email: zwolfe@peopleslawresourcecenter.org

Dated: September 20, 2007

CERTIFICATE OF SERVICE

I hereby certify that I have caused a true copy of Plaintiffs' First Amended Class Action Complaint for Compensatory and Punitive Damages to served by electronic case filing this 20th day of September, 2007 upon the following:

Mark Nebeker, attorney for all defendants


*/s/ Lynn E. Cunningham*
Lynn E. Cunningham, Esq.,
Attorney for Plaintiffs