UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL BAME, et al.,                    )
                                      )
        v.                            )  Civil Action No. 05-1833 RMC
                                      )
JOHN F. CLARK, Acting Director        )
  United States Marshals Service,     )
  et al.,                             )
                                      )
_____)

SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs have brought this suit against the government defendants on behalf of a class of men alleging that their rights were violated following their arrest on September 27, 2002, by District of Columbia Police and their subsequent remand into the custody of the U.S. Marshal for the Superior Court of the District of Columbia.  In a telephone conference call on April 4, 2008, Plaintiffs' counsel proffered as support for Plaintiffs' claims the case of Kelly v. Foti, 77 F.3d 819 (5th Cir. 1996), arguing that that case supports the conclusion that it is not relevant whether arrestees refuse to identify themselves in assessing whether reasonable suspicion was present for strip searches.  In fact, a careful reading of Kelly supports the claims made by Defendants that a reasonable law enforcement officer could conclude that a person's failure to identify themselves to the police could properly be seen as sufficient reasonable suspicion to warrant the searches alleged in the plaintiffs' complaints:

A reasonable suspicion may arise from factors such as
"the nature of the offense, the arrestee's appearance
and conduct, and the prior arrest record." Id. (quoting
Giles v. Ackerman, 746 F.2d 614, 617 (9th Cir. 1984),
cert. denied, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d
479 (1985)).

* * *

First, while an individual's refusal to identify
himself may give rise to a reasonable suspicion, see
Wachtler v. County of Herkimer, 35 F.3d 77, 81-82 (2d
Cir. 1994), Kelly readily identified herself and told
the arresting officer that her driver's license was in
her hotel room. Second, Kelly can hardly be said to
have impeded the police's efforts to investigate her
background, as it is undisputed that she cooperated
with police, answered all of their questions, and
presented a purse full of non-photo identification.

Kelly, 77 F.3d at 821-22 (emphasis added); accord Wachtler v.

County of Herkimer, 35 F.3d at 81-82. The <u>Wachtler</u> Court adds

further to the analysis:

[W]e may assume that the crime charged could not give
rise to such a [reasonable suspicion that the arrestee
is concealing weapons or other contraband]. With
regard to the characteristics of the arrestee, the
police had, as a result of Wachtler's own conduct,
precious little information about him at the time of
the strip-search. Indeed, they did not even have the
pedigree information to which they were entitled.
Wachtler was thus different from the typical
misdemeanor-arrestee about whom much is known or is
learned from pedigree information. The circumstances
of the arrest might arguably have given a reasonable
officer cause to suspect that Wachtler was engaged in
illegal conduct of a more serious nature than driving
without a license. Wachtler's failure to identify
himself at the scene of the arrest or in court might
have been viewed as evidence of a consciousness of
guilt of some unidentified criminal activity.

* * *

We have found no caselaw that addresses the reasonable
suspicion issue in circumstances even remotely similar
to those in the instant case. Given those
circumstances and the lack of legal authority, we
cannot say that the individual officers violated a

-2-

            clearly established right in strip-searching Wachtler.
            Thus, the individual defendants involved in the strip-
            search are entitled to qualified immunity.

Wachtler v. County of Herkimer, 35 F.3d at 81-82 (footnote

omitted).

       As reflected in the Memorandum Of Points And Authorities In

Support Of Motion To Dismiss Or, In The Alternative, For Summary

Judgment ("Defendants' Mem.") at 14-23, the named Plaintiffs lack

standing to prosecute claims of, and are not representative of,

any men arrested who did not refuse to provide their names when

arrested on September 27, 2002.  Moreover, as Defendant Dillard

has argued, any of the men who refused to identify themselves

(i.e. who were identified only as "John Does"), cannot pursue

viable claims, because reasonable law enforcement officers could

reasonably believe that the failure to identify one's self could

provide reasonable suspicion that the arrestee was hiding

something in addition to their identity.  See, e.g., Kelly, 77

F.3d at 821-22; Wachtler, 35 F.3d at 81-82.  This Court declined

to resolve the issue in ruling on the motion to dismiss,

concluding:  "[t]his argument is, obviously, more properly

considered in the context of Plaintiffs' motion for class

certification, not in this motion to dismiss.  The Court will

therefore consider this argument when the time is right."

February 11, 2006 Memorandum Opinion at 9.  The issue is now ripe

for resolution and the named Plaintiffs cannot prevail.  They

                                -3-

certainly are not representative of anyone (if they exist) who
was searched as alleged in the Complaint but who provided
identifying information such as did the plaintiff in Kelly.

