UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| Paul Bame, et al., ) | |
| --- | --- |
| Plaintiffs, ) | |
| on behalf of themselves and all ) | |
| other similarly situated ) | |
| vs. ) | Civil Action No. 1:05CV01833 (RMC) |
| ) | No scheduled hearings. |
| Todd Dillard. ) | |
| Defendant ) | |

**PLAINTIFFS' REPLY TO
DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION.**

Plaintiffs Paul Bame, et al., by counsel, hereby reply to defendant Todd Dillard's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification [#58]. First, plaintiffs offer the Court a review of pertinent facts in the record as it stands at this point in discovery. The plaintiffs then reply to point raised in defendant's memorandum in the order in which they appear in that memorandum.

**BLANKET STRIP SEARCHES OF PLAINTIFFS HAD NO BASIS.**

Dozens of men (and women) were arrested by D.C. Metropolitan Police Officers for minor traffic infractions at the very start of a peaceful protest early on the morning of Friday, September 27 2002, the first day of the scheduled protests.[1] The arrestees were hand searched and held in custody by MPD for many hours, during which some arrestees posted and forfeited

---

[1] See Plaintiffs' Responses To Federal Defendants' First Discovery Requests, Response to Interrogatory #2. Attached as an exhibit to Defendant's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification. [#58].

bail before being released.[2]  The Court may conclude from these facts that the charges against all the arrestees were very minor.  The defendant and the USMS officers conducting the searches was aware of these facts.[3]  Indeed, many arrestees charged in later litigation that the arrests were not just minor, but simply illegal.

Those who did not post and forfeit bail were bused late on Friday, September 27 2002, to a facility where they were placed by the MPD under the custody of Marshal Dillard and his staff of USMS officers.[4]  In that facility, arrestees were " squat and cough" strip searched by USMS guards under Dillard's control and supervision.[5]  All these arrestees were then in turn either simply released by the USMS staff directly from the holding cells without being charged because their "papers had been lost",[6] or else some were arraigned before Superior Court magistrates and then promptly released without punishment.[7]

The USMS searches of every arrestee protestors were all pursuant to a blanket strip search, searches of each and every man and woman brought into that USMS facility on that day.[8] Defendants effectively concede that there was absolutely no effort to make an individualized, reasonable suspicion upon which to base any one search of any protestor.

Standard written procedure of the USMS requires that USMS personnel file formal

---

[2] Ibid.

[3] Gov't Responses to Plaintiffs' Initial Interrogatories. Response #4.

[4] Plaintiffs' Responses To Federal Defendants' First Discovery Requests, Response to Interrogatory #2.

[5] Dillard does not concede that any strip searches ever took place on any plaintiff class members.  However, the named plaintiffs' testify universally in their responses to defendant's interrogatories that they were all strip searched in the same way by USMS personnel.  Dillard was admittedly the U.S. Marshal for Superior Court at the time.

[6] Plaintiffs' Responses To Federal Defendants' First Discovery Requests, Response to Interrogatory #2.

[7] Ibid.

[8] Plaintiffs' Responses To Federal Defendants' First Discovery Requests, Response to Interrogatory #2.

reports of each and every strips search conducted.[9]  Yet, no such report was filed in this case for these protestors.[10]  Defendant concedes no contraband was found as a result of the searches.[11]  No basis for any strip search was stated or discussed in any response to discovery or recorded by USMS staff or the defendant.

Shortly after their early morning arrests, the named plaintiff protestors and many other protestors determined to refuse to identify themselves to the MPD as a form of protest against their, to them, obviously unfair arrests.[12]  While in the custody of the MPD named plaintiffs and other class members were required to hand over all their backpacks and other personal items to the MPD officers.[13]  If they had had any form of photo identification with them at the time, these would have been taken by the MPD officers.  Most or all arrestees were, however, fingerprinted and photographed by the MPD officers, and in this sense identified themselves.[14]  At the same time, many of their fellow protestors who were arrested at the same location were allowed to post and forfeit bail and then released, all without being subjected to a strip search by the MPD.[15]  Those protestors who went before a court before being released, identified themselves to their attorneys and to the court.[16]  As stated, many protestors, including Welander and Keltner, were simply released directly back on to the street by the defendant after the USMS personnel told

---

[9]     Defendants' Initial Disclosures. Documents: "United States Marshals Service Policy Directive 99-25, Body Searches; United States Marshals Service Forms 210, Incident Reports: searches and contraband seized".

[10]    Gov't Responses to Plaintiffs' Initial Interrogatories. Response #2.

