UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL BAME, et al.,                )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )  Civil Action No. 05-1833 RMC
                                  )
JOHN F. CLARK, et al.,            )
   Director,                      )
   U.S. Marshals Service,         )
                                  )
          Defendants.             )
_____ )

DEFENDANT DILLARD'S RESPONSES TO
PLAINTIFFS' DISCOVERY REQUESTS PURSUANT TO
RULE 56(F) TO DEFENDANTS DILLARD AND 15 JOHN DOES

Defendant Todd Dillard hereby responds as follows to
"Plaintiffs' Discovery Requests Pursuant To Rule 56(f) To
Defendant Dillard And 15 John Does."

I.    Preliminary Statement

The information supplied in these responses is that
which is currently available, unless privileged, and Mr.
Dillard therefore reserves the right to supplement or modify
the information contained in these responses should any
additional information become available through continued
work on this case.  As additional information is located
that is responsive to the request for documents, the
defendants reserve the right to assert such privileges and
objections to discovery as appear appropriate.

II.    General Objections

Defendant Dillard responds to Plaintiffs' discovery
requests subject to the accompanying objections and also
submits these responses to the document request subject to,

without intending to waive, and expressly preserving: (a) any objections as to competency, relevancy, materiality, and admissibility of any of the responses; and (b) the right to object to other discovery procedures involving and related to the subject matter of the document requests to which he responds herein.  Mr. Dillard objects to Plaintiffs' discovery requests to the extent that they seek attorney work product, trial preparation material, or communications protected by the attorney-client privilege, or any applicable privilege.  Moreover, Mr. Dillard objects to the extent that Plaintiffs discovery requests could be read to require and additional effort to search for or uncover responsive information on the basis that the requests are overly burdensome and unlikely to lead to the discovery of admissible evidence.

Each and every response to these discovery requests is made subject to the foregoing General Objections, regardless of whether a General Objection or a specific objection is stated in the response.  The explicit reference to a General Objection or the making of a specific objection in response to a particular request for documents is not intended to constitute a waiver of General Objections that are not specifically referred to in that response.

III.    <u>Responses and Objections to Interrogatories</u>

1.  Please describe all actions undertaken by any persons to perform the Strip Searches on any member of the

proposed class, including performing, supervising, or recording information about the Strip Searches, and any oral statements made by any USMS personnel to any member of the proposed class.

OBJECTION: Defendant Dillard objects to this interrogatory as vague, misleading and not within the scope of proper discovery, insofar as Plaintiffs have defined Strip Searches in a manner inconsistent with the searches alleged in the First Amended Complaint and related pleadings. Plaintiffs have alleged that the searches at issue involved the requirement that the plaintiffs "drop their trousers and underpants, face a wall, and . . . squat down and cough in front of the deputy marshals" See First Amended Complaint, ¶ 23(b). Yet, their interrogatories seek information regarding all searches that involved the removal of even outer clothing, such as jackets or hats. See Plaintiffs' Discovery Requests at 1, ¶ 2 (Definitions And Instructions). The interrogatory is also vague because it does not define exactly who plaintiffs intend to include within the proposed class. Defendant Dillard further objects to this request to the extent it requires Defendants to assume as true allegations made by the Plaintiffs. In responding to these Requests, Defendants do not admit to the truth of any of Plaintiffs' factual allegations not hitherto admitted in the answer to Plaintiff's pleadings. Notwithstanding these objections, Defendant Dillard provides

-3-

the following information:

RESPONSE: Because of the passage of time and because he was not present at the interaction between the proposed class-members and USMS personnel, Defendant Dillard is unable to ascertain a complete account of what, if any, oral statements were made by any USMS personnel to any member of the proposed class. USMS personnel can be expected to have conveyed sufficient information through words or gestures to those being searched so that those being searched would understand that they should remove their outer clothing so that it could be searched for contraband. These searches would have been conducted by various DUSMs and DEOs, who were under the following chain of command on September 28, 2002:

United States Marshal Superior Court District of Columbia, Todd W. Dillard; Chief Deputy United States Marshal Superior Court District of Columbia, Charles Rowe; Assistant Chief Deputy United States Marshal Michael Mitchell. If SCDC personnel conducted searches of any of the Plaintiffs on September 28, 2002, which involved requiring the Plaintiffs to expose private parts of his body to a visual inspection, such searches would have been based on the reasonable suspicion that the prisoner possessed contraband or based on the discovery of contraband in his possession when SCDC personnel conducted a pat-down or in-custody search of that

-4-

Plaintiff.

The records currently on file with the USMS do not
reflect that any paperwork was prepared of such searches of
Plaintiffs proposed class members on September 27, 2002 or
September 28, 2002.

2.  Please identify all persons performing any action
described in response to interrogatory #1 and describe their
positions in the chain of command of the USMS, and their
roles and responsibilities with regard to the conduct of the
Strip Searches.

OBJECTION: To the extent that this interrogatory could
be read to incorporate the terms of the previous
interrogatory, Defendant Dillard incorporates the objections
raised to that interrogatory, above.

RESPONSE: USMS personnel assigned to the USMS cellblock
on the dates in question would have conducted pat-down and
in-custody searches of proposed class members to the extent
provided in USMS Policy Directive 99-25, July 7, 1999
regarding body searches.  There are no records of any
searches of the proposed class members that involved
exposing private parts of his body to a visual inspection
and such searches were not routinely done on any of the
potential class members on September 27, 2002 or September
28, 2002.

3. Please identify and describe any activities or planned activities of the MPD and USMS carried out on September 27, 2002 to house the proposed class members with prisoners and detainees other than with those persons arrested on the same day and the same locations as proposed class members.

OBJECTION: Defendant Dillard objects to this interrogatory as vague, insofar as Plaintiffs do not define what is meant by the term "to house." The interrogatory is also vague because it does not define exactly who plaintiffs intend to include within the proposed class.

RESPONSE: Without waiving the applicable objections, Defendant Dillard knows of no planned activities on the part of the MPD and USMS carried out on September 27, 2002 to place the proposed class members in the same cells as prisoners and detainees other than with those persons arrested on the same day and the same locations as proposed class members. They would have been kept for periods within sight of other arrestees and in sufficiently close proximity that they could have gestured or spoken with other prisoners not arrested with them; and it may have been possible for prisoners arrested at other locations to pass contraband under or through cell bars into the holding area where the Plaintiffs would have been located.

4. Please describe any criminal or other background

-6-

investigation or "checks" conducted on any proposed class members by any MPD or USMS personnel within twenty-four hours before, or twenty-four hours after, the Strip Searches.

OBJECTION: Defendant Dillard reiterates his objection to the term "Strip Searches," which he raised in objection to Interrogatory No. 1, above. Defendant Dillard also objects to this Interrogatory to the extent it requires Defendants to assume as true allegations made by the Plaintiffs. In responding to these Requests, Defendant Dillard does not admit to the truth of any of Plaintiffs' factual allegations not hitherto admitted in the Defendant's answer to Plaintiff's First amended complaint. The interrogatory is also vague because it does not define exactly who plaintiffs intend to include within the proposed class. Without waiving this objection, Defendant Dillard responds as follows:

RESPONSE: Defendant Dillard does not have access to all of the information in the possession of the MPD which might be responsive to this interrogatory. USMS personnel were assigned to assist MPD personnel with any necessary database queries for criminal background checks. However, there are no USMS records showing that any criminal background checks were conducted by USMS personnel of the men arrested on September 27, 2002, or September 28, 2002,

by D.C. Police officials during a series of mass protests in
downtown Washington, D.C.

5.   Please identify and describe all information and
knowledge in the possession of any MPD or USMS personnel
concerning each member of the proposed class prior to and
during the Strip Searches.

OBJECTION:  Defendant Dillard reiterates his objection
to the term "Strip Searches," which he raised in objection
to Interrogatory No. 1, above.  Defendant Dillard also
objects to this interrogatory on the grounds that it is
overbroad, vague, and seeks information that is beyond the
scope of discovery.  Without waiving these objections,
Defendant Dillard responds as follows:

RESPONSE:  Defendant Dillard does not have access to
all of the information in the possession of the MPD which
might be responsive to this interrogatory.  But, it is his
understanding that, generally, the MPD transports detainees
to the USMS Superior Court cellblock in buses or vans where
USMS personnel receive a van sheet containing the names of
the detainees, if known.  USMS personnel receive a lockup
sheet consisting of detainee name (where available), police
department identification ("PDID") number, and charge.  In
addition each detainee wears a arm band with name (where
available) and a PDID number.  Where the identity of the
prisoner cannot be determined, however, the name and

-8-

possibly the PDID number may be incorrect.  Where a true
name is not known, such as appears was the case with the
named plaintiffs, the Van sheet and arm band would identify
the prisoner as a "John Doe," which means that no or
incorrect identification information was provided by the
prisoner.  Under such circumstances, the PDID number was
also not a reliable indicator of the prisoner's criminal
history.

6.  Please describe any information concerning any
proposed class member which formed the basis for any of the
Strip Searches.

OBJECTION:  Defendant Dillard reiterates his objections
raised in objection to Interrogatory No. 1, above.

