# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PAUL BAME, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1833 (RMC) |
| | ) | |
| TODD WALTHER DILLARD,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

The five named Plaintiffs[2] in this case were arrested on September 27, 2002, in Washington, D.C., and then allegedly "subjected to unlawful strip searches by deputy U.S. Marshals acting under the supervision of Todd Dillard, then the U.S. Marshal for the District of Columbia Superior Court." *See* Second Am. Compl. ¶ 1.  The strip searches, Plaintiffs allege, "were conducted without reasonable, particularized, individualized suspicion in violation of their Fourth Amendment right to be free of unreasonable searches and seizures." *Id.*  They seek to certify a class action, which the Defendant, Marshal Dillard, opposes.  For the reasons that follow, Plaintiffs' Motion for Class Certification [Dkt. # 18] will be conditionally granted without prejudice to the renewal of Defendant's objections after the close of discovery.

---

[1]  Pursuant to the Court's Order granting in part and denying in part Plaintiffs' Motion to Amend the Complaint [Dkt. # 56], the only Defendant remaining in this case is Todd Walther Dillard.  *See* Second Am. Compl. for Compensatory and Punitive Damages ("Second Am. Compl.") [Dkt. # 57] ¶ 8.

[2]  The named Plaintiffs are Paul Bame, Ivan Welander, Greg Keltner, Nicholas Church, and John Joel Duncan.  *See* Second Am. Compl. ¶ 1.

# I. BACKGROUND

Plaintiffs were "arrested by members of the D.C. Metropolitan Police Department (MPD), and cooperating police officers at a large scale, widespread, political protest held in Washington, D.C. on September 27, 2002 near the headquarters for the International Monetary Fund." Pls.' Mot. for Class Certification ("Pls.' Mem.") at 4. Plaintiffs were arrested for failing to obey police orders while protesting near the intersection of Connecticut Avenue and K Street, N.W., and nearby areas, other than Pershing Park. Following their arrest, the men were held with arrestees from other protests for several hours in the custody of the MPD before being turned over to the custody of the United States Marshals Service ("USMS").

Plaintiffs seek to certify a class consisting of the following persons:

> All men who were: (1) arrested on September 27, 2002 by the D.C. Police officials during a series of mass protests in downtown Washington, D.C.; (2) remanded by D.C. Police, following their arrests, into the custody of the U.S. Marshal[] for the District of Columbia prior to being released; and (3) subjected by deputy U.S. Marshals to a strip, visual, body cavity search without any particularized or individualized reasonable suspicion that he was concealing drugs, weapons or other contraband; (4) excluding, however, all men arrested within the confines of Pershing Park on September 27, 2002.

Pls.' Mem. at 1. Plaintiffs assert that the class may number upwards of one hundred men, that there are common issues that predominate over any individual issues, that the claims of the named Plaintiffs are typical of the claims of the class, and that Plaintiffs and their counsel will adequately represent the class.

# II. LEGAL STANDARDS

The "party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all prerequisites of Rule 23(a) are satisfied and the class falls within one

of the categories of Rule 23(b)." *Bynum v. District of Columbia*, 214 F.R.D. 27, 30-31 (D.D.C.

2003) (citations omitted).

Under Rule 23(a) of the Federal Rules of Civil Procedure, there are four requirements

for certification of a class:

1.   the class is so numerous that joinder of all members is impracticable ("numerosity");
2.   there are questions of law or fact common to the class ("commonality");
3.   the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and
4.   the representative parties will fairly and adequately protect the interests of the class ("adequacy").

Fed. R. Civ. P. 23(a).  Plaintiffs must also satisfy at least one of the subdivisions of Rule 23(b).  A

plaintiff satisfies Rule 23(b)(2) by showing:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2).  A plaintiff satisfies Rule 23(b)(3) by showing:

(1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

In deciding a motion for class certification, the "inquiry does not extend to an

examination of the merits of the case.  Instead the legal standard is whether the evidence presented

by plaintiffs establishes a 'reasonable basis for crediting [plaintiffs'] assertions.'" *Bynum*, 214 F.R.D.

at 31 (citing cases); *Chang v. United States*, 717 F.R.D. 262, 269 (D.D.C. 2003) ("Once the existence

of a class has been established, the Court does not consider the merits of the plaintiffs' claims prior to proceeding to a determination of whether the requirements for class certification set forth in Fed. R. Civ P. 23(a) and (b) have been met.").

