UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL BAME, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1833 RMC |
| ) | |
| JOHN F. CLARK, et al., ) | |
| Acting Director, ) | |
| U.S. Marshals Service, ) | |
| ) | |
| Defendants. ) | |
| ) | |

REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO AMEND ANSWER

Defendant Dillard has sought leave to amend the Answer filed in this action to take account of a settlement that Plaintiffs have admitted was reached in another case involving their arrests and detentions on September 27, 2002, in the District of Columbia.  Plaintiffs concede that "certain claims against . . . Dillard, are settled [by the agreement].  See Plaintiffs' Opposition To Defendant's Motion To Amend ("Plaintiffs' Opp.") at 2.  They argue, instead, that the settlement did not encompass any claims relating to the searches at issue in Bame.  Id.

In fact, the undisputed[1] terms of the settlement agreement are broader than Plaintiffs would suggest.  Not only were the claims that were actually asserted in Diamond/Burgin settled, but the plaintiffs also agreed that "under no circumstances" would

---

[1] Plaintiffs indicated that the settlement language cited in Defendant' Motion To Amend Answer is accurate.  See Plaintiff's Opp. at 2 ("Defendant Dillard accurately quotes from that settlement. . .").

the plaintiffs or their attorneys obtain from the District of Columbia or its agents "any monetary relief and/or other recovery for claims that were <u>or could have been raised in this civil action under any theory of liability</u>. . ." <u>Diamond</u>, Civil Action No. 03-2005 EGS, Docket No. 55 ("<u>Diamond</u> Settlement"), ¶ 4 (emphasis added). Each <u>Diamond</u> class member also agreed to "release and forever discharge . . . [the District of Columbia's agents] of and from any and all actions, damages and demands whatsoever (including any claims for attorney's fees), which that <u>plaintiff now has or could have had against the said . . . agents . . . . or that plaintiff</u> or any person or persons claiming by, through or under that plaintiff <u>now or hereafter can or may have against the aforenamed parties by reason of or in any way arising out of the events or alleged injuries underlying and/or in this civil action</u>. <u>Id</u>. (emphasis added). And, the <u>Diamond</u> class members further agreed to hold all of DC's agents "<u>harmless from any claims that have been, or could be brought against them</u> by any other persons or entities <u>in this matter</u>" <u>Id</u>. (emphasis added).

There can be no doubt that the searches alleged in the <u>Bame</u> pleadings are among the things "in any way arising out of the events or alleged injuries underlying and/or in [the <u>Diamond</u>] civil action." <u>Diamond</u> Settlement, ¶ 4; <u>see</u> First Amended Complaint in <u>Diamond</u> (<u>Bame</u> Docket No. 67). In <u>Diamond</u>, for

-2-

instance, the plaintiffs asserted that their arrests on September 27, 2002, by Metropolitan Police Department ("MPD") officers violated the First, Fourth and Fifth Amendments to the constitution, <u>id.</u>, ¶ 2, that they "were detained for many hours", <u>id.</u>, ¶¶ 4-5, that some arrestees were subjected to excessive force and "were detained through most or all of Saturday" if not longer, <u>id.</u>, ¶ 16, and that as a result of DC's customs and policies and the arrests, charges, detentions, hand cuffing and excessive force used on the class members they "suffered numerous injuries and damages, including . . . monetary loss . . . <u>arising out of their illegal arrest, detention, and mistreatment; bodily injuries; personal and reputational injuries, including pain and suffering, humiliation, anguish, and emotional distress</u>. . . ." <u>Id.</u>, ¶ 20 (emphasis added). The <u>Diamond</u> common law claims were based specifically on "false arrest and imprisonment, malicious prosecution, assault and battery, negligence, and intentional infliction of emotional distress." <u>Id.</u>, ¶ 23.

The claims in <u>Bame</u> likewise stem from the September 27, 2002 arrests by MPD officers who transferred the arrestees to deputy U.S. Marshals where they remained in custody for "several hours lasting into September 28, 2002." <u>See</u> <u>Bame</u> Second Amended Complaint, ¶¶ 4-7, 15-18. The <u>Bame</u> plaintiffs further complain that the search procedures employed on them "were intimidating, humiliating, and subjected each class member to strong emotional

distress," id., ¶ 22, in violation of the Fourth Amendment to the Constitution.  Id., ¶ 29.  The plain language of the settlement thus makes clear that Plaintiffs cannot now change their "theory of liability" against any agent of the District of Columbia and gain "other recovery for claims that were or could have been raised in [Diamond]."  Diamond Settlement, ¶ 4.  The recovery in Diamond for any "humiliation, anguish, and emotional distress" attendant to the "arrests, charges, lengthy detentions" and "mistreatment" of the plaintiffs on September 27-29, 2002, id., ¶¶ 18-20, is clearly all plaintiffs can recover against anyone whom they contend was acting as an agent of the District of Columbia under the terms of their settlement.  Id.