Also, as agreed in the April 4, 2008 telephone conference
call, undersigned counsel has examined the discovery provided by
Plaintiffs and can advise the Court that even the newly added
Plaintiffs (Nicholas Church and John Joel Duncan) lack standing,
because they, like Mr. Bame, Mr. Keltner and Mr. Welander, also
failed to identify themselves to the police upon their arrest.
See Plaintiffs' Responses To Federal Defendants' First Discovery
Requests, Interrogatory Response No. 2;[1] Plaintiffs' Responses to
Requests For Admissions Nos. 13-18 (in which Plaintiffs admit
that they refused to provide their true names to law enforcement
authorities, remaining identified to authorities only as "John

---

[1]  In those responses, Mr. Bame admits that "he refused to
provide his name to MPD personnel. . ." See Interrogatory
Response No. 2. Mr. Keltner admits that "I did not provide my
name to the MPD. . . the MPD staff relieved me of my backpack
which did not contain any personal identification materials. . ."
Id. Mr. Welander admits "When I was booked by the MPD, I did not
give my name and they listed me as a John Doe." Id. Nicholas
Church states "I did not ever provide my name to MPD or the USMS
staff. Following my arrest . . . while on the bus, a fellow-
arrestee stood and announced that many of us were going to jail
solidarity [sic], refusing to give our names. On the bus, there
were only the two of us who were going to do jail solidarity. . .
They left us John and Jane Does, about 100 of us it seemed, to
sit outside. . ." Id. John Joel Duncan states: "I had decided
beforehand that I was not going to give my name to the MPD
police. . . From what I understood people were paying for their
release and going home. Being a "John Doe" I was amidst the last
group to be brought into the Academy. I did not provide my name
to MPD staff." Id.

Doe"); Plaintiffs' Responses to Requests For Admissions Nos. 19-20 (the protest in which the Plaintiffs participated had been publically touted as an effort to shut down the city, although Plaintiffs dispute that they or those arrested with them actually intended or desired to shut down the city). This fact, again raises another basis to conclude that "John Doe" arrestees on September 27, 2002, might reasonably be suspected to have contraband with which to cause a security breach in the cellblock in furtherance of the desire to shut down the city.

Moreover, the estimates of arrestees provided by the named plaintiffs fail to support their numerosity claim. Mr. Bame has said that there were "a dozen in [his] cell prior to the new 5 a.m. arrivals from the Police Academy" and that he has "no reason to believe any were arrested at Pershing Park." Plaintiffs' Response To Interrogatory No. 8. However, although Plaintiff Bame suggests that he has "no reason to believe" he was housed with those arrested at Pershing Park,[2] the Plaintiffs have admitted that they were placed among other protesters who were arrested before and after they were. See Plaintiffs' Response To Interrogatory No. 7 ([Bame] arrived at . . . MPD Building B. . .

---

[2] Mr. Bame's Declaration (Docket No. 31) similarly hints that he really has no basis of knowledge regarding where the other arrestees were seized. See Bame Decl., ¶ 11 ("To the best of my knowledge all of men lodged in the cell blocks with me had been arrested in the same cluster of protesters with me or outside Pershing Park.") (emphasis added).

most of my bus was finally booked . . . On September 28, 2002, around five a.m. many detainees from Blue Plains arrived."); Plaintiffs' Response to Interrogatory No. 8 ("He [Welander] was directed to another room with several other male arrestees. . . They were then put into cells with other demonstrators who had arrived at this location earlier.").

As previously noted by Defendant, in <u>Barham</u> v. <u>Ramsey</u>, Civil Action No. 02-2283 EGS, those Plaintiffs have claimed and documented their estimation that their claims are made on behalf of "approximately 400+ persons" attending demonstrations on September 27, 2002, who were arrested at Pershing Park and subjected to harsh conditions of confinement.  <u>See</u> February 7, 2003 Motion For Class Certification And Notice in Civil Action No. 02-2283 EGS (Docket No. 3).  Mr. Bame has therefore offered no basis to conclude that the full 80 men he saw are likely members of the class, as opposed to members of the class arrested at Pershing Park.  As such, they would be excluded from the putative class described in this action.  <u>See</u> Second Amended Class Action Complaint For Compensatory and Punitive Damages (Docket No. 57), ¶¶ 9-10.

Mr. Bame's estimate of the numbers is also not supported by Mr. Church.  Mr. Church, in describing the number of John Doe protesters in the cells including him, used the term "all 50 or so of the John Doe protester arrestees").  <u>See</u> Interrogatory

Response Nos. 2a and 8.[3]  There is no reason to believe that even this estimate of 50 did not include protesters who are already represented in the other class actions stemming from arrests on September 27, 2002.

Mr. Welander and Mr. Duncan indicate that they were arrested by D.C. MPD at Vermont Avenue and K Street, N.W.  <u>See</u> Interrogatory Response No. 8.  Mr. Bame claims he was arrested at Connecticut Avenue and K Street.  <u>Id</u>.  This is the area that has been described as including the purported class in another class action case. <u>See</u> First Amended Complaint in <u>Burgin</u> v. <u>District of Columbia</u>, Civil Action No. 03-2005 EGS Complaint, ¶¶ 1, 8, 14.

In short, the fact that these plaintiffs want to pursue numerous pieces of litigation aimed at differing parties but at recoveries for the same conduct, suggests that their proposal to utilize a class action is not truly designed to promote efficiency.  They have, instead, failed to establish that class

---

[3]  Mr. Duncan advises that among the numbers with whom he was held, people were paying a sum to secure their release, leaving "piles of dollar bills."  <u>See</u> <u>id</u>., Interrogatory Response Nos. 2a and 7.  Thus, it seems likely that most of the protesters arrested on September 27, 2002, were released before any USMS searches took place.

action treatment is warranted under Fed. R. Civ. P. 23.  Their
motion for class certification should, therefore, be denied.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Supplemental Memorandum In Opposition To Plaintiffs' Motion For Class Certification has been made through the Court's electronic transmission facilities on this 8th day of April, 2008.

_____ /s/

W. MARK NEBEKER
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230