[11]    Ibid.

[12]    See, Plaintiffs' Responses To Federal Defendants' First Discovery Requests, Response to Interrogatory #2.

[13]    Ibid.

[14]    Ibid.

[15]    Ibid.

[16]    Ibid.

them, "because their papers were lost".[17]  It seems unlikely that dangerous persons who were suspected of harboring contraband or weapons would be simply released by the deputy marshals.

The arrest of these peaceful protestors, coupled with the follow up to those arrests, fall squarely within the numerous court holdings which prohibit blanket strip searches of persons arrested for minor crimes.  Courts have repeatedly held, long before 2002, that the highly intrusive nature of a strip search requires officers conducting such searches to examine all the factors surrounding an arrestee's situation to form the basis for conducting such a search.   The situations of these peaceful protestors simply were not such as to provide the slightest basis for forming a reasonable individualized suspicion upon which to base a search.  USMS staff had no basis, under this set of facts, for believing that these protestors were carrying any form of contraband, or had such criminal records upon which to base a reasonable suspicion for a search. The blanket searches were conducted on the basis of pure speculation, or, worse, perhaps retribution.  In the view of the individual plaintiffs perhaps the most accurate characterization of the strip searches by the USMS personnel under Dillard's command was that Dillard and his men sought to impose punishment for the class members' protest of the unjust arrests which curtailed their right to protest peacefully on the streets, rather than a searches that had the slightest reasonable basis.  Further discovery is needed on this point.

**FAILURE TO STATE NAMES WAS NOT GROUNDS FOR A STRIP SEARCH**

Defendant Dillard's memorandum contends: "A careful reading of Kelly supports the claims made by Defendants that a reasonable law enforcement officer could conclude that a person's failure to identify themselves to the police could properly be seen as sufficient reasonable suspicion to warrant the searches alleged in the plaintiffs' complaints...".   Defendant radically misstates the case law on blanket strip searches and misreads the *Kelly v Foti* decision.

---

[17]     Ibid.

As plaintiffs have shown in their main brief,[18] numerous courts have held that blanket strip searches of arrestees charged with minor crimes violate the Fourth Amendment ban on unreasonable searches.  Defendants cite to no case law which actually supports the proposition that any one factor, such as a failure to identify onself promptly, can overcome the well established rule against blanket strip searches of arrestees.

*Kelly v Foti*, 77 F.3d 819 (5th Cir. 1996), accords with this case law.  The strip search of a tourist who made a illegal turn and then was unable to produce her driver's license promptly was held unlawful by that court.  The court looked at the entire series of reasons offered by the defendant officers as a basis for their search, including her delay in producing a valid driver's license, and rejected those bases. The *Kelly* court held that even these elements as combined were not grounds upon which to base an individual strip search.

Dillard's first misreading of the case is to point out that Kelly identified herself by name to the arresting officers, and that thus in this sense she "identified" herself, unlike the *Bame* plaintiffs.  But the arresting officers strip searched her because she was driving without carrying her driver's license, and then failed to identify herself in the sense of promptly providing her driver's license.  Her actual statement of her name, which is what the USMS staff were asking of the protestors, seems to have been irrelevant to them when it came to deciding whether to strip search her.  Significantly, the *Kelly* court states plainly: "we conclude that an officer's inability to confirm an arrestee's identity did not make a strip search objectively reasonable in 1992."   77 F.3d at 822.

Second, Dillard would stand the *Kelly* case on its head by saying that defendant may isolate one factor in a series of factors surrounding an arrest and thereby ground a long series of blanket strip searches here.  According to Dillard the *Kelly* court suggested, even while holding to the contrary, that a failure to identify oneself might serve as the sole element needed upon which to ground a strip search.  Defendant then argues, therefore, it was lawful to blanket strip

---

[18] As well as in their opposition to defendant's motion to dismiss.[#]

search all plaintiff class members in this instant case, after they failed to identify themselves promptly. Dillard thereby ignores all the other elements surrounding the protestor's arrests, namely, the minor traffic infractions alleged (the protestors were actually on foot), the peaceful nature of the protests, and the age and demeanor of the arrestees. The courts which released the protestors seemed not to treat these men as any form of danger to themselves or others. The USMS officers who simply released some of them "because they had lost their papers" did not treat these men as any form of danger to themselves or others. The MPD officers who released protestors on simple forfeit of bail did not treat them as any form of danger to themselves or others, sufficient to require their being strip searched. These facts provided the context under which these men were held and searched, and this context does not support a blanket strip search, even when the men were withholding their names from the MPD.