RESPONSE: Routine searches of prisoners transferred to
the custody of the USMS would have been conducted of those
prisoners arrested on or about September 27, 2002, by D.C.
Police officials during a series of mass protests in
downtown Washington, D.C., which routine searches would have
involved having the prisoners remove their outer clothing.
The USMS would have been on notice that any arrestee
identified only as a "John Doe" was refusing to provide
accurate identifying information to members of law
enforcement.  USMS employees, however, have denied that
this alone was used as a basis to conduct a more intrusive
search of the men arrested on or about September 27, 2002.

7.   Please identify and describe for each member of the
proposed class any weapons or contraband found during, or as
a result of, the Strip Searches.

CBJECTION:  Defendant Dillard reiterates his objections
raised in objection to Interrogatory No. 1, above.

RESPONSE:  Defendant Dillard is unable to identify any
records describing weapons or contraband recovered from the
men arrested on or about September 27, 2002, by D.C. Police
officials during a series of mass protests in downtown
Washington, D.C.

8.   Please identify and describe all databases or other
systematized information sources, whether in electronic or
hard copy format, available to, and/or consulted by, any
USMS personnel before, during, and after the Strip Searches
relating to the background of any class member.

OBJECTION:  Defendant Dillard reiterates his objections
raised in objection to Interrogatory No. 1, above.
Defendant Dillard also objects to the interrogatory as
vague, in that Plaintiffs do not define what they mean by
the term "available to," because the database may have been
in existence, but practically unaccessible due to the large
number of arrests and/or because the actual name of the
person would be needed to make use of the database in the
time available.  Defendant Dillard also objects insofar as

-10-

the interrogatory could be read to apply to USMS personnel
unrelated to the men arrested on or about September 27,
2002, by D.C. Police officials during a series of mass
protests in downtown Washington, D.C.

RESPONSE:  Defendant Dillard is unable to identify any
records responsive to this request, but advises that
responsive information may be found in the response to
Interrogatory No. 1, above.

RESPONSE:  The following databases were in existence in
September 2002 and could have been accessed by certain USMS
personnel under appropriate circumstances and provided the
USMS personnel had knowledge of accurate identifying
information about an individual so as to allow use of the
databases: USMS Warrant Investigation Network (WIN),
NCIC/NLETS and WALES.

9.  Please identify any class members who provided his
name to any MPD or USMS personnel within twenty-four hours
prior to the Strip Searches.

OBJECTION: Defendant Dillard objects to this
interrogatory as vague because it does not define exactly
who plaintiffs intend to include within the class.

RESPONSE:  Defendant Dillard is unable to identify any
responsive records or information.

-11-

10. Please identify any knowledge of any unlawful, or purportedly unlawful, acts committed during the year preceding any Strip Searches by any members of the proposed class, which knowledge was, prior to conducting any Strip Searches, in the possession of any USMS and MPD personnel.

OBJECTION: Defendant Dillard reiterates his objections raised in objection to Interrogatory No. 1, above.

RESPONSE: USMS personnel possessed no knowledge of any unlawful or proportedly unlawful acts on the part of the plaintiffs, other than the charges which formed the basis for their arrest by MPD personnel, prior to Plaintiffs entering SCDC custody for presentment and that they were refusing to properly identify themselves to law enforcement.

11. Please identify any USMS and MPD personnel who issued one or more orders, authorizations, or other determinations to USMS personnel to conduct any Strip Searches.

OBJECTION: Defendant Dillard reiterates his objections raised in objection to Interrogatory No. 1, above.

RESPONSE: To the extent that Plaintiffs could be asking about searches that include removal of only outer clothing, such searches are permitted by USMS policy. More intrusive strip searches are authorized under certain circumstances by USMS Policy directive 99-25, July 7, 1999,

-12-

regarding body searches.

12.  Please describe all factors relied upon by any members of the MPD or USMS personnel to issue and carry out any written or oral orders to conduct any Strip Search.

OBJECTION:  Defendant Dillard reiterates his objections raised in objection to Interrogatory No. 1, above.

RESPONSE: Defendant Dillard does not have any information regarding what the MPD may have relied upon in MPD's dealings with the men arrested on or about September 27, 2002, by D.C. Police officials during a series of mass protests in downtown Washington, D.C.

The factors generally considered by USMS personnel when determining whether to carry out a search requiring arrestees such as the plaintiffs to expose private parts of their bodies to a visual inspection are set forth in USMS Policy Directive 99-25, July 7, 1999.  USMS employees, however, have denied that the men arrested on or about September 27, 2002, by D.C. Police officials during a series of mass protests in downtown Washington, D.C., were subjected to routine searches requiring them to expose private parts of their bodies to a visual inspection. Rather, the men arrested on or about September 27, 2002, by D.C. Police officials during a series of mass protests in downtown Washington, D.C., were not subjected to routine

-13-

searches by the USMS requiring these arrestees to expose private parts of their bodies to a visual inspection.

13.  Please describe any knowledge of any USMS personnel at any time concerning the actions of the D.C. Superior Court judges, or other judicial officers, which resulted in the release of any plaintiff class members prior to the end of the day of September 28, 2002.

OBJECTION:  Defendant Dillard objects to this interrogatory as vague, in that the interrogatory does not define exactly who plaintiffs intend to include within the plaintiff class.  Defendant Dillard also objects to this interrogatory as not within the scope of proper discovery.

RESPONSE: Certain detainees from the protest appeared before a judge and were released when charges were dropped or after paying a fine.

14.  Please describe the legal basis for the USMS to obtain and keep custody of any proposed class member during the time period encompassed by any Strip Searches.

OBJECTION:  Defendant Dillard reiterates his objection to the term "Strip Searches," which he raised in objection to Interrogatory No. 1, above.  Notwithstanding these objections, the defendant responds as follows:

RESPONSE: the following statutes are among the legal

-14-

authorities responsive to the interrogatory: 28 U.S.C. §
510, 28 U.S.C. § 561-566, D.C. Code § 11-1729 and 1742(A),
D.C. Code §24-201.13, § 24-201.14 and §47-205, 31 U.S.C. §
1537.

15.  Please identify all persons consulted in preparing
your response to any plaintiffs' discovery requests.

RESPONSE:  William E. Bordley, Associate General
Counsel; James Brooks, Chief Deputy United States Marshal
Superior Court District of Columbia; the additional named
defendants in Plaintiffs' proposed Second Amended Complaint
including:  Stirling Murray; Gregory Petchel; Robert Byars;
Howard Williams; Barry Surles; David Ablondi; Robert Arnes;
Cory Britt; Lyle Brown; Steven Burns; Lloyd Clark; Jeffrey
Folley; Max Galusha; Daniel Galvan; Sterling Johnson;
Richard Kelly; Steven Long; Thomas McDaniel; Shawn McMahon;
Lawrence Moltzan; David Moore; Daniel Munoz; Michael Oliver;
Mark Rouch; and William Straw.

16.  If any document otherwise responsive to any
Request for Production of Documents was, but no longer is,
in your possession, custody, or control, please identify the
document and describe the circumstances surrounding its
destruction, loss, or transfer.

RESPONSE: The USMS is not aware of any documents
responsive to the Requests for Production of Documents that

-15-

were subjected to destruction, loss, or transfer.

IV.  Responses To Requests For production of documents

1.  All documents referring to, or relating to, any Strip Searches.  All reports, logs, or other documents reflecting, recounting, or relating to any Strip Searches.

RESPONSE:

There are no responsive documents not yet produced.

2.  All photographs, videotape, digital images, or similar documents reflecting, or relating to, the physical conduct of any Strip Searches.

RESPONSE:

There are no responsive documents not yet produced.

3.  All documents referring or relating to any item recovered from the person of any class members as a result of any Strip Searches.

RESPONSE:

There are no responsive documents.

4.  All documents reflecting or constituting communications between any defendants, any person listed in the Defendant's initial disclosures and the MPD, and any

-16-

employee of the USMS relating to any Strip Searches.

RESPONSE:

There are no responsive documents.

5.  All documents reflecting or constituting communications between or among any USMS personnel that relate to the factual allegations set forth in the First Amended Complaint herein, including but not limited to the Strip Searches, the decision to conduct the Strip Searches, the disposition of any weapons or any contraband recovered as a result of any Strip Searches or that otherwise reference or relate to any member of the proposed class, or their property.

RESPONSE:

Defendant Dillard objects to this request on the grounds that it seeks information protected by the attorney client privilege.  Without waiving this objection, Defendant Dillard advises that there are no responsive documents.

6.  All documents relating to, reflecting, or constituting, investigations or disciplinary proceedings, with regard to any USMS personnel, that relate to any Strip Searches.

-17-

RESPONSE:

Defendant Dillard objects to this request on the ground that it seeks documents that are protected by the Privacy Act and it is not reasonably calculated to lead to the production of admissible evidence.  Without waiving these objections, responsive information may be located in the attached USMS Office of Internal Inspections investigation cover sheets.

7.  All documents relating to, reflecting or constituting any USMS or MPD policies and practices, whether reduced to writing or not, that relate to conducting strip searches of all detainees at D.C. Superior Court, including any Strip Searches.  This request is limited to policies and practices in force at any time of any Strip Searches.

RESPONSE:

See USMS Policy Directive 99-25, July 7 1999, Body Searches.

8.  All documents relating to, reflecting or constituting policies and practices, whether reduced to writing or not, that relate to care for and disposition of property and items recovered during the Strip Searches.