### III.  ANALYSIS

Plaintiffs assert that the proposed class satisfies the requirements of Rule 23 and seek class certification.  Defendant Dillard challenges Plaintiffs' contentions on each of the Rule 23 requirements but focuses primarily on whether Plaintiffs have shown that the class would be so numerous such that joinder of all members is impracticable.

### A.     Existence of a Class

"It is axiomatic that for a class action to be certified a 'class' must exist." *Barnes v. District of Columbia*, 242 F.R.D. 113, 120 (D.D.C. 2007) (citing *Simer v. Rios*, 661 F.2d 655, 699 (7th Cir. 1981)); *see also Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992) (clearly defined class is necessary "to ensure that the class is 'neither amorphous, nor imprecise'") (internal citation omitted).  At this juncture, the Court is satisfied that Plaintiffs have proposed a class definition that is tailored properly such that "an individual would be able to determine, simply by reading the definition, whether he . . . is a member of the proposed class." *Bynum*, 214 F.R.D. at 32; *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order [on class certification] may be altered or amended before final judgment.").

### B.     Rule 23(a) Requirements

All class actions certified under Rule 23 must meet certain prerequisites listed in subsection (a):  there must be numerosity of class members, common questions of law or fact, the representatives must be typical of the class, and there must be adequate representation of the class.

Fed. R. Civ. P. 23(a).

      1.    <u>Numerosity</u>

      The Federal Rules of Civil Procedure allow a court to certify a class if it concludes that the class would be so numerous that joinder of all members individually is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Although the Rule "does not mandate use of a mechanical formula for determining numerosity," *Int'l Union v. Clark*, No. 02-1484, 2006 U.S. Dist. LEXIS 64908, at *17 (D.D.C. Sept. 12, 2006) (citing *General Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)), courts in this jurisdiction have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members. *See Bynum*, 214 F.R.D. at 32 (D.D.C. 2003). Plaintiffs need not provide the exact number of potential class members to satisfy the numerosity requirement; however, there must be a reasonable basis for the estimate provided. *Id*. at 32-33; *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1998) ("Mere conjecture, without more, is insufficient to establish numerosity . . ."). Courts have "discretion to decide whether using the class action mechanism would serve the interests of judicial economy and efficiency." *Int'l Union*, 2006 U.S. Dist. LEXIS 64908, at *17 (citing *Council of and for the Blind of Del. County Valley, Inc. v. Reagan*, 709 F.2d 1521, 1544 n.48 (D.C. Cir. 1983)).

      At present, there are five named Plaintiffs in this action. Although the "exact number of the class membership is not known," Plaintiffs estimate that the putative class consists of at least forty-five men, and possibly more than one hundred men. *See* Second Am. Compl. ¶ 10. In support of that estimate, Plaintiffs contend that

         Lock Up Lists were prepared by MPD officers at the Blue Plain holding facility where named plaintiffs and members of the proposed plaintiff class were taken after their arrests. These lists show ninety-

> two persons with male names, or listed by the male names of 'John
> Doe,' a strong indicator that the new arrestee was a male person.
> These lists are sufficient evidence at this stage of the proceedings of
> the number of men who constitute the proposed class.

Pls.' Mem. at 13; Ex. 1 ("IMF Mass Protest Lock Up List"). In addition to the Lock Up Lists,

Plaintiff Paul Bame, according to Plaintiffs, is prepared to testify that he personally witnessed "at

least eighty men" from the protests held in two cell blocks; that he was strip searched "in a batch of

eight to twelve men"; and that "he understood that all the men held in the two cell-blocks were strip

searched in batches." *See* Pls.' Mem. at 13. Plaintiff Greg Keltner is prepared to offer similar

testimony. *Id*. at 14. After discovery, the proposed class will be "more refined" and will be more

readily "identifiable from records in the possession of defendant, and from other official records."

Second Am. Compl. ¶ 11; Pls.' Mem. at 15.