Plaintiffs argue that, because "[t]he facts and claims pled in the Diamond complaint nowhere address actions by the U.S. Marshal for Superior Court's strip searching of the protester arrestees on September 28, 2002," plaintiff can pursue the instant action even though it seeks damages against an agent of the District of Columbia.  See Plaintiffs' Opp. at 2-3.  The clear language of the Diamond Settlement agreement, however, went beyond just the claims raised in the case and added any claim that "could have been raised in this civil action under any theory of liability."  Diamond Settlement, ¶ 4.  And it settled any claims that the class members "could have had" against DC's agents "by reason of or in any way arising out of the events or

alleged injuries underlying and/or in this civil action." Id. Plaintiffs theorize that only Fourth Amendment claims based on the Diamond class members' "seizure[s]" were settled, not Fourth Amendment claims based on "searches." Plaintiffs' Opp. at 2. Under this theory, the Diamond settlement does not prohibit Plaintiffs from adding to the Bame case a claim against the District of Columbia on the theory that DC is liable to Plaintiffs for the "searches" not previously litigated, since, in Plaintiffs' view, Mr. Dillard was acting as DC's agent. The terms of the Diamond settlement does not allow such parsing of the claims. The release was understandably broad, and should be interpreted to do just what it was intended to do, settle all claims against DC's agents that "aris[e] out of the events or alleged injuries underlying" Plaintiffs' arrests and detentions in September 2002.

Plaintiffs argue that Paragraph 2 of the Diamond Settlement somehow negates the release and indemnification completely, because the parties have agreed that the settlement will have "no collateral estoppel or *res judicata* effect, whatsoever, or otherwise preclude any current or future defendant in any matter from asserting any defense." See Plaintiffs' Opp. at 3-4. Clearly, this paragraph was intended to preclude others from arguing that DC and its agents were somehow precluded from defending similar claims in other cases. To read the paragraph

otherwise would mean that, notwithstanding the settlement, Plaintiffs were free to sue DC again for the same arrests and detentions.  Such a reading would leave the settlement contract unenforceable for lack of consideration.

    Plaintiffs' reliance on Paragraph 3 of the <u>Diamond</u> Settlement is equally flawed.  Plaintiffs assert that the third paragraph of the agreement "by its own terms limits the compromise to claims "raised in the complaint filed in [<u>Diamond</u>]" Plaintiffs' Opp. at 5.  They emphasize the words "**encompassed by the existing Complaint or any subsequently-filed Complaint in this Civil action. . .**" to make this point.  <u>Id</u>.  What they fail to take account of are the words before the bolded language. Paragraph 3 provides that the Settlement Amount of $1,000,000.00 was "in full satisfaction of all claims and potential claims for damages and other monetary relief and any other type of relief <u>under any theory of liability against</u> the District and any . . . <u>agent</u>. . . <u>of the District that were or could have been raised in or were or could have been encompassed by the existing Complaint</u>. . ." <u>Diamond</u> Settlement, ¶ 3 (emphasis added).  Plaintiffs' assertion that the elements of accord and satisfaction have not been met is equally flawed.  <u>See</u> Plaintiffs' Opp. at 5-6.  Again, it is clear from the language of the settlement with DC that in return for the $1,000,000.00 and other consideration expended by DC, the city also procured a release of claims against numerous

third-party beneficiaries of the settlement, namely "any official, officer, <u>agent</u>, or employee or any person who is now or has been an official, officer, <u>agent</u>, or employee of the District. . ."  <u>Diamond</u> Settlement, ¶¶ 3-4 (emphasis added).

> Settlement agreements "are in the nature of contracts." <u>See</u> <u>Makins</u> v. <u>District of Columbia</u>, 277 F.3d 544, 546-47 (D.C. Cir. 2002)(citing <u>Gaines</u> v. <u>Cont'l Mortgage & Inv. Corp.</u>, 865 F.2d 375, 378 (D.C. Cir. 1989)).  "In cases in which the dispositive issue involves the construction of a contract, summary judgment may be appropriate if the provisions of the contract are unambiguous." <u>Davis</u> v. <u>Chevy Chase Financial Ltd.</u>, 667 F.2d 160, 169 (D.C. Cir. 1981); <u>see also</u> <u>America First Inv. Corp.</u> v. <u>Goland</u>, 925 F.2d 1518, 1520 (D.C. Cir. 1991); <u>Farmland Industries, Inc.</u> v. <u>Grain Bd. of Iraq</u>, 904 F.2d 732, 735-36 (D.C. Cir. 1990); <u>Minebea Co.</u> v. <u>Papst</u>, 374 F.Supp.2d 202, 208-09 (D.D.C. 2005).  Furthermore, it is settled that whether a contract term is or is not ambiguous is a question to be determined by the court.  <u>See</u> <u>Minebea Co.</u> v. <u>Papst</u>, 374 F.Supp.2d at 208-09; <u>Carey Canada, Inc.</u> v. <u>California Union Ins. Co.</u>, 708 F.Supp. 1, 4 (D.D.C. 1989).

<u>America</u> v. <u>Preston</u>, 468 F.Supp.2d 118, 122 (D.D.C. 2006).  The words in the <u>Diamond</u> Settlement make inescapable that the settlement included both claims that were raised in <u>Diamond</u> and those that could have been raised against DC <u>and its agents</u>, including all claims "in any way arising out of the events or alleged injuries underlying and/or in this [<u>Diamond/Burgin</u>] civil action."  <u>See</u> <u>Diamond</u> Settlement, ¶¶ 3-4.  Thus, because the plaintiffs in <u>Bame</u> are specifically pursuing their claims based on a DC agency theory, those claims have been resolved through their settlement in <u>Diamond</u>.  At a minimum, the issue should be

addressed in formal briefing upon amendment of the answer.

Accordingly, amendment of the answer is appropriate here.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Reply To Plaintiffs' Opposition To Defendant's Motion To Amend Answer has been made through the Court's electronic transmission system on this 30th day of June, 2008.

                                                /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230