The Fifth Circuit in the *Kelly* decision specifically rejects generalized reasoning with regard to determining whether to strip search a class of arrestees:

> "A strip search is permissible only if the official has an individualized suspicion that the arrestee is hiding weapons or contraband. This suspicion must relate to the "individual arrestee," not a "category of offenders," Watt, 849 F.2d at 197, and does not arise merely because an arrestee fails to post bond immediately and police move him to general population. Weber v. Dell, 804 F.2d 796, 801-02 (2d Cir. 1986), cert. denied, 483 U.S. 1020 (1987). In short, pure speculation does not create a reasonable suspicion; nor does a generalized fear of a category of arrestees." 77 F.3d at 822.

Dillard also cites the holding in *Wachtler v Co. Of Herkimer*, 35 F.3d 77 (2d Cir. 1994). The *Kelly* decision slightly misstates the holding in *Wachtler*, which did not hold that a failure to identify oneself was in itself a sufficient basis to conduct a strip search. *Wachtler* held one particular set of "unique circumstances", did permit qualified immunity for the defendant officers sued in their individual capacity. *Wachtler* went on to hold that the county of Herkimer could be held liable for the search, in spite of the arrestee's failure to identify himself. In *Wachtler*, the court considered the "somewhat unique" circumstances of the arrest, and the fact that the arresteee had $1000.00 on him, might have been viewed (by the arresting officers) as

some "consciousness of guilt".[19] Even so, the court did not rule on the constitutionality of the search, but instead dismissed the claims based on qualified immunity. In other words, the court did not hold that mere failure to identify oneself could serve by itself as the basis for a strip search, and applied the universally recognized standard of asking whether there might have been reasonable, individualized bases upon which to base a search. In our case, the USMS and Dillard admit essentially that they did a blanket strip search of dozens of protestors, with no effort to make an individualized determination upon which to base their searches other than now offering the post-hoc rationalization that the protestors refused to give their names before doing so in the Court.

In *Dodge v County of Orange,* 209 F.R.D. 65 (S.D.N.Y. 2002) the court summarized the state of the law as of 2002 in the Second Circuit and effectively in the rest of the circuits, as follows:

> The Second Circuit has ruled that strip searches of individuals charged with misdemeanors or other minor offenses are lawful only when "officers have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." Weber v. Dell, 804 F.2d 796, 802 (2d Cir.1986). That law has been well settled for some time. Wachtler v. County of Herkimer, 35 F.3d 77 (2d Cir.1994); Walsh v. Franco, 849 F.2d 66 (2d Cir.1988). In Shain v. Ellison, 273 F.3d 56 (2d Cir. 2001), the Court of Appeals held that the law on this point was so well-settled by July 1995 that qualified immunity was not available to shield an officer from liability for conducting a strip search in the absence of reasonable suspicion on or after that date. A fair reading of Second Circuit law on the subject suggests that strip searches of misdemeanor arrestees will be the exception, not the rule. 209 F.R.D. at 72.

The holding in *Sarcinola v Co. Of Orange*, 229 F.Supp.2d 259 (S.D.N.Y 2002) illustrates the importance of looking at a number of factors prior to determining whether to conduct a strip search. The court there held that a strip search of the passenger of a vehicle used in a drug buy violated the Fourth Amendment, even though the other passengers in the car were involved in the drug related criminal activity. The court enumerated a series of possible factors which officers might consider in determining whether to strip search her, and, in fact, included in this theoretical

---

[19] As it turned out, Judge Wachtler was at the time the presiding judge the New York State Court of Appeals.

list an arrestee's refusal to identify herself. Thus, the court required the officers to look beyond any one factor and to consider all the factors surrounding the arrest and the situation of the individual arrestee before determining whether to conduct a strip search. Even though Sarcinola was a passenger in a vehicle involved in a drug bust, the strip search of her violated the Fourth Amendment.

At most, a refusal to identify oneself while under arrest may constitute one factor an officer might consider in making a his individualized, reasonable determination to conduct a strip search. It is not a sufficient basis to strip search an entire class of arrestees.

As the factual record stands in this case, the refusal of the protestors to identify themselves has not even been shown by defendant to be a factor applied in these searches. Instead blanket searches were conducted with no effort to make reasonable and individualized determinations. Simply no reasonable determination could have been made to search these protestors. They had been arrested at a peaceful rally. They were charged with minor infractions. Their cases were dismissed almost immediately, i.e., no judicial officer took the charges as being serious, and no contraband was in fact found. The current state of the evidence in this case reveals no basis for conducting a strip search.