-18-

RESPONSE:

See USMS policy Directive 99-25, July 7, 1999.  Seized
Contraband is documented on a USM-11 or USM-210 and referred
to an Assistant United States Attorney or D.C. Corporation
Counsel for prosecution, or disposed of following discovery.
The property officer for the MPD was responsible for
Detainee property prior to placing the detainee in USMS
custody.

9.  All documents relating to, reflecting or
constituting all policies and practices, whether reduced to
writing or not, that relate to reports or other
communications that are required or expected to be prepared
by USMS personnel concerning any property recovered during
the Strip Searches.

RESPONSE:

Defendant Dillard objects to this request insofar as it
could be read to require the production of USM-11 or USM-210
forms unrelated to the persons referred to in the claims
pending in this action, and to the extent that Plaintiffs
could be seeking review and production of depositions in all
other litigation involving search practices of the USMS.
Notwithstanding these objections, Defendant Dillard advises
that responsive information may be found in the response to
Request for Production No. 8, above.

-19-

10.  All documents containing or relating to any memorandum of understanding or similar agreement between the USMS and any District of Columbia agency concerning or affecting the detention of prisoners, arrestees, detainees, protestors in effect during any part of the month of September, 2002.

RESPONSE:

See Operations Plan entitled "Operation Safe Courts" (copy attached).

11.  All documents identified in response to any interrogatory.

RESPONSE:

 There are no responsive documents.

12.  All documents consulted or relied upon in responding to these discovery requests.

RESPONSE:

See Response to Request For Production No. 10.  In addition, responsive information may be located in the accompanying USMS Directive 8.39 (Evidence); and USMS policy Directive 99-25, July 7, 1999.

13.  All documents consulted or relied upon in

preparing your Answer to the First Amended Complaint and
Defendants' Motion for Dismissal or in the Alternative for
Summary Judgment in this matter.

        RESPONSE:

        Defendants object to this Request For Production on the
grounds that it seeks documents protected by the attorney
work product privilege.

        Notwithstanding the above objection, Defendant Dillard
advises that attachments to the cited motion may be
responsive to the this request.

                        Respectfully submitted,


                        JEFFREY A. TAYLOR, DC Bar #498610
                        United States Attorney


                        RUDOLPH CONTRERAS, DC Bar #434122
                        Assistant United States Attorney


                        W. MARK NEBEKER, DC Bar #396739
                        Assistant United States Attorney

## **VERIFICATION**

I,  James Brooks, declare and state that:

1.  I am Chief Deputy United States Marshal for the United States Marshals Service Superior Court District of Columbia.

2.  I have read the above responses of Defendant to plaintiff's Interrogatories And Request For Production of Documents.

3.  I hereby declare under penalty of perjury that the responses set forth above are true and correct to the best of my knowledge and belief.


Dated: 10/29/07

-22-



| Case # | Open Date | Date Assigned | Close Date | Type Case | Inspector | Investigating Agenc |
|---|---|---|---|---|---|---|
| 04-0361 | 7/14/2004 | | 3/9/2005 | Administrative | ▓▓▓ | OIA |

| Date Sent to OIG | Date Received from OIG | OIG Case Number | Date Sent to CRD | Date Received from CRD |
|---|---|---|---|---|
| 6/4/2004 | | 2004005155 | | |

| Last Name | First Name | Middle Name | Position | Prior Cases |
|---|---|---|---|---|
| ▓▓▓ | ▓▓▓ | ▓▓▓ | DEO | None |

| District/Division | SSN | EOD | DOB |
|---|---|---|---|
| E/PA | ▓▓▓ | ▓▓▓ | ▓▓▓ |

| Allegation | Allegations Detail |
|---|---|
| Prisoner Violation | Left prisoner handcuffed and naked in cell block for a brief period of time |

| Allegation |
|---|
| |

| Allegation | Allegation |
|---|---|
| | |

| Complainant | Private Citizen/Title | Anger Management Issue | Case Link |
|---|---|---|---|
| ▓▓▓ | USMS Management | | s:\oia\case_years\2004\04-0361.p |

| Date Sent to ERT | Discretionary Closure | Disposition | Initial Case Information |
|---|---|---|---|
| 3/16/2005 | | Suspension 45 Days | |

| OIG Report Required | Report sent | Date Report Sent | Disposition Date | Disposition Link | Destroyed: |
|---|---|---|---|---|---|
| | | | 4/4/2006 | | 5/16/2006 |

| AD/DD Letters | | MEMO |
|---|---|---|

Complainant alleged that Subject ▓▓▓ handcuffed the Victim and left him naked in a cell. According to Complainant, while performing a strip search of the Victim, the Victim allegedly went at the subject. As a result, the Subject ▓▓▓ handcuffed the Victim naked in a cell. The Victim was allegedly left naked in the cell for only a brief time. (NOTE: Case transferred from Inspector ▓▓▓ to Inspector ▓▓▓ 2/15/05)



| Case # | Open Date | Date Assigned | Close Date | Type Case | Inspector | Investigating Agenc |
|---|---|---|---|---|---|---|
| 05-0371 | 7/27/2005 | | 7/27/2005 | Administrative | ███████ | OIA |

| Date Sent to OIG | Date Received from OIG | OIG Case Number | Date Sent to CRD | Date Received from CRD |
|---|---|---|---|---|
| 7/22/2005 | | 2005005883 | | |

| Last Name | First Name | Middle Name | Position | Prior Cases |
|---|---|---|---|---|
| ███████ | ███████ | | DUSM082 | None |

| District/Division | SSN | EOD | DOB |
|---|---|---|---|
| D/UT | ███████ | ███████ | ███████ |

| Allegation | Allegations Detail |
|---|---|
| Failure to Follow Proper Procedure | Allegations that DUSM failed to find weapon on prisoner during strip search |

**Allegation**

**Allegation**

**Allegation**

| Complainant | Private Citizen/Title | Anger Management Issue | Case Link |
|---|---|---|---|
| ███████ | USMS Management | | s:\oia\case_years\2005\05-0371.p |

| Date Sent to ERT | Discretionary Closure | Disposition | Initial Case Information |
|---|---|---|---|
| | ✓ | dis.clo.insuff.evidence | |

| OIG Report Required | Report sent | Date Report Sent | Disposition Date | Disposition Link | Destroyed: |
|---|---|---|---|---|---|
| | | | 7/27/2005 | | |

| AD/DD Letters | MEMO |
|---|---|

DUSM ███████ conducted a strip search of inmate ███████ before transporting him to federal court in Salt Lake City, UT. After placing ███████ in the USMS cellblock ███████ attacked inmate ███████ with a weapon, later identified as a toe-nail clipper. It is believed that ███████ smuggled the weapon into the cellblock by concealing it in his rectum.
NOTE ███████ followed USMS policy 9.3 - Body Searches, before transporting ███████
CLOSURE: Insufficient evidence.



| Case # | Open Date | Date Assigned | Close Date | Type Case | Inspector | Investigating Agenc |
|--------|-----------|---------------|------------|-----------|-----------|---------------------|
| 07-0604 | 9/10/2007 | 10/5/2007 | 10/5/2007 | Administrative | ███████ | OIA |

| Date Sent to OIG | Date Received from OIG | OIG Case Number | Date Sent to CRD | Date Received from CRD |
|------------------|------------------------|-----------------|------------------|------------------------|
| 9/10/2007 | 10/4/2007 | 2007009303 | N/A | N/A |

| Last Name | First Name | Middle Name | Position | Prior Cases |
|-----------|------------|-------------|----------|-------------|
| LNU | FNU | | | None |

| District/Division | SSN | EOD | DOB |
|-------------------|-----|-----|-----|
| DC/SC | | | |

**Allegation**
Failure to Follow Proper Procedure

**Allegations Detail**
Allegations that USMS personnel "strip-searched" a female attorney that was placed in temporary USMS custody by Judge

**Allegation**
Violation of the Code of Professional Responsibility

**Allegation**

**Allegation**

| Complainant | Private Citizen/Title | Anger Management Issue | Case Link |
|-------------|------------------------|------------------------|-----------|
| ███████ | USMS Management | | s:\oia\case_years\2007\07-0604.p |

| Date Sent to ERT | Discretionary Closure | Disposition | Initial Case Information |
|------------------|------------------------|-------------|--------------------------|
| | ✓ | dis.clo.insuff.evidence | |

| OIG Report Required | Report sent | Date Report Sent | Disposition Date | Disposition Link | Destroyed: |
|---------------------|-------------|------------------|------------------|------------------|------------|
| | | | 10/5/2007 | | |

| AD/DD Letters | | MEMO |
|---------------|--|------|

On 8/29/07, a female lawyer was remanded to the USMS for temporary custody as a punishment for contempt by Chief Judge King. The female lawyer was allegedly "strip-searched" by USMS personnel. CLOSURE: The female attorney never submitted a complaint. The DOJ-OIG reports contacting the attorney and providing her with direction in the event she decides to file a complaint. Insufficient evidence, closure letter sent to DC/SC.