Defendant Marshal Dillard questions the reliability of Plaintiffs' estimates. First, he

argues that some, if not many, of the names on the Lock Up Lists are of individuals who are already

represented in separate class actions stemming from the arrests on September 27, 2002. Second, he

contends that the class may not, by definition, contain arrestees who refused to provide their names

to police officers upon arrest. According to Marshal Dillard, the failure to provide identifying

information to an arresting officer may provide reasonable suspicion warranting a strip search. *See*

Def.'s Supp. Mem. in Opp'n to Pls.' Mot. for Class Certification ("Def.'s Supp. Mem.") [Dkt. # 58]

at 1. The Court will address these arguments in turn.

### i.   *Separate Class Actions*

This is not the only case stemming from the arrests on September 27, 2002 or

regarding allegations of strip searches of arrestees conducted by the USMS at Superior Court. *See*

Def.'s Opp'n to Pls.' Mot. for Class Certification ("Def.'s Opp'n") [Dkt. # 25] at 2 ("[S]everal class

actions are already extant and one of them is admittedly pursuing claims for at least a significant part

of the proposed class with the intent of securing from the District of Columbia damages for the same

conduct as is at issue here (reducing the number of potential class-members who can recover

here)."). In *Barham v. Ramsey*, No. 02-2283 (D.D.C. filed Nov. 19, 2002), a complaint was filed

in an effort to pursue claims on behalf of "approximately 400+ persons" attending demonstrations

on September 27, 2002, who were arrested at Pershing Park and subjected to harsh conditions of

confinement. *See* Feb. 7, 2003 Mot. for Class Certification and Notice. In *Johnson v. District of

Columbia*, No. 02-2364 (D.D.C. filed Dec. 2, 2002), two classes of female plaintiffs are challenging

the alleged practice of the USMS of strip searching female arrestees. *See* Feb. 8, 2008 Order on

Class Certification.[3] In *Burgin v. District of Columbia*, No. 03-2005 (D.D.C. filed Sept. 23, 2003),

the action, which has since settled, was described as follows:

> This is a class action seeking damages and other relief for illegal mass
> arrest, handcuffing, detention, and prosecution of persons who were
> participating in or observing peaceful demonstrations in Washington,
> D.C. on the morning of Friday September 27, 2002. The action joins
> the claims of two classes. Plaintiffs were trapped, prevented from
> leaving, and arrested by converging lines of District of Columbia
> police officers at one of two locations: (1) the eastern sidewalk of
> Connecticut Avenue between K and L Streets, N.W., where forty-two
> persons (the first class) were arrested; and (2) the sidewalk near the
> northwest corner of Vermont Avenue and K Street, N.W., where
> approximately 150 persons (the second class) were arrested.

---

[3] The *Johnson* plaintiffs advance, *inter alia*, an "equal protection" claim that is based on
the allegation that female arrestees were blanket strip searched, but not males. In response to the
USMS's assertion that men were also subject to strip searches, the *Johnson* plaintiffs amended
their complaint to include male plaintiffs. Until the class question in *Johnson* was briefed and
decided, it was unclear whether these Plaintiffs and their putative class would be part of *Johnson*
or part of a separate suit.

*See* Sept. 26, 2003 Complaint.

Defendant argues that many of the arrestees on the Lock Up List (Pls.' Mem., Ex. 1) were likely arrested in Pershing Park and are therefore members of the *Barham* class, not the instant putative class.[4]   Mr. Bame has "offered no basis to conclude that the full 80 men he saw are likely members of the class, as opposed to members of the class at Pershing Park."  Def.'s Supp. Mem. at 5-6.  "If the actual number of [putative class members] is unsupported and as vaguely described as Plaintiffs have made it," argues Marshal Dillard, "then the Court would not abuse its discretion in concluding that Plaintiffs have failed to meet their burden as to numerosity."  *See* Def.'s Opp'n at 19.

The Court agrees with Defendant Dillard that the estimates provided by Plaintiffs are vague in nature.  Plaintiffs themselves suggest that some of the names on the Lock Up List may be of men arrested in Pershing Park.  *See* Second Am. Compl. ¶ 10 ("On information and belief, at least half this number were arrested at mass protests other than at Pershing Park.").  Plaintiffs also concede that the proposed class members "are most likely members of the plaintiff class certified by this Court in [*Burgin*]."  *See* Pls.' Mem. at 5-6.  However, Plaintiffs' proposed class is unique in that "none of the other actions [including *Burgin*] entail the claims herein.  In other words, none of the other suits raise claims for monetary damages against defendant[]."  *Id*. at 6.