As stated, the arrestee self identification issues appears merely to be a post hoc rationalization likely made up by defendant's counsel after this case was filed, and was not even considered by the USMS officers at the time of the searches. Defendant and his staff were required to prepare formal reports whenever an arrestee was strip searched. He has produced no such documents. Defendant cannot offer the Court a post-hoc rationalization, such as failure to self-identify, as a basis now for a strip search conducted then.

The arrestee self identification issue is spurious, and the Court should not take it as a basis either to deny class certification, the standing of the named plaintiffs to bring this action, or the standing of the named plaintiffs to represent those protestors who did give their names to

MPD officials.[20]  Moreover, Marshal Dillard should not now be accorded qualified immunity under the state of the law as it existed in 2002, and under the state of facts in this case.

**PLAINTIFFS HAVE DEMONSTRATED NUMEROSITY**.

As noted in plaintiffs' reply brief, Judge Lamberth points out in *Neal v. Moore*, 1994 U.S. Dist. LEXIS 21339 (D.D.C. 1994), that there is no numerical floor on class size.  Plaintiffs' counsel has been contacted by approximately twenty men who fall within the class definition.  More individuals can be contacted and identified.

Plaintiffs have testified in their responses to discovery that as many as eighty other men were in the cells with them, who were strip searched and who were part of the protests at which the named plaintiffs were arrested.[21]

This is more than enough numerosity to justify the Court certifying a class at this time.

Dillard speculates in footnote three of his supplemental memorandum that perhaps most of the protestors posted and forfeited and were released by the MPD prior to being turned over to the USMS custody.  Whatever the number was of such post and forfeit releasees, the named plaintiffs testify that they were in the holding cells with well over the twenty men who have contacted plaintiffs' counsel as of this time, and with likely as many as eighty men.

---

[20]   Thus defendant is wrong to contend that "Moreover, as Defendant Dillard has argued, any of the men who refused to identify themselves(i.e. who were identified only as "John Does"), cannot pursue viable claims, because reasonable law enforcement officers could reasonably believe that the failure to identify one's self could provide reasonable suspicion that the arrestee was hiding something in addition to their identity. See, e.g., Kelly, 77 F.3d at 821-22; Wachtler, 35 F.3d at 81-82."

[21]   In the event the Court rules against plaintiffs' motion for class certification, it is anticipated that the plaintiffs will move to intervene as additional individual plaintiffs the approximately fifteen individual protestors, in addition to the five current named plaintiffs, who have contacted plaintiffs' counsel concerning filing claims in this case.  Beyond these twenty, additional individual men can be contacted and offered the opportunity to intervene as well.  Such a motion to intervene would be permitted and timely under class action procedure.

**DEFENDANT HAS NOT MOVED FOR SUMMARY JUDGMENT.**

Defendant's supplemental memorandum in opposition to plaintiffs' motion for class certification is somewhat confusingly labeled in the ECF filing as a "motion for summary judgment".  However, none of the indicia of a motion for summary judgment are present, particularly a statement of facts not in dispute, with accompanying citations to the record, as required by Local Rule 7(h).  Should the Court desire to treat aspects of the motion for class certification as a motion for summary judgment, plaintiffs respectfully request the courtesy of requiring defendant to file such a statement, and also the courtesy of providing plaintiffs with the opportunity to respond as they would to a motion for summary judgment.

## CONCLUSION

For the reasons stated herein, and in plaintiffs' main [#18] and reply [#31] briefs in support of their motion for class certification, the requested class should be certified.

Respectfully submitted,

/s/ Lynn E. Cunningham
Lynn E. Cunningham, Esq.
Counsel for Plaintiffs
D.C. Bar # 221598
306 Westview Drive
Dubois, WY 82513
307-455-3374
Email: lcunningham@law.gwu.edu

Zachary Wolfe, Esq.
D.C. Bar No. 463548
People's Law Resource Center
1725 I Street, NW, Suite 300
Washington, DC 20006
Phone: 202 265 5965
email: zwolfe@peopleslawresourcecenter.org

Certificate of Service

I hereby certify that a copy of the foregoing was served upon defendant's counsel, Mark

Nebeker, through the Court's electronic transmission facilities on this 21st day of April, 2008.


/s/ Lynn E. Cunningham
Counsel for Plaintiffs
306 Westview Drive
Dubois, WY 82513
307-455-3374