# United States Marshals Service
# Directives

Directives Home Page >> Topics >> Fugitives : Evidence

8.1 - 8.2 Fugitive Investigations, General; 8.3 - 8.5 Managing Fugitive Investigations; 8.6 - 8.7 Probable Cause; 8.8 - 8.17 Arrests; 8.18 - 8.38 Search; 8.39 - 8.41 Evidence; 8.42 - 8.48 Sources; 8.49 - 8.50 Confidential Sources; 8.51 - 8.57 Investigative Matters; 8.58 - 8.60 International Fugitive Investigations; 8.61 - 8.63 Guidelines for Sensitive and Undercover Operations; 8.64 - 8.65 Reports; 8.66 - 8.67 Warrant Systems; 8.68 - 8.69 Other Investigative Programs

| Effective Date: October 06, 2003 |
| --- |

| 8.39 Evidence | 8.40 In-Custody Property | 8.41 Tracing of Seized Firearms and Ballistic Evidence |

## 8.39 EVIDENCE

**A.    PURPOSE:** This directive outlines the procedure for the seizure/collection and preservation of evidence by employees of the U.S. Marshals Service (USMS). For the purpose of this directive, contraband shall be handled as evidence.

**B.    AUTHORITY:** The Director's authority to direct and supervise all activities of the USMS is set forth in 28 USC 561(g) and 28 CFR 0.111. The authority of the USMS to investigate fugitive matters, effect arrests, protect the judiciary, and execute lawful writs, court orders, and process is set forth in 28 USC 566.

**C.    POLICY**

1.    All evidentiary items will be seized according to statutory authority, preserved at the crime scene until collected by qualified personnel, transferred by chain of custody procedures, and held in a secure facility until final disposition.

2.    The USMS will ensure the proper collection and preservation of any item of evidence resulting from a USMS case or investigation, referred case, or a case of another agency with which the USMS has a Memorandum of Understanding. Non-USMS case evidence will be transferred by chain of custody to the appropriate agency for prosecution or disposition purposes.

3.    The USMS will relinquish control and custody of evidence to the appropriate state or local authority during any task force or other USMS-assisted case.

**D.    PROCEDURES**

1.    **Retrieval and Preservation:** Evidence will be preserved in the best manner possible at the crime scene and protected from any loss, damage, or alteration:

a.    A perimeter will be established and the scene protected (e.g., cordoned off with official tape) until all items of evidence have been retrieved by the investigating deputy/deputies or until other personnel qualified in evidence processing arrive at the scene and assume responsibility for evidence collection.

b.  The crime scene will be surveyed to identify evidentiary items and to determine a retrieval plan.

c.  The scene, including each item of evidence, should be documented by use of video recorder, still camera, or both. A record will be made of the location of each item of evidence, the deputy's location when filming/photographing, the time and date, and any pertinent observations.

d.  If special protective clothing is worn, it should be saved and stored along with the evidence. This will be noted in the investigative report.

e.  Evidence items should be preserved, safely removed, tagged, and placed in an appropriate size container or clear evidence bag and sealed. Specific methods for preserving, collecting, and packaging various types of evidence are set forth in Publication ST-2004, Collection and Preservation of Evidence (Federal Law Enforcement Training Center).

f.  Firearms seized as evidence will be rendered safe at the scene and wrapped in a protective covering.

g.  Narcotics and related paraphernalia shall be secured as normal evidence. Illegal drug laboratories should be secured by perimeter only, due to their hazardous nature, until the appropriate officials (Drug Enforcement Administration or state/local police) can declare the scene safe and assume responsibility for the scene.

h.  Evidence containers shall be labeled with the retrieving deputy's name, credential number, type of evidence, date, time, and a unique assigned collection number (e.g., if five items of evidence are collected, they will be numbered 1 through 5, respectively).

2.  **Documentation and Transfer of Custody**

a.  A written record of evidence seized at the scene will be maintained by the retrieving deputy. Each item of evidence will be described, and the circumstances by which the evidence came into USMS possession will be recorded. One copy of the record will be attached to <u>Form USM-11, Report of Investigation</u>, and one copy will be attached to <u>Form USM-102, Seized Property and Evidence Control</u>. The USMS shall obtain a copy of the record of any evidence retrieved by another law enforcement agency and turned over to the USMS.

b.  The retrieving deputy will complete a <u>USM-102</u>, describing all evidence seized/collected, and transfer the evidence directly to the designated custodian by the end of the deputy's duty day. In after-hours situations, the deputy who took possession of the property will maintain control of it and temporarily secure it until the next business day when it can be turned over to the custodian, see directive topic <u>In-custody Property</u>.

3.  **Laboratory Analysis**

a.  Prior to submitting evidence to a forensic laboratory, the laboratory shall be contacted and advised of the nature of the evidence, and requested to provide packaging and shipping instructions. Federal Express or other registered mail is an appropriate method for controlled shipping.

    b.  Prior to submitting evidence to a forensic laboratory, the laboratory shall be contacted and advised of the nature of the evidence, and requested to provide packaging and shipping instructions. Federal Express or other registered mail is an appropriate method for controlled shipping.

**E.  DEFINITIONS**

    1.  **Evidence:** Any tangible object, substance, or material being held by the USMS for use in a legal proceeding, including contraband.

    2.  **Contraband:** Any item or substance whose use or possession is prohibited by (or which is defined as contraband in) any law of the United States or the state in which the property is currently located.

<u>**8.40 In-Custody Property**</u>

[ Prior Page ]

- FOR U.S. MARSHAL SERVICE USE ONLY -
**LAW ENFORCEMENT SENSITIVE**

# UNITED STATES MARSHALS SERVICE

## IMF/WTO OPERATIONS AND SECURITY PLAN

---

# OPERATION
# SAFE COURTS IV

---

**September 27-October 4, 2002**

Superior Court
Washington, District of Columbia

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE USE ONLY -
LAW ENFORCEMENT SENSITIVE
## OPERATION SAFE COURTS IV

# NOTICE

The information contained in this document is the property of the United States Marshals Service and is for **Official Law Enforcement Use Only**.

The material contained herein is not to be disclosed outside of the United States Marshals Service without the prior consent of the U.S. Marshal District of Columbia Superior Court Washington, DC (District 007 DC/SC.)

This document should be securely maintained at all times for the preservation of the information contained within.

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
LAW ENFORCEMENT SENSITIVE
## OPERATION SAFE COURTS IV

# TABLE OF CONTENTS

I.      BACKGROUND

II.     MISSION

III.    INTELLIGENCE

IV.     ORGANIZATIONAL STRUCTURE & PERSONNEL RESOURCES

V.      UNIFORM & EQUIPMENT

VI.     COMMUNICATIONS & RADIO CALL SIGNS

VII.    FIELD OPERATIONS

VIII.   PRISONER OPERATIONS

IX.     COURT OPERATIONS




APPENDIX
1.      Schedules & Assignments
2.      IMF Intelligence & Strategic Planning Data
3.      Special Assistance Requests
4.      Maps

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## I.  INTRODUCTION

On September 27th through the 30th, 2002, the International Monetary Fund (IMF) and World Bank-World Trade Organization (WTO), will hold their annual Fall meetings in Washington, D.C. Since 1999, there have been several meetings of this type, both within CONUS and OCONUS. All of these meetings were met with protest groups, the numbers of which have steadily increased. In addition, the level of violence directed toward the police and IMF-WTO delegates has escalated markedly.

The September 2002 WTO/IMF event, in Washington, D.C., is scheduled over three days, September 27th, 28th and 29th. According to all available information Washington, D.C. should see a protest crowd of 5,000 to 15,000, with MPD prepareing for up to 4,000 arrests. The protestors are expected to arrive in D.C. early in the week of September 22 and many will not leave until late in the first week of October.

This year as in the past Special Operations Group, (SOG), will be supporting the event. SOG's primary responsibility is to provide perimeter security around the exterior of the court building. SOG would be ready to  respond to any major disruption in or around the court house in which the deputies assigned required greater assistance than is available from the existing personnel. SOG will be staging on C Street and additional parking has been secured in the Newseum parking lot.

- FOR U.S. MARSHAL SERVICE USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## II. MISSION

The United States Marshals Service for the Superior Court of the District of Columbia (USMS DC/SC) shall ensure the protection of the Judges, Magistrate Judges as well as the physical security of the Superior Courthouse. In addition, USMS DC/SC shall be responsible for the following:

1. Receipt of prisoners from the D.C. Metropolitan Police, and their production before a Judicial officer of the Superior Court of the District of Columbia.(Sections VIII and IX.)

2. Transportation of prisoners that are ordered detained, to a designated confinement facility i.e. The District of Columbia Jail . (Section VIII.)

3. Assisting the D.C. Metropolitan Police at three booking and processing sites to ensure that arrestee paperwork is complete, accurate and that arrestees are properly identified, as well as screened for violent tendencies, medical conditions and possible fugitive status. (See Section VII.)

4. Gathering real time intelligence information concerning numbers of arrests, use of chemical agents on protesters, level of violence among protesters and possible injuries to arrested protestors. This information will be obtained by USMS DC/SC personnel assigned to one of four Command center locations and forwarded to the USMS DC/SC Cellblock Prisoner Operations personnel. (See Section VII.)

5. Responding to emergency situations involving disruptions or which require exigency. This would include any events occurring within the D.C. Superior Court including courthouse entrances, courtrooms, the cellblock, sally ports. It would also include the booking and processing sites, prisoner transports and any other location where the safety of USMS personnel may be in jeopardy. (See Section X.)