The Court finds itself in a position similar to that of the court in *In re Newbridge Networks Security Litigation*, 926 F. Supp. 1163 (D.D.C. 1996).  In *Newbridge*, the plaintiffs sought class certification on behalf of all persons who purchased certain stock and suffered damage.  926

---

[4] Approximately 400 people were arrested in Pershing Park on September 27, 2002, under virtually the same circumstances as the putative class members here.  *See Chang*, 217 F.R.D. at 264.

F. Supp. at 1175.  The defendant opposed certification, arguing that there were insufficient facts to support, *inter alia*, estimates of the number of putative class members.  *Id*. at 1175-76.  The court seriously considered the defendant's argument and concluded that

> Federal Rule of Civil Procedure 23(c)(1) permits this Court to conditionally grant plaintiffs' motion for class certification and provides an order with respect to class certification "may be altered or amended before the decision on the merits."  As discussed above, defendants argue that plaintiffs have alleged insufficient information to justify class certification.  An accompanying Order will grant plaintiffs['] motion for class certification on a conditional basis, without prejudice to renewal of defendants' objections at the close of discovery.  At that time, this Court may reconsider whether the class should be certified . . .

*Id*. at 1178.  Likewise here, the Court has concern that numerosity has not been achieved. However, as in *Newbridge*, Plaintiffs' argue that "their inability to be more specific in their allegations should be excused at this pre-discovery stage of the litigation . . . . [and] additional facts are within [Defendant's] control."  *Id*. at 1173.  The Court will conditionally certify the instant class, and may revisit certification after discovery is completed upon the Defendant's motion.

            ii.      *Failure to Provide Identifying Information to Arresting Officers*

          Defendant argues that the class may not contain arrestees who refused to provide their names to police officers upon arrest, including the named Plaintiffs, who were listed on the Lock Up List as "John Does."  This limitation, according to Marshal Dillard, inevitably means the class is even smaller, limited to the men who provided identifying information to arresting officers.  *See* Def.'s Supp. Mem. at 1 (citing *Kelly v. Foti*, 77 F.3d 819 (5th Cir. 1996)).  According to Defendant, "[a] careful reading of *Kelly* supports the claims made by Defendant[] that a reasonable law enforcement officer could conclude that a person's failure to identify themselves to the police could

properly be seen as sufficient reasonable suspicion to warrant the searches alleged in the plaintiffs' complaints." *Id.*

Plaintiffs are challenging whether deputy U.S. Marshals subjected class members to a "blanket strip search" "without any particularized or individualized reasonable suspicion that he was concealing drugs, weapons or other contraband." *See* Pls.' Mem. at 1; Pls.' Reply in Supp. of Mot. for Class Certification ("Pls.' Reply") [Dkt. # 31] at 9. Nothing in the record, as it stands, supports the contention that there were any "individualized determinations" made as to any arrestee. Nevertheless, the Court need not analyze the applicability of *Kelly* at this juncture; whether particular searches of particular class members had a were reasonable articulable suspicion is an affirmative defense that may be raised by Defendant at the appropriate time. *See Mack v. Suffolk County*, 191 F.R.D. 16, 24 (D. Mass. 2000).

For the reasons stated above, Plaintiffs have conditionally shown that the putative class meets the numerosity requirement of Rule 23(a)(1).

### 2.   Commonality and Typicality

Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 300 (D.D.C. 2007). It is not necessary that every issue of law or fact be the same for each class member. Rather, if "there is *some* aspect or feature of the claims which is common to all," the requirement is satisfied. *Barnes*, 242 F.R.D. at 121 (internal citations omitted); *Bynum*, 214 F.R.D. at 32 (factual variation among class members does not defeat the commonality requirement so long as a single aspect or

feature of the claims is common to all proposed class members).