- FOR U.S. MARSHAL SERVICE USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## III.  INTELLIGENCE

### 1. GENERAL

During the past several years, opposition toward the World Bank (WB) and the International Monetary Fund (IMF) has grown both within the United States and abroad. Opposition groups have focused on demonstrating against these agencies at annual meetings attended by IMF/WB delegates.

### 2. COMPOSITION OF PROTESTERS

Unlike the demonstrations in April 2002 which saw the participation of many groups with a diversity of issues, the group expected in September 2002 will focus their efforts on issues associated with the IMF/WB similar to that of the April 2000 protests.  In the eyes of the activists, the policies of the IMF/WB are directly related to (if not the underlying cause of) issues such as world hunger, depletion of environmental resources, poverty in developing nations, etc. In addition, they believe that the IMF/WB's furtherance of the ideals of capitalism only serves to expand corporate greed and wealth, and keep money from those who are most in need.  Further evidence of the protest focus is evident when looking at the organizational responsibilities for this event.  The groups spearheading this action are two anti-IMF/WB organizations - Anti-Capitalist Convergence and Globalization for Mobile Justice - rather than multiple groups with differing causes as was evident in April 2002.  Therefore, the efforts of the protestors in September 2002 will be centered on the IMF/WB with an overall theme of anti-globalization and anti-capitalism as the "catch all" for the issues identified above.

### 3. ESCALATION OF PROTESTER NUMBERS

Since the 1999 Seattle WTO meeting, the number of protesters attending these gatherings has steadily increased, both within the U.S. and in Europe. The 1999 Seattle protest involved an estimated 50,000 protesters, whereas the July 2001 G-8 Summit in Genoa, Italy was comprised of approximately 100,000. **Intelligence information obtained from the FBI and DC Metropolitan Police are placing the expected number of protesters in Washington, DC from September 27 - October 1, 2002 at 5,000 to 15,000. This is comparable to the April 2000 Washington, DC protest which was attended by 5,000 to 8,000 protestors.  In addition, the number of violent "anarchists" participating in the upcoming events is expected to exceed their attendance at previous demonstrations in Washington, DC.**

- FOR U.S. MARSHAL SERVICE  USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## III.  INTELLIGENCE continued.

### 4. ESCALATING VIOLENCE

During the most recent protests, violence directed at law enforcement has increased dramatically. During the 1999 Seattle protest, 56 injuries to law enforcement were reported. In September 2000, during the IMF meeting in Prague, 123 injuries of law enforcement personnel occurred. In addition, the protesters used molotov cocktails and firebombs to assault police. During the April 2001 Summit in Quebec, 101 law enforcement were injured, 3 requiring hospitalization. At the G-8 Summit in Genoa, Italy in July 2001, approximately 200 molotov cocktails were thrown, over 420 injuries were reported and one protester was killed by police after the policeman was surrounded and assaulted while in a vehicle.

### 4. FACTORS AFFECTING D.C. SUPERIOR COURT OPERATIONS

During the Spring 2000 Washington, DC protests, USMS DC/SC Operations were not dramatically impacted until after the IMF meetings had concluded.  It was at this point that mass arrests of protestors occurred resulting in the influx of hundreds of defendants to DC/SC Cellblock for initial court appearances.  This volume of prisoners overcrowded the cellblock, and flooded the initial appearance court causing the need not only for use of a second courtroom but also for a 24 hour court operation.

During initial court appearances numerous protesters withheld their identification which resulted in them being held without bond at the DC Jail.  As a result of this, supporters of the incarcerated protesters converged on DC Superior Court and attempted to block USMS transport vehicles during the prisoner movements from DC Jail. In any subsequent hearings at Superior Court, the USMS DC/SC personnel should anticipate protester support elements appearing at the Courthouse. This could disrupt normal court operations well after the IMF meetings have concluded.

Protester tactics used during previous demonstrations including the 2000 Washington, DC IMF meetings consist of overall civil disobedience. This year intelligence has revealed plans by protesters to block major intersections throughout the city. Within the courthouse USMS DC/SC personnel can expect non-compliance in the form of sit downs, refusal to act on requests from Deputies and group distractions, i.e. singing, chanting, and dancing. In addition, it is anticipated that a large number of arrestees will refuse to provide identifying or personal history information and may attempt to provoke USMS personnel into violence for later civil action. **USMS personnel should always exercise restraint when provoked and perform all duties with a professional demeanor**.

During the April 200 Summit in Quebec, Canada, as well as the 1999 Seattle protest, there were several instances of protesters directing violence towards other protesters. Specifically, generally peaceful protesters were angered by members of the "Black Bloc" anarchists for their destructive behavior. This led to fighting within the protest group itself and should be a consideration when dealing with holding detainees and arrestees in cellblock settings. **Those persons identified as "Black Bloc" or violent segments should be detained in separate holding cells to avoid altercations with other protester elements**.

*AN ACCREDITED LAW ENFORCEMENT AGENCY*          Page 4

- FOR U.S. MARSHAL SERVICE USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## IV. ORGANIZATIONAL STRUCTURE & PERSONNEL RESOURCES

### 1. ORGANIZATIONAL STRUCTURE

Below is a schematic of our organizational structure. It details the District's chain of command during this event. All personnel should know who their immediate supervisor is and how to contact them. Inside each of the operational teams deputies in the grade of GS-12 have been assigned in lead positions. These "senior 12s" are the deputies in charge of that particular area and are the first source for guidance. If an issue or problem occurs, requiring higher authority, deputies should follow the chain of command. (See attachment 3)

| | | | |
|---|---|---|---|
| | U.S. MARSHAL<br>T. Dillard | | |
| | CDUSM<br>C. Rowe | | |
| | ACDUSM<br>M. Mitchell | | |
| | SDUSM<br>J. McKenna | SOG | |
| SDUSM<br>FIELD OPS | SDUSM<br>PRISONER OPS | SDUSM<br>COURT OPS | SDUSM<br>EMERGENCY RESPONSE |
| Booking | Cell Block | C-10 | Tactical Squad |
| Intelligence | Transport | Other Courts | Medical Support Unit |

### 2. PERSONNEL

| | | |
|---|---|---|
| IN DISTRICT PERSONNEL | = | 140 |
| OUT OF DISTRICT DUSM's* | = | 008 |
| Special Operations Group | = | 030 |
| **TOTAL** | = | **178** |

*\* District Court DUSMs offered by District Court's Marshal for Saturday and Sunday only.*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
LAW ENFORCEMENT SENSITIVE
# OPERATION SAFE COURTS IV

## V.   UNIFORM & EQUIPMENT

The uniform for all personnel throughout the event is USMS issued blue BDUs. On Friday and Monday, September 27th and 30th, Deputies will be staffing approximately 15 felony court rooms. Judges have been informed of the BDU uniform requirement and no trials are to be scheduled on those two days. All deputies regardless of assignment will wear BDUs.

1.   USMS Blue BDU Uniform
2.   USMS Hand Held Radio with surveillance kit if available
3.   USMS issued expandable baton and O.C. Spray
4.   USMS issued or approved primary duty weapon
5.   One pair of handcuffs
6.   Flashlight
7.   Equipment Bag
8.   Gas Mask
9.   Tactical Helmet

All radio traffic will be encrypted and all district radios were updated with the new encryption keys several months ago. All district radios will be checked by the communications officer prior to being deployed. A pair of variable key loaders and cables will be kept in the communications center for field repairs. **It is the responsibility of the individual DUSM to meet with the Communications Officer.**

It is incumbent upon each deputy to ensure that their certification or qualification for nonlethal and lethal weapons is current.

*Operational personnel shall be in possession of items 1 thru 5 and are expected to have the additional items available if issued.*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## VI.  COMMUNICATIONS & RADIO CALL SIGNS

During the IMF event, USMS DC/SC communications office, located in 500 Indiana Avenue, NW, will be operational 24 hours a day during the core days of the event. The duties of operational personnel assigned to this section are further described in Section VII.

The communications center will have a frequency scanner installed to monitor all local law enforcement activity. In addition all district Astro Saber portable radios will have DC MPD "citywide", US Park Police, US Capitol Police and District Court frequencies available. The communications officer will also have a UHF DC MPD portable with direct district capability.

All radio traffic will be encrypted and all district radios were updated with the new encryption keys several months ago. All district radios will be checked by the communications officer prior to being deployed. A pair of variable key loaders and cables will be kept in the communications center for field repairs.

**Operational Radio Frequencies**

Primary DC/SC Channel will be "DC/SC 19" as appears on Hand held radios.
Secondary DC/SC Channel will be "DC/SC 31" (non-repeater).
U.S. District Court USMS Primary Channel will be "DC 1".

**Radio Call Signs**

Communication Centers

| | |
|---|---|
| DC/SC Communications (Primary Command Center) | 700 |
| DC/SC Cellblock (Prisoner Operations) | 500 |
| MPD Command Center (SOC) Police HQ | Intel 1 |
| U.S. Attorney's Office (CIC) 555 4th Street, NW | Intel 555 |
| FBI Command Center | Foxtrot Bravo |

Field Operations

| | |
|---|---|
| MPD Booking site at 6th Street & New York Ave. NW | Booking 6 |
| MPD Booking site at 409 E Street, NW | Booking 4 |
| MPD Booking site at D.C. Police Training Academy | Booking Blue |

Prisoner Operations

| | |
|---|---|
| Transport Teams | 501,502,503 etc... |

Emergency Response Teams

| | |
|---|---|
| Tactical Squad | TAC 1, 2, 3 etc... |
| Medical Support Group | MED 1, 2, 3 etc... |

There will be a number of portable handheld radios on hand for use *"as needed"*. These radios will be deployed, impromptu, to satisfy needs such as, roving patrols and emergency response teams . These radios will be maintained in the communications center where appropriate chargers will be located. There will also be bank chargers strategically located throughout the courthouse.