The typicality requirement of Rule 23(a)(3) is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996). Because "[t]he crux of both commonality and typicality requirements is to ensure that the maintenance of a class action is economical, and that the named Plaintiffs' claims and the class claims are so inter-related that the interest of the class members will be fairly and adequately protected in their absence," it is proper to discuss them together. *Dodge v. County of Orange*, 226 F.R.D. 177, 180 (S.D.N.Y. 2005).

Plaintiffs have successfully established that there is sufficient commonality and typicality for the class to be certified. As this Court said in a recent order certifying a class action, "'a strip-search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual.'" *Johnson v. District of Columbia*, 248 F.R.D. 46, 53 (D.D.C. 2008) (quoting *Wood v. Clemons*, 89 F.3d 922, 928 (1st Cir. 1996)). This intrusion is alleged to have been commonly experienced by the putative members of the class. Further, Plaintiff has laid out issues of law and fact that are common to all members of the proposed class, including, primarily, whether the searches violated the Fourth Amendment. *See* Pls.' Mem. at 16.

Regarding typicality, Rule 23 does not require that the representative plaintiffs endure precisely the same injuries that may have been sustained by other class members, only that the harm complained of be common to the class, and that the named plaintiffs demonstrate a personal interest or threat of injury that is real and immediate, not conjectural or hypothetical. *See Bynum*, 214 F.R.D. at 34. The typicality requirement is satisfied "if the claims of the named plaintiffs arise from the

-11-

same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol*, 929 F. Supp. at 691. As set forth in the Second Amended Complaint, each of the named Plaintiffs was arrested and was allegedly subjected to a "full body strip search, without any individualized, reasonable suspicion upon which to base such searches. A few hours later, all members of the class, including the . . . named plaintiffs, were released by a judicial officer of D.C. Superior Court." Pls.' Mem. at 17. Although the circumstances of the strip searches at issue may have varied by some degree, demonstrating typicality "does not mean showing that there are no factual variations between the claims of the plaintiffs." *Bynum*, 214 F.R.D. at 35.

The Court finds that Plaintiffs have satisfied the commonality and typicality requirements of Rule 23(a).

### 3.    Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires that a certified class have adequate representation. This requirement involves both adequacy of the named plaintiffs and adequacy of counsel. The requirement is met when: (1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class; and (2) counsel for the class is competent to represent the class. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). The adequacy of representation requirement involves a constitutional due process dimension because of the binding effect of a final judgment on absent class members. *See Nat'l Ass'n of Regional Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345-46 (D.C. Cir. 1976).

In this case, as already discussed with regard to numerosity, the representative Plaintiffs' interests do not conflict with those of the putative class, whether or not they identified themselves to arresting officers.

-12-

Plaintiffs' counsel, Messrs. Lynn E. Cunningham and Zachary Wolfe, are experienced litigators with sufficient years of experience to handle this matter. *See* Pls.' Mem. at 18-20, Exs. 2-5. Defendant, however, suggests that Mr. Cunningham may have a conflict of interest because he was formerly one of the counsel for plaintiffs in *Johnson v. District of Columbia*. *See* Def.'s Opp'n at 27 (citing District of Columbia Rules of Professional Responsibility, Rule 1.9 (precluding a lawyer who has formerly represented a client in a matter from thereafter representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation)). Because of his prior representation, Defendant argues, Mr. Cunningham may be faced with taking a position in this case which adversely affects the interests of the plaintiff classes in *Johnson* on their equal protection claim. Defendant argues that Mr. Cunningham's pursuit of men's interests here might adversely affect the *Johnson* women's interests.

The Court disagrees. As Plaintiffs explain,

the *Bame* class is not seeking to prove that there never was a long-standing policy of discrimination among women arrestees, but at most that there was one exceptional event of illegal[] strip searching a relatively small group of men on one day out of the many years covered by the *Johnson* claims. The existence of a blanket strip search in violation of the Fourth Amendment on one day of men does not disprove the Fifth Amendment claim of the women that there was a policy stretching over several years.

*See* Pls.' Reply at 18-19. The *Bame* and *Johnson* cases are not related in any material way; there is no conflict in Mr. Cunningham's representation of the *Bame* class. Accordingly, the Court is satisfied that Plaintiffs have fulfilled the requirements of Rule 23(a)(4).