*AN ACCREDITED LAW ENFORCEMENT AGENCY*                    Page 7

- FOR U.S. MARSHAL SERVICE  USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## VII.  FIELD OPERATIONS

This section presents information concerning Field Support Teams. These teams are comprised of two individual USMS Units assigned at various locations and perform two major functions: Prisoner Identification and Protest Intelligence. Personnel assigned to the Field Operations Section will report to SDUSM McKenna and DUSM Afman.

### A. PRISONER IDENTIFICATION UNIT (BOOKING/PROCESSING SITES)

**PERSONNEL**
> (12) Deputy U.S. Marshals.

**TIME & COVERAGE**
> Twelve hour shifts twenty four hour coverage.

**LOCATIONS**
1.     600 New York Avenue, NW.
2.     409 E Street, NW - B Building.
3.     D.C. Police Training Academy - Blue Plains.

**DUTIES**
1.     Deputies assigned to the three DC Police booking and processing locations listed above, will perform the following functions;
   a.     Oversee the initial receipt and processing of Protesters. Gather and forwarded information on numbers of arrests, charges and demeanor of protester prisoners to the USMS cellblock personnel.
   b.     Assist FBI & MPD to identify many prisoners as possible.
   c.     Using a dial up connection, query the WIN system, to search for outstanding federal warrants and historical information.
   d.     Prior to MPD prisoner buses departing for the DC Superior court cellblock, Deputies will: Review all paperwork for each busload to ensure that each prisoner has corresponding paperwork. Insure that the paperwork is correct and that photographs of each prisoner are included and attached to appropriate arrest sheets. Verify the accuracy of the van sheets.

- FOR U.S. MARSHAL SERVICE USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## VII.  FIELD OPERATIONS continued

## B. INTELLIGENCE and COMMUNICATIONS

**PERSONNEL**
>    (8) Deputy U.S. Marshals.

**TIME & COVERAGE**
>    Twelve hour shifts twenty four hour coverage.

**LOCATIONS**
1.    USMS DC/SC Communications Office.
2.    DC Metropolitan Police Headquarters SOC.
3.    USMS DC/SC Warrant Office.
4.    FBI Command Center.

**DUTIES**
1.    Deputies assigned to the intelligence team will be on site at the three command center locations listed above and will receive and disseminate intelligence information and perform the following : (a. - d. applies to sites 2. - 4.) (e. applies to site 1.)

    a.    Monitor protest crowds, their movements, areas of concentration and emotional climate. Specifically monitor any crowd movement toward MPD booking and processing locations as well as the Judiciary Square complex. Deputies will immediately report crowd movements in these directions to USMS supervisory personnel as well as USMS personnel at those locations.

    b.    Monitor and report levels of violence, especially violence directed at law enforcement, to include number of violent protester arrests and whether weapons were involved. Deputies will report this information immediately to deputies assigned to the prisoner identification team and USMS cellblock.

    c.    Monitor use of any chemical agents used against protesters and report this to USMS prisoner identification team as well as USMS Cellblock personnel. This will prepare deputies both at the booking stations and the cellblock to handle prisoners affected with chemical agents and who may require medical attention.

    d.    Assist DC Police personnel with any necessary data base queries i.e. the USMS Warrant Investigation Network (WIN), JUST (NCIC/NLETS) and WALES. This will be accomplished by way of dial-up access with a laptop computer.

    e.    Provide effective communications link between USMS DC/SC, USMS HQ EOC, supervisory personnel and field operations teams, intelligence teams and prisoner transport teams.

- FOR U.S. MARSHAL SERVICE USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## VIII.  PRISONER OPERATIONS

Personnel assigned to the Prisoner Operations shall be responsible for the receipt, searching, identifying, separating and delivery of prisoners to the appropriate Courtroom for presentment. In addition, they will be responsible for the securing and transporting of detained or post presentment prisoners to the designated correctional facilities. On Monday and Friday most deputies are assigned both to court and either morning or evening cellblock.

**PERSONNEL**
> (38) Deputy U.S. Marshals, (21) DEOs, Friday and Monday.
> (43) Deputy U.S. Marshals, (21) DEOs, Saturday and Sunday

**TIME & COVERAGE**
> Three overlapping, twelve hour shifts (DUSMs).
> Two overlapping, twelve hour shifts (DEOs).

**LOCATIONS**
1.    USMS DC/SC Sally port, Intake, Search Area.
2.    USMS DC/SC Adult Cellblock.
3.    USMS DC/SC Juvenile Cellblock.

**DUTIES**
1.    Personnel assigned to Prisoner Operations will ensure that prisoners received are:
    a.    Accompanied by appropriate and correct paperwork and are properly identified (i.e. arm bands) upon their arrival at DC/SC.
    b.    That prisoners are searched and observed for any medical condition that may require attention.
    c.    That violent prisoners are properly placed in restraints and separated from non-violent prisoners.
    d.    Ensure that juvenile offenders are identified and escorted to the juvenile cellblock with appropriate notifications to the juvenile intake and D.C. Corporation Counsel's Office.
    e.    Prepare prisoners for transportation to designated correctional facility i.e. Placement of restraints, loading of prisoners on buses etc...
    f.    Transport detained prisoners to appropriate correctional facility.

- FOR U.S. MARSHAL SERVICE USE ONLY -
**LAW ENFORCEMENT SENSITIVE**
# OPERATION SAFE COURTS IV

## IX.   COURT OPERATIONS

Personnel assigned to the Court Operations will provide overall assistance to the judicial process by presenting prisoners in court, ensuring appropriate courtroom decorum and providing security for the Judges and Magistrate Judges.

**PERSONNEL**
>        (51) Deputy U.S. Marshals, Friday and Monday.
>        (27) Deputy U.S. Marshals, Saturday and Sunday.

**TIME & COVERAGE**
>        Three overlapping, twelve hour shifts (DUSMs).

NOTE: "Cut off" time for incoming lockup cases is as follows:
>                Saturday 09/28/01 and Sunday 09/29/01 1430 hours.
>                Weekday cutoff times are normal, 1300 hours.
>        *Note: These cutoff times may be extended to 1800 hours by the Court.*

**LOCATIONS**

| | | | |
|---|---|---|---|
| Courtroom C-10 | Courtroom JM-10 | Courtroom 103 | Courtroom 104 |
| Courtroom 111 | Courtroom 112 | Courtroom 115 | Courtroom 201 |
| Courtroom 202 | Courtroom 213 | Courtroom 214 | Courtroom 221 |
| Courtroom 301 | Courtroom 302 | Courtroom 310 | Courtroom 311 |
| Courtroom 313 | Courtroom 316 | Courtroom 318 | Courtroom 319 |
| Courtroom 320 | Courtroom 321 | | |

**DUTIES**
a.    Present appropriately designated prisoners to appropriate courtrooms for judicial proceedings.
b.    Ensure that courtroom spectators conduct themselves appropriately.
c.    Provide security to Judges, and courtroom staff.
d.    Escort released protesters out of the Courthouse upon completion of their hearings.

- FOR U.S. MARSHAL SERVICE  USE ONLY -
## OPERATION SAFE COURTS IV

# APPENDIX

*- AN ACCREDITED LAW ENFORCEMENT AGENCY -*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
# OPERATION SAFE COURTS IV

## APPENDIX INDEX

1.    Schedules & Assignments

2.    IMF Intelligence & Strategic Planning Data

3.    Special Assistance Requests

4.    Maps

*- AN ACCREDITED LAW ENFORCEMENT AGENCY -*

- FOR U.S. MARSHAL SERVICE USE ONLY -
# OPERATION SAFE COURTS IV

## 1.    Schedules & Assignments

**Explanation of report times and shifts**

A detailed list of assignments are laid out on the following pages. The legends below give an explanation each shift. All shifts are 12 hours in length.

**Schedules**

These schedules begins 0600 hrs. Friday 09/27/02 and will conclude 2200 hrs. Monday 09/30/02. Adjustment to the schedules and it's duration will be made as deemed necessary by management.

| | |
|---|---|
| 1st Shift | 0600 - 1800 hrs |
| 2nd Shift | 0800 - 2000 hrs |
| 3rd Shift | 1000 - 2200 hrs |
| 4th Shift | 1800 - 0600 hrs |
| JUV | 0700 - 2100 or COB |
| DEO-1 | 0600 -1800 hrs |
| DEO-2 | 1000 - 2200 hrs |

These times are set in a manner which will allow for an expansion of coverage if and when it becomes necessary. All personnel should ensure that they have a method of being contacted in the event that the start of their shift was "pushed back" if the need for a greater coverage of the 24 hour clock was necessary.