-13-

C.     **Rule 23(b) Requirements**

After the requirements of Rule 23(a) are met, a putative class must demonstrate that it fits under one of Rule 23(b)'s class types.  Plaintiffs seek certification pursuant to Rule 23(b)(3).  *See* Pls.' Mem. at 20.  The Court will conditionally certify the class under Rule 23(b)(3) because: (1) class-wide issues predominate and (2) a class action is "superior to other available methods to the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *see Bynum*, 214 F.R.D. at 39.

1.     Predominance of Common Questions at Law

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The predominance requirement is "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a).  *Id.* at 609, 623.

Defendant argues that class certification is inappropriate because "individualized adjudication would be required of each class member's very entitlement to prevail" and "courts have concluded that the predominance requirement is not satisfied and class certification is improper when individualized consideration would be required for one or more issues."  Def.'s Opp'n at 29-30 (citing cases).  According to Defendant, individualized determinations would need to be made whether, in each instance, a class member was searched, and if so, whether there was a lawful basis for the search.  *Id.* at 30.  In addition, "the issue of the extent of the injury suffered by each Plaintiff as a result of the purported violation must be established."  *Id.*

-14-

The Court has already addressed a similar challenge in *Johnson* and will repeat what it told the parties there:

> The Court disagrees that determination of damages in this case would require individualization such that Plaintiffs cannot establish predominance. First, it maybe the case that "the determination of damages in this case [does not] require individualization." *See Dellums v. Powell*, 566 F.2d 167, 189 (D.C. Cir. 1977). Moreover, the mere existence of individualized damages in a Rule 23(b)(3) class does not cause individual issues to predominate over common issues on liability or causation. *See Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997). There are many ways of dealing with possible individual damages issues, if necessary, such as "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

*Johnson v. District of Columbia*, 248 F.R.D. 46, 57 (D.D.C. 2008).

The Court will reserve ruling on methodology issues for another day but is satisfied that Plaintiffs have satisfied the predominance requirement for purposes of class certification.

### 2.   Whether Class Action is Superior

The second prong of Rule 23(b)(3) is superiority. Under this requirement, "maintaining the present action as a class action must be deemed by the court to be superior to other available methods of adjudication. A case will often meet this standard when 'common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit.'" *Bynum*, 217 F.R.D. at 49 (citations omitted).

As Plaintiffs explain, "[h]andling this matter through a series of individual cases is a possible, but inferior alternative." Pls.' Mem. at 21. Managing individually filed lawsuits would

create a serious administrative challenge for the Court, as well as for counsel.  The putative class members are dispersed geographically, which favors the class action vehicle, and damages in individual cases may be inadequate to attract sufficient counsel to represent individuals on a case-by-case basis.  Plaintiffs have demonstrated that conditional class certification is superior to other methods of adjudication.

### D.     Class Notification

Federal Rule of Civil Procedure 23(c)(2) provides that, in any class action maintained under Rule 23(b)(3), notice shall be given to the class in the best practicable manner.  Plaintiffs seek to have the costs of any notice to class members paid for by Defendant.  *See* Pls.' Mem. at 24.  Defendant, not surprisingly, opposes.  *See* Def.'s Opp'n at 32.  The Court directs Plaintiffs to pay for this cost, since class certification is conditional, and subject to a claim against the Defendant is Plaintiffs' prevail as a class.

### E.     Appointment of Class Counsel

Federal Rule of Civil Procedure 23(g)(1)(C)(I) requires the Court to appoint adequate class counsel to represent the class after considering: "(1) the work counsel has done in identifying or investigating potential claims in this action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class."  *See Bynum v. District of Columbia*, 384 F. Supp. 2d 342, 366 (D.D.C. 2005).  As discussed above, the Court is satisfied that Plaintiffs' counsel are experienced litigators who are competent to represent the class.  As such, they will be appointed class counsel in the accompanying Order.

-16-

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Class Certification [Dkt. # 18] will

be conditionally granted without prejudice to Defendant's renewed objections after the close of

discovery.  *See Lightfoot v. District of Columbia*, 246 F.R.D. 326, 334 n.6 (courts may "reassess

class certification rulings as the case develops, and certify a class or alter a certification decision if

necessary in light of developments in the case").   A memorializing Order accompanies this

Memorandum Opinion.


Date: May 22, 2008                                    _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge


-17-