*- AN ACCREDITED LAW ENFORCEMENT AGENCY -*

- FOR U.S. MARSHAL SERVICE USE ONLY -
LAW ENFORCEMENT SENSITIVE
## OPERATION SAFE COURTS IV

### Friday September 27th & Monday September 30th

*** In the event of mass arrests on Friday or Monday deputies will return thier prisoners to the cell block and move into their position as assigned on the Saturday Sunday Schedule.***

## Court Support Assignments

| Shift | Assignment | Personnel Assigned | |
|-------|------------|--------------------|---|
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 103 | Rouch, Mark | N/A |
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 104 | Brown, Lyle | N/A |
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 111 | Ablondi, David | Ames, Bobby |
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 112 | Brewster, Wesley | Britt, Cory |
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 201 | Knox, Penelope | Clark, Lloyd |
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 202 | Funnell, Nathan | Delgado, Jose |
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 310 | Burns, Steven | Chesler, Richard |
| 0600 - 1800 | CELL BLOCK - COURT SUPPORT / 320 | Moore, David | Straw, William |
| 0800 - 2000 | COURT SUPPORT / 115 - CELL BLOCK | Kelly, Richard | Johnson, Sterling |
| 0800 - 2000 | COURT SUPPORT / 213 - CELL BLOCK | DePatie, Ellen | Fischer, Jeremy |
| 0800 - 2000 | COURT SUPPORT / 214 - CELL BLOCK | Foley, Jeffrey | Davis, Dena |
| 0800 - 2000 | COURT SUPPORT / 221- CELL BLOCK | Galusha, Max | Galvan, Daniel |
| 0800 - 2000 | COURT SUPPORT / 301 - CELL BLOCK | Coleman, Brad | Hepler, David |
| 0800 - 2000 | COURT SUPPORT / 302 - CELL BLOCK | Granberry, Michael | Hayes, Steven |
| 0800 - 2000 | COURT SUPPORT / 311 - CELL BLOCK | Leach, Andrew | Long, Steven |
| 0800 - 2000 | COURT SUPPORT / 313 - CELL BLOCK | White, Floyd | Kaderavek, Alaric |
| 0800 - 2000 | COURT SUPPORT / 316 - CELL BLOCK | McDaniel, Thomas | McMahon, Shawn |
| 0800 - 2000 | COURT SUPPORT / 318 - CELL BLOCK | Moltzan, Lawrence | Drinkard, Michelle |
| 0800 - 2000 | COURT SUPPORT / 319 - CELL BLOCK | Johnson, Robert | Munoz, Daniel |
| 0800 - 2000 | COURT SUPPORT / 321 - CELL BLOCK | Patterson, Philip | Oliver, Michael |
| 1000 - 2200 | COURT SUPPORT / C-10 | Ruddy, Gavin | Thomas, Zachary |
| | | O'Brien, Thomas | Perry, John |
| | | Whitener, Zachary | Rodriguez, Anthony |
| | | Simoneli, Richard | Tramontana, Marco |
| 1000 - 2200 | COURT SUPPORT / JM-10 | Sanford, Michael | Ciambrone, Joseph |

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE USE ONLY -
LAW ENFORCEMENT SENSITIVE
# OPERATION SAFE COURTS IV

### Friday September 27th & Monday September 30th

## Supervisory Deputies

| Shift | SDUSM | Assignment |
|---|---|---|
| 0700 - 1900 | Bell, Richard | SUPERVISOR JUVENILE CELLBLOCK |
| 0600 - 1800 | Bolls, Ronald | COURT OPERATIONS / C-10 STAFFING |
| 0600 - 1800 | Brooks, James | PC OPERATIONS |
| 0800 - 2000 | Hedgepeth, Thomas | ON LEAVE/ADMINISTRATIVE |
| 0600 - 1800 | McKenna, John | IMF OPERATIONS / SOG LIAISON |
| 0800 - 2000 | Murray, Stirling | FIELD OPERATIONS |
| 0800 - 2000 | Petchel, Gregory | COURTHOUSE SECURITY OPERATIONS / TRAINING |
| 1000 - 2200 | Roberts, Charlie | COURT OPERATIONS / C-10 STAFFING |
| 1000 - 2200 | Surles, Barry | CELLBLOCK / C-10 OPERATIONS |
| 0600 - 1800 | White, Darrell | CELLBLOCK / C-10 OPERATIONS |

## Booking Sites

| Shift | Assignment | Personnel Assigned | |
|---|---|---|---|
| 0600 - 1800 | Blue Plains | Flynn, Martin | Fernandez, Robert |
| 1800 - 0600 | | Anderson, David | Tan, Osmund |
| 0600 - 1800 | New York Ave | Griel, Timothy | Driscoll, Derrick |
| 1800 - 0600 | | Hayes, Michael | Solosy, John |
| 0600 - 1800 | B. Building | Wilson, Roger | Murray, Jonathan |
| 1800 - 0600 | | Parks, Michael | McCarthy, Steve |

## Prisoner Processing

| Shift | Assignment | Personnel Assigned | | |
|---|---|---|---|---|
| 0600 - 1800 | P/C 09/27 - C/B IMF L/U 09/28-30 | Jeanmarie, Sherry | Singleton, Todd | Rios, Anthony |
| | P/C 09/30 - C/B IMF L/U 09/27-29 | Shealey, Julie | Shin, Insup | Rios, Anthony |

## Juvenile Cellblock

| Shift | Personnel Assigned | | |
|---|---|---|---|
| 0700 - 1900 | Franovich, Steve | Coulson, Patrick | Bayha, Deborah |
| | Alandydy, James | DeLuca, Joseph | Carmichael, Felton |

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE USE ONLY -
LAW ENFORCEMENT SENSITIVE

# OPERATION SAFE COURTS IV

### Friday September 27th & Monday September 30th

## Intelligence Sites

| Shift | Assignment | Personnel Assigned | |
|---|---|---|---|
| 0600 - 1800 | Control (700) | Nunes, Kenneth | Searcy Deborah |
| 1800 - 0600 | | Brandt, Robert | Edwards, Christopher |
| 0600 - 1800 | 555 | Bryant, Kellie | Kiernan, Paul |
| 0600 - 1800 | MPD JOC | Selb, Christopher | |
| 1800 - 0600 | | Reynolds, Lawrence | |
| 0600 - 1800 | FBI CS | Burnett, Gregory | |
| 1800 - 0600 | | Ruark, Kevin | |

## Security - C Street

| Shift | Personnel Assigned | | |
|---|---|---|---|
| 0600 - 1800 | Warren Wayne | Rolfe, Adrian | Fields, James |
| 1000 - 2200 | Long, Karen | Marks, Stephen | Paek, Dan |

## Court Support Admin

| Shift | Personnel Assigned |
|---|---|
| 0600 - 1800 | Bonieskie, Raymond |
| 1000 - 2200 | Brennan, Patrick |

## Push / Stand-By

| Shift | Personnel Assigned | | |
|---|---|---|---|
| 0800 - 2000 | Wechsler, Shane | Pettus, Joseph | Roderick, Susanne |
| | Reed, Fayette | Kerr, K. | |

## Operational Personnel

| Shift | Personnel Assigned | | |
|---|---|---|---|
| 0600 - 1800 | Afman, Clyde | Bryant, Kellie | Pitella, Mark |
| | Smith, Andrew | Wise, Paul | |

## Personnel on Special Assignment (unavailable)

| | | |
|---|---|---|
| Delo, Max | Doyle, Sean | Waters, John |

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
LAW ENFORCEMENT SENSITIVE
# OPERATION SAFE COURTS IV

### Friday September 27th & Monday September 30th
## 1802 - DETENTION ENFORCEMENT OFFICERS

| Shift | Personnel Assigned | Assignment |
|-------|--------------------|-----------|
| 0600 - 1800 | Coleman, William | Transport / Jail Board |
| 0600 - 1800 | Dade, James | Lock-Up Desk (Assisting) |
| 0600 - 1800 | Edge, Mark | W-2 / Transport |
| 0600 - 1800 | Hargrove, Jacqueline | Female Lock-Up Desk / Jail Board |
| 0600 - 1800 | James, Leila | Female Lock-Up Desk / Transport |
| 0600 - 1800 | Riley, Theodore | Control Panel  / Evening Transport |
| 0600 - 1800 | Robinson, Leroy | W-2 |
| 0600 - 1800 | Starks, Otto | Lock-Up Desk (Morning Primary) |
| 0600 - 1800 | Stover, Jonathan | Transport / Lock-Up desk |
| 0600 - 1800 | Teeter, Carl | Supervisor |
| 0600 - 1800 | Williams, Howard | Supervisor |
| 1000 - 2200 | Artis, Michael | Jail Board  / Transport |
| 1000 - 2200 | Barnes, Kelvin | W-1 / Transport |
| 1000 - 2200 | Byars, Robert | Supervisor |
| 1000 - 2200 | Clark, Eric | Lock-Up Desk(Evening Primary) |
| 1000 - 2200 | Harris, Reginald | W-3 / Transport |
| 1000 - 2200 | Randle, Melinda | Female Lock-Up Desk |
| 1000 - 2200 | Robinson, James | Control Pannel |
| 1000 - 2200 | Smith, Leila | Supervisor |
| 1000 - 2200 | Washington, Victor | W-3 |
| 1000 - 2200 | Wells, Ronald | Transport (If Here) |

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE USE ONLY -
LAW ENFORCEMENT SENSITIVE
# OPERATION SAFE COURTS IV

### Saturday September 28th & Sunday September 29th

## Cellblock Assignments

| Assignment | Shift 0600 - 1800 | Shift 0800-2000 | Shift 1000-2200 |
|---|---|---|---|
| CELL BLOCK - SALLY PORT / SEARCH | Rouch, Mark | Burns, Steven | McMahon, Shawn |
| | Funnell, Nathan | Davis, Dena | Drinkard, Michelle |
| | DePatie, Ellen | Britt, Cory | McDaniel, Thomas |
| | Moltzan, Lawrence | Reed, Fayette | Kerr, K |
| CELL BLOCK - BUBBLE CONTROL PANEL | Hayes, Steven | | Simoneli, Richard |
| CELL BLOCK - LOCK-UP DESK | Clark, Lloyd | | Thomas, Zachary |
| CELL BLOCK - FRONT DESK | Fischer, Jeremy | | Coleman, Brad |
| CELL BLOCK - MIDDLE DESK | White, Floyd | | Johnson, Robert |
| CELL BLOCK - SEARCH UNTIL NEEDED W 1 | Hepler, David | | Chesler, Richard |
| CELL BLOCK - SEARCH UNTIL NEEDED W 2 | Kaderavek, Alaric | | Munoz, Daniel |
| CELL BLOCK - SEARCH UNTIL NEEDED W 3 | Foley, Jeffrey | | Oliver, Michael |

## Overflow Courtrooms/Cellblock, C-10 and JM-10

| Shift | Assignment | Deputies Assigned | |
|---|---|---|---|
| 0800 - 2000 | CELL BLOCK UNLESS NEEDED IN | Knox, Penelope | Long, Steven |
| | OVERFLOW COURT / 201 | Moore, David | Straw, William |
| 0800 - 2000 | CELL BLOCK UNLESS NEEDED IN | Brown, Lyle | Delgado, Jose |
| | OVERFLOW COURT / 202 | Ablondi, David | Arnes, Bobby |
| 0800 - 2000 | COURT SUPPORT / 115 - CELL BLOCK | Kelly, Richard | Johnson, Sterling |
| | | Galusha, Max | Galvan, Daniel |
| 1000 - 2200 | COURT SUPPORT / C-10 | Ruddy, Gavin | O'Brien, Thomas |
| | | Granberry, Michael | Perry, John |
| | | Whitener, Zachary | Rodriguez, Anthony |
| | | Brewster, Wesley | Tramontana, Marco |
| 1000 - 2200 | COURT SUPPORT / JM-10 | Sanford, Michael | Ciambrone, Joseph |
| | | Leach, Andrew | Patterson, Philip |

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE USE ONLY -
LAW ENFORCEMENT SENSITIVE
## OPERATION SAFE COURTS IV

### Saturday September 28th & Sunday September 29th

## Supervisory Deputies

| Shift | SDUSM | Assignment |
|---|---|---|
| 0700 - 1900 | Bell, Richard | SUPERVISOR JUVENILE CELLBLOCK |
| 0600 - 1800 | Bolls, Ronald | COURT OPERATIONS / C-10 STAFFING |
| 1000 - 2200 | Roberts, Charlie | COURT OPERATIONS / C-10 STAFFING |
| 0800 - 2000 | Hedgepeth, Thomas | ON LEAVE/ADMINISTRATIVE |
| 0600 - 1800 | McKenna, John | IMF OPERATIONS / SOG LIAISON |
| 0800 - 2000 | Murray, Stirling | FIELD OPERATIONS |
| 0800 - 2000 | Petchel, Gregory | COURTHOUSE SECURITY OPERATIONS / TRAINING |
| 0600 - 1800 | Brooks, James | PROTESTER PROCESSING |
| 1000 - 2200 | Surles, Barry | CELLBLOCK / C-10 OPERATIONS |
| 0600 - 1800 | White, Darrell | CELLBLOCK / C-10 OPERATIONS |

## Booking Sites

| Shift | Assignment | Deputies Assigned | |
|---|---|---|---|
| 0600 - 1800 | Blue Plains | Flynn, Martin | Fernandez, Robert |
| 1800 - 0600 | | Anderson, David | Tan, Osmund |
| 0600 - 1800 | New York Ave | Griel, Timothy | Driscoll, Derrick |
| 1800 - 0600 | | Hayes, Michael | Solosy, John |
| 0600 - 1800 | B. Building | Wilson, Roger | Murray, Jonathan |
| 1800 - 0600 | | Parks, Michael | McCarthy, Steve |

## Prisoner Processing

| Shift | Assignment | Deputies Assigned | | |
|---|---|---|---|---|
| 0600 - 1800 | P/C 09/27 - C/B IMF L/U 09/28-30 | Jeanmarie, Sherry | Singleton, Todd | Rios, Anthony |
| | P/C 09/30 - C/B IMF L/U 09/27-29 | Shealey, Julie | Shin, Insup | Rios, Anthony |

## Push / Stand-By

| Shift | Deputies Assigned | | |
|---|---|---|---|
| 0800 - 2000 | Wechsler, Shane | Pettus, Joseph | Roderick, Susanne |

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
LAW ENFORCEMENT SENSITIVE

# OPERATION SAFE COURTS IV

### Saturday September 28th & Sunday September 29th

## Juvenile Cellblock

| Shift | Deputies Assigned | | |
|---|---|---|---|
| 0700 - 1900 | Franovich, Steve | Coulson, Patrick | Alandydy, James |
| | Carmichael, Felton | Bayha, Deborah | DeLuca, Joseph |

## Intelligence Sites

| Shift | Assignment | Deputies Assigned | |
|---|---|---|---|
| 0600 - 1800 | Control (700) | Nunes, Kenneth | Searcy Deborah |
| 1800 - 0600 | | Brandt, Robert | Edwards, Christopher |
| 0600 - 1800 | 555 | Bryant, Kellie | Kiernan, Paul |
| 0600 - 1800 | MPD JOC | Selb, Christopher | |
| 1800 - 0600 | | Reynolds, Lawrence | |
| 0600 - 1800 | FBI CS | Burnett, Gregory | |
| 1800 - 0600 | | Ruark, Kevin | |

## Security -  C Street

| Shift | Assignment | Deputies Assigned | |
|---|---|---|---|
| 0600 - 1800 | Warren Wayne | Rolfe, Adrian | Fields, James |
| 1000 - 2200 | Long, Karen | Marks, Stephen | Paek, Dan |

## Court Support Administrative

| Shift | Deputies Assigned |
|---|---|
| 0600 - 1800 | Bonieskie, Raymond |
| 1000 - 2200 | Brennan, Patrick |

## Operational Personnel

| Shift | Personnel Assigned | | |
|---|---|---|---|
| 0600 - 2200 | Afman, Clyde | Bryant, Kellie | Fernandez, Robert |
| (as needed) | Smith, Andrew | Wise, Paul | Pitella, Mark |

*AN ACCREDITED LAW ENFORCEMENT AGENCY*

- FOR U.S. MARSHAL SERVICE  USE ONLY -
LAW ENFORCEMENT SENSITIVE

# OPERATION SAFE COURTS IV

### Saturday September 28th & Sunday September 29th

## 1802 - DETENTION ENFORCEMENT OFFICERS

| Shift | Personnel Assigned | Assignment |
|---|---|---|
| 0600 - 1800 | Coleman, William | Transport / Jail Board |
| 0600 - 1800 | Dade, James | Lock-Up Desk (Assisting) |
| 0600 - 1800 | Edge, Mark | W-2 / Transport |
| 0600 - 1800 | Hargrove, Jacqueline | Female Lock-Up Desk / Jail Board |
| 0600 - 1800 | James, Leila | Female Lock-Up Desk / Transport |
| 0600 - 1800 | Riley, Theodore | Control Panel  / Evening Transport |
| 0600 - 1800 | Robinson, Leroy | W-2 |
| 0600 - 1800 | Starks, Otto | Lock-Up Desk (Morning Primary) |
| 0600 - 1800 | Stover, Jonathan | Transport / Lock-Up desk |
| 0600 - 1800 | Teeter, Carl | Supervisor |
| 0600 - 1800 | Williams, Howard | Supervisor |
| 1000 - 2200 | Artis, Michael | Jail Board  / Transport |
| 1000 - 2200 | Barnes, Kelvin | W-1 / Transport |
| 1000 - 2200 | Byars, Robert | Supervisor |
| 1000 - 2200 | Clark, Eric | Lock-Up Desk(Evening Primary) |
| 1000 - 2200 | Harris, Reginald | W-3 / Transport |
| 1000 - 2200 | Randle, Melinda | Female Lock-Up Desk |
| 1000 - 2200 | Robinson, James | Control Pannel |
| 1000 - 2200 | Smith, Leila | Supervisor |
| 1000 - 2200 | Washington, Victor | W-3 |
| 1000 - 2200 | Wells, Ronald | Transport (If Here) |

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Defendant Dillard's Responses To Plaintiffs' Discovery Requests Pursuant To Rule 56(f) To Defendants Dillard and 15 John Does has been made by mailing copies thereof to:

Lynn Cunningham, Esq.
P.O. Box 1547
Dubois, WY  82513
lcunningham@law.gwu.edu

        and

Zachary J. Wolfe
People's Law Resource Center
1725 I Street, NW
Suite 300
Washington, DC 20006
zwolfe@PeoplesLawResourceCenter.org

on this 29th day of October, 2007.